UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KEVIN D. COWDEN,                          )
                                          )
        Plaintiff,                        )
                                          )
    vs.                                   )        Case No. 4:08CV01534 ERW
                                          )
BNSF RAILWAY COMPANY,                     )
                                          )
        Defendant.                        )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant BNSF Railway Company's Motion to

Bar Expert Opinion Testimony of Alan Blackwell [doc. #31]. The Court heard arguments from

the parties on this Motion at a hearing held on July 29, 2010.

## I.      BACKGROUND

This suit arises out of injuries sustained by Plaintiff Kevin D. Cowden ("Plaintiff") while

riding in a locomotive as an employee of Defendant BNSF Railway Company ("Defendant").

Asserting claims under the Federal Employers Liability Act ("FELA") and the Locomotive

Inspection Act ("LIA"), Plaintiff alleges that his injuries resulted from poor track conditions, and

that Defendant was negligent for failing to provide him with reasonably safe work conditions and

equipment.

In support of his claims, Plaintiff seeks to offer the expert testimony of Alan Blackwell

("Blackwell"), a self-described "Railway Consultant/Expert Witness" and a former employee of

Union Pacific Railroad Company, that Defendant violated internal and industry standards of care

with respect to track conditions and inspections, and in doing so failed to provide Plaintiff with a

reasonably safe work environment. Blackwell's qualifications for providing expert testimony on

these topics are primarily based on his employment with Union Pacific in positions such as track inspector, manager of track maintenance (roadmaster), and relief roadmaster from 1983 through 1995, during which time he conducted Federal Railroad Adminstration ("FRA") track inspections and managed and oversaw track maintenance. Blackwell's expert report contains the following summary of his conclusions:

> Based on my knowledge and experience, site inspection and the materials and information reviewed thus far, it is my opinion [that] BNSF Railway did not provide Mr. Cowden a reasonably safe work environment between milepost 151.4 and 151.8 near Golden City, Missouri on January 14, 2008. Specifically, I find that:
>
> • BNSF Railway failed to maintain a ballast section that was not fouled with foreign materials and that provided adequate drainage for the track.
>
> • BNSF Railway failed to maintain a sufficient number of non-defective ties that was capable of providing support so as to ensure track surface problems did not result.
>
> • BNSF Railway failed to maintain the track so that good ride quality and safe operations was provided over the track at the class (maximum 40 mph/Class 3) it chose to operate trains.
>
> • BNSF Railway failed to inspect the track and take remedial action to provide for safe operations over the track when it knew or should have known that a combination of track conditions existed that did not provide for safe operations.
>
> • BNSF Railway failed to inspect the track in the proper manner and at the required frequency to ensure that the track was in compliance with internal standards and that of the FRA.
>
> • BNSF Railway failed to maintain the proper temporary speed restriction on the track that permitted the highest speed at which the train could pass safely through the restricted area and provide protection to the train crew.
>
> • BNSF Railway failed to take corrective or remedial action by repairing, restricting or removing the track from service when it knew or had notice that track conditions did not comply with standards and provide for safe train operations over the track.

- BNSF Railway failed to follow AREMA Standards that are the custom and practice of the industry and was in violation of the following standards of care:

  BNSF Engineering Instructions 2.1, 2.2.3, 2.4.4, 2.4.5, 4.1, 4.2, 4.3, 7.1, 8.2, 8.5, and 8.8;

  BNSF Maintenance of Way Operating Rules 1.1.3, 1.4 and 1.24;

  BNSF Safety Rule S-1.5.2 Inspection;

  FRA Regulations 213.1(a), 213.5(a), 213.103(c) and 213.233(b) and (c).

## II.  DISCUSSION

Defendant contends that Blackwell's testimony should be excluded pursuant to Federal Rule of Evidence 702 because (1) Blackwell is not qualified to give expert testimony on these matters; (2) his opinions are not based on a reliable factual foundation; and (3) he failed to apply any accepted methodology in reaching his conclusions from the information provided to him. Defendant also offers additional objections targeted at certain portions of Blackwell's testimony: that his opinions about alleged violations of FRA regulations are improper legal conclusions, that his opinions about proper train speed are preempted by provisions of the Federal Rail Safety Act ("FRSA"), and that Federal Rule of Evidence 407, concerning subsequent remedial measures, prohibits Blackwell from testifying about track repairs that took place following Plaintiff's alleged injury.[1]  The Court addresses each of these arguments in turn.

### A.  Admissibility under Fed. R. Evid. 702

Federal Rule of Evidence 702 provides:

---

[1] Defendant also contends that Blackwell's testimony should be barred as a discovery sanction for failing to answer deposition questions about his income as an expert. Recognizing that such a sanction is a "harsh penalty" that "should be used sparingly," *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190 (8th Cir. 1995), and that Defendant failed to file a motion to compel concerning this information, the Court declines to exclude Blackwell's testimony on this basis. Defendant will, of course, be free to cross-examine Blackwell at trial about his curious inability to provide any information about his income from serving as an expert witness.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

A district court's goal in assessing expert testimony is the ensure that "all scientific testimony is both reliable and relevant." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)). The reliability requirement means that "the party offering the expert testimony must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid," while the relevance requirement demands that "the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue." *Id.* (internal quotations and citations omitted).

Rule 702's requirements notwithstanding, "[c]ourts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Marmo*, 457 F.3d at 758. This is because the Rule "only requires that an expert possess 'knowledge, skill, experience, training, or education' sufficient to 'assist' the trier of fact, which is 'satisfied where expert testimony advances the trier of fact's understanding to any degree.'" *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (internal citation omitted). As such, "[g]aps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Id.* at 1100-01. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993).

Mindful that Blackwell's intended testimony is limited to whether Defendant provided Plaintiff with a safe work environment, the Court concludes that Blackwell's qualifications are adequate to support his testimony. Defendant places a large amount of emphasis on Blackwell's admission that he is not accident reconstructionist, but this could only be a disqualifying factor if Blackwell sought to offer his opinions as to whether Defendant's alleged failures brought about Plaintiff's injuries – that is, if he intended to testify on the issue of causation. Instead, Blackwell's report indicates that his testimony will only extend as far as Defendant's duties with respect to proper track conditions and maintenance, and his experience in conducting track inspections and overseeing maintenance qualifies him to give those opinions. To the extent Defendant takes issue with Blackwell's lack of experience and certification in the field since his retirement from Union Pacific in 1995, that is precisely the sort of "gap" in his credentials that goes to the weight of his testimony and can be highlighted on cross-examination. *See Robinson*, 447 F.3d at 1100.

As for the factual foundation underlying Blackwell's conclusions, and the methodology used to arrive at them, the Court has more substantial concerns, but ultimately finds that these are matters to be addressed at trial. While Blackwell's report sets forth a host of Defendant's documents that he reviewed, there are no citations in his report to specific facts from those documents that underlie any of his conclusions about Defendant's actions. Likewise, the report indicates that Blackwell used "the same methodology that [he] used during [his] management years in the engineering department with the Union Pacific Railroad," but it at no point explains what that methodology is or how it resulted in his conclusions when applied to the facts of this case. These are necessary foundational elements that Plaintiff will need to set forth in order to qualify Blackwell as an expert at trial, but the Court concludes that Blackwell's failure to set them

forth in his expert report in detail does not require that his testimony be excluded at this point in this litigation.

**B.  Statements Concerning Violations of FRA Regulations**

Defendant contends that Blackwell's opinions about whether Defendant's conduct violated FRA regulations should be excluded because they constitute inadmissible legal conclusions.  Plaintiff argues that Blackwell may properly testify as to these matters because his conclusions are supported by a sufficiently detailed analysis.

Expert witnesses are not permitted to make legal conclusions, including whether certain conduct violated a given law or regulation.  *See, e.g.*, *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) ("The evidence took the form . . . of a battle of experts opining as to whether Southern Pine had violated FAA regulations.  As we have had occasion to remark before, however, expert testimony on legal matters is not admissible.") (internal citation omitted); *In re Genetically Modified Rice Litig.*, 2010 WL 2326036, at *5 (E.D. Mo. 2010) ("Experts may not draw legal conclusions or interpret laws or regulations.  No witness may testify that . . . Bayer violated or complied with a standard of care prescribed by the regulations.") (internal citation omitted); *Johnson v. Avco Corp.*, 2010 WL 1329361, at *12 (E.D. Mo. 2010) (Expert "may discuss the evidence indicating that Swan had not sufficiently practiced night landings and he may discuss the requirements outlined in the regulations, but he may not opine about whether Swan in fact violated the regulations.").

These cases make clear that Blackwell may not offer his opinion about whether Defendant's conduct violated FRA or other applicable regulations.  That said, assuming Plaintiff otherwise establishes the admissibility of Blackwell's expert testimony, Blackwell may still opine on ultimate issues such as whether Defendant acted prudently or provided Plaintiff with a

reasonably safe work environment, so long as his opinions do not extend to whether Defendant's conduct actually violated certain laws or regulations. *See* Fed. R. Evid. 704(a); *Wood v. Minnesota Mining & Mfg. Co.*, 112 F.3d 306, 310 (8th Cir. 1997).

## C. FRSA Preemption

Defendant next asserts that FRSA regulations concerning proper train speed preclude Blackwell from opining that Defendant should have imposed a lower speed limit, where it is undisputed that the train was traveling within the FRSA-mandated speed limit. Plaintiff contends that the FRSA only has a preemptive effect on state law claims, not FELA claims.

The Supreme Court has held that FRSA regulations governing train speed preempt state law negligence claims, to the extent the state law claims assert that a train traveling within the FRSA speed limit was, in fact, traveling at an excessive speed. *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 675-76 (1993). Although the Eighth Circuit has not weighed in on the issue, other circuits have consistently concluded that "the uniformity demanded by the FRSA can be achieved only if federal rail safety regulations are applied similarly to a FELA plaintiff's negligence claim and a non-railroad-employee plaintiff's state law negligence claim," and that FRSA speed regulations therefore apply to FELA claims just as they do, under *Easterwood*, to state law negligence claims. *See Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d 426, 430 (6th Cir. 2009) (listing cases so holding) (internal citations omitted); *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 443-44 (5th Cir. 2001); *Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773, 776 (7th Cir. 2000); *see also Davis v. Union Pac. R.R. Co.*, 598 F. Supp. 2d 955, 959 (E.D. Ark. 2009) ("With respect to speed . . . the matter is well-settled. An FELA excessive-speed . . . claim is precluded by the FRSA and accompanying regulation.").

The Court therefore concludes that Blackwell will not be permitted to testify that Defendant was negligent in permitting the train in question to be operated within FRSA-mandated speed limits. The Court notes, however, that this does not prevent Plaintiff from seeking to establish that Defendant was negligent for failing to issue a temporary slow order due to a specific hazard, as is required by the FRSA in certain circumstances. *See Easterwood*, 507 U.S. at 675 (noting that the petitioner railroad was "prepared to concede that the pre-emption of [an] excessive speed claim does not bar suit for breach of related tort law duties, such as the duty to slow or stop a train to avoid a specific, individual hazard"); *see also Murrell v. Union Pac. R.R. Co.*, 544 F. Supp. 2d 1138, 1151-52 (D. Or. 2008) (citing *Easterwood* in recognizing a state law negligence claim for failure to issue a slow order in response to a "specific, individual hazard").

### D.      Subsequent Remedial Measures

Defendant contends that the Court should prohibit Blackwell from testifying about subsequent repairs to the railroad track at issue in this litigation, because Federal Rule of Evidence 407 bars evidence of subsequent remedial measures. Plaintiff claims that Blackwell's testimony on this matter is permissible to show the feasibility of repairs.

The Court agrees with Defendant that Blackwell will not be permitted to testify about subsequent track repairs. Rule 407 provides that

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence . . . . This rule does not require the exclusion of evidence of subsequent measures when offered for another purposes, such as proving . . . feasibility of precautionary measures, *if controverted* . . . .

(emphasis added). As the plain language of the Rule makes clear, evidence of subsequent remedial measures is only permitted to prove the feasibility of precautionary repairs if the feasibility of such repairs is controverted. In this case, Defendant does not dispute that the track

repairs that ultimately took place would have been just as feasible before the incident as after, and accordingly, Rule 407 bars admission of evidence that Defendant later took such measures.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Bar Expert Opinion Testimony of Alan Blackwell [doc. #31] is **GRANTED, in part** and **DENIED, in part**.  Defendant's Motion is denied to the extent it requests that Blackwell's testimony be excluded under Federal Rule of Evidence 702, the Court finding it more appropriate to leave for trial the issue of whether Plaintiff can establish the necessary foundation for qualifying Blackwell as an expert in this matter. The Court finds, however, that the following portions of Blackwell's intended testimony will be excluded: (1) opinion testimony that Defendant's actions amounted to violations of federal laws or regulations; (2) opinion testimony that Defendant was negligent for failing to require its trains to operate at a speed other than that required by FRSA regulations; and (3) testimony that Defendant subsequently repaired the track at issue.

Dated this <u>19th</u> Day of <u>August</u>, <u>2010</u>.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE