UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KEVIN D. COWDEN, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 4:08CV01534 ERW |
|  | ) |  |
| BNSF RAILWAY COMPANY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant BNSF Railway Company's Motion for Summary Judgment [doc. #30].

## I. BACKGROUND FACTS[1]

This suit arises out of injuries Plaintiff Kevin D. Cowden ("Plaintiff") allegedly sustained while riding in a locomotive owned and operated by Defendant BNSF Railway Company ("Defendant"), Plaintiff's employer. On January 14, 2008, Plaintiff, in the course of performing his job duties, was traveling in one of Defendant's locomotives in Golden City, Missouri, somewhere in the vicinity of mile posts 151.4 – 151.8. The portion of track on which Plaintiff was traveling was subject to a so-called "slow order," setting the maximum speed for passing trains at forty miles per hour, and according to Defendant's business records, the slow order in place at the time of the incident was due to "tie conditions." The section of track had previously been subject to slow orders because of "rough track" and "washouts." Nevertheless, Plaintiff estimated that he had traveled over that portion of track approximately 150 to 200 times in the

---

[1] The Court's recitation of the facts is taken from Defendant's Statement of Uncontroverted Material Facts and the parties' responses thereto.

six-month period leading up to that date, and had not experienced any prior problems. On the day in question, however, Plaintiff asserts that the train encountered a rough section of track and bottomed out, throwing him several feet into the air and causing him to land with a significant impact, resulting in injuries to his back and neck.

In his Count I, Plaintiff contends that Defendant is liable for his injuries under the Federal Employees Liability Act ("FELA") for negligently failing to provide him with reasonably safe work conditions, reasonably safe work equipment, and for violating regulations promulgated under the Locomotive Inspection Act ("LIA"), which under the FELA constitutes negligence *per se*. Plaintiff's Count II alleges that Defendant is strictly liable to Plaintiff under the LIA for violating the aforementioned regulations.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof on a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in

his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden shifts to the non-moving party to set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e)(2). When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavits and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002); Fed. R. Civ. P. 56(e)(1). The non-moving party does not need to produce "evidence in a form that would be admissible at trial in order to avoid summary judgment"; "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred." *Celotex*, 477 U.S. at 324.

To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

### III.   DISCUSSION

Defendant contends that it is entitled to summary judgment on Plaintiff's claims alleging violations of the LIA because there is no evidence in the record that the locomotive's condition

played a role in his alleged injuries, and on Plaintiff's FELA claim because the uncontroverted facts demonstrate that Plaintiff cannot prove all the elements of a negligence claim under the FELA. Plaintiff argues that the evidence in the record demonstrates that there are genuine issues of material fact precluding summary judgment on his FELA claim.

### A. LIA Claim

Although it appears that the Eighth Circuit has in certain instances entertained claims brought under the LIA, *see Wright v. Arkansas & Missouri R.R. Co.*, 574 F.3d 612, 619-20 (8th Cir. 2009), claims alleging violations of the LIA must be brought under the FELA. *Urie v. Thompson*, 337 U.S. 163, 189 n.30 (1949) ("[A]n employee injury suit alleging violation of the Boiler Inspection Act[2] is brought under the Federal Employers' Liability Act.") (internal alterations, quotations, and citation omitted); *see also Feichko v. Denver & Rio Grande W. R.R. Co.*, 213 F.3d 586, 588 n.4 (10th Cir. 2000) ("The BIA does not create an independent cause of action for personal injuries, and such an action must therefore be brought pursuant to the FELA.") (internal citations omitted); *Munns v. CSX Transp., Inc.*, 579 F. Supp. 2d 924, 929 (N.D. Ohio 2008) ("Because the LIA does not create an independent cause of action for personal injuries, injured parties rely on the FELA to recover damages caused by a[n] LIA violation.") (internal citation omitted). As such, Defendant is entitled to summary judgment on Plaintiff's LIA claim.

### B. FELA Claim

Success on an FELA negligence claim requires proof of the common-law elements of a negligence claim: duty, breach, causation, and injury. *See Consol. Rail Corp. v. Gottshall*, 512

---

[2] The LIA was formerly known as the Boiler Inspection Act, or BIA, and is referred to as such in certain of the cases cited in the following sections.

4

U.S. 532, 543-44, 550-51 (1994); *see also Magelky v. BNSF Ry. Co.*, 579 F. Supp. 2d 1299, 1304 (D.N.D. 2008) (internal citations omitted). Defendant argues that it is entitled to summary judgment on Plaintiff's FELA claim because, among other reasons, there is no genuine issue of material fact as to whether it violated the LIA or otherwise breached a duty owed to Plaintiff.

### 1. LIA Violations

A violation of the LIA's safety standards amounts to negligence per se in the context of an FELA negligence claim. *See Granfield v. CSX Transp., Inc.*, 597 F.3d 474, 480 (1st Cir. 2010) (citing *Urie*, 337 U.S. at 188-89). Under the LIA, railroads may only allow a locomotive to be used in service if it (1) is "in proper condition and safe to operate without unnecessary danger of personal injury"; (2) has been inspected as required by the LIA and regulations promulgated thereunder; and (3) "can withstand every test" required by the Secretary of Transportation under the LIA. 49 U.S.C. § 20701; *see also Wright v. Arkansas & Missouri R.R. Co.*, 574 F.3d 612, 620 (8th Cir. 2009). Plaintiff contends that Defendant is liable under the FELA for violating LIA regulations, in that it (1) violated 49 C.F.R. §§ 229.7(a)(1)–(a)(2), 229.9, 229.45, and 229.63 by permitting the use of an engine which was not in proper condition and safe to operate, and by permitting the use of an engine which produced excessive lateral and vertical motion; (2) violated 49 C.F.R. § 229.23 by permitting the use of an engine which had not been properly inspected; and (3) violated 49 C.F.R. § 229.45 by permitting the use of an engine which was not free of conditions that endangered the safety of the crew.

Plaintiff's FELA claim fails with respect to these alleged LIA violations, as he has failed to come forward with any evidence that the condition or operation of the locomotive caused his injuries. There is no indication whatsoever in the record that the locomotive was not in a safe condition for operation, that unsafe operation of the locomotive caused Plaintiff's injuries, or that

Defendant failed to properly inspect the locomotive. Plaintiff apparently concedes this point, as he failed to respond in any manner to Defendant's arguments in favor of summary judgment on this issue. The Court therefore concludes that summary judgment will be granted in favor of Defendant that it did not violate any of the LIA regulations set forth in Plaintiff's Complaint.

**2. Failure to Provide a Reasonably Safe Work Environment and Equipment**

"The FELA imposes upon employers a continuous duty to provide a reasonably safe place to work." *Francisco v. Burlington N. R.R. Co.*, 204 F.3d 787, 789 (8th Cir. 2000) (internal quotations and citation omitted). Under this standard, "the employer's conduct is measured by the degree of care that persons of ordinary, reasonable prudence would use under similar circumstances and by what these same persons would anticipate as resulting from a particular condition," such that the duty of care exists "only if there was a reasonable foreseeability of harm." *Id.* (internal alterations, quotations, and citations omitted). Assuming this foreseeability requirement is met, the railroad's duty to protect against a particular risk or threat of harm "becomes more onerous as the risk to the employee increases." *Id.* A railroad's duty of care under the FELA extends to remedying defective track conditions of which it is has notice – that is, those which pose a foreseeable risk of harm – as the FELA expressly contemplates railroad liability for negligently-caused injuries caused by track defects. *See* 45 U.S.C. § 51 ("Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, *track*, roadbed, works, boats, wharves, or other equipment.") (emphasis added).

The extent of a railroad's duty of care under the FELA becomes somewhat more complex when one considers the applicability of Federal Railroad Safety Act ("FRSA") regulations to a

given situation, in that the question arises as to whether compliance with applicable FRSA safety regulations precludes a finding that a railroad has been negligent for purposes of the FELA. Although courts have approached this issue in different ways, the consensus is that if an FRSA regulation directly addresses the type of harm that ultimately resulted, then compliance with that regulation will preclude a finding of liability under the FELA; the following explanation from the Eastern District of Louisiana is representative:

> The rule emerging . . . appears to be that the types of dangers and precautions contemplated by a railroad safety regulation are determinative of whether or not a railroad's compliance with regulations will shield it from liability. More to the point, if an employee's injuries come about in a way not contemplated by a safety regulation, then the railroad's compliance with that regulation might not preclude its having failed to exercise a reasonable standard of care.

*Kansas City S. Ry. Co. v. Nichols Constr. Co.*, 574 F. Supp. 2d 590, 599 (E.D. La. 2008) (internal citations omitted), *vacated in part on other grounds*, 2008 WL 4587113 (E.D. La. 2008). Numerous courts have applied this general principle in finding that a given FRSA regulation was or was not intended to prevent the harm the plaintiff suffered, and that the defendant railroad's duty of care accordingly was or was not subsumed by the regulation. *See, e.g.*, *Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d 426, 433 (6th Cir. 2009) (railroad not negligent for using oversized ballast because the ballast size was in compliance with FRSA regulations, where the plaintiff employees claimed injuries from walking on such ballast over an extended period); *Tufariello v. Long Island Rail Road Co.*, 458 F.3d 80, 86 (2d Cir. 2006) (claim that railroad was negligent in failing to provide hearing protection not precluded by regulation setting minimum volume for train horns); *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 443 (5th Cir. 2001) (excessive-speed claim under FELA precluded by FRSA regulations concerning speed limits).

7

Plaintiff contends that Defendant breached its duty to provide him with a safe workplace by failing to repair the section of track on which he allegedly sustained his injuries, or in the alternative, for failing to reduce the applicable speed limit. He claims that Defendant was on notice of poor track conditions, and was negligent in failing to remedy them, because it had issued a slow order for the section of track in question, prior to the incident in which Plaintiff suffered his alleged injuries.

There are FRSA regulations permitting railroads to operate trains under slow orders, and the Court finds that these are safety regulations that exist, at least in part, to ensure the safety of the locomotive's passengers in the face of unsafe track conditions – that is, to protect against precisely the sort of injury Plaintiff allegedly suffered. *See generally, e.g.*, 49 C.F.R. § 213.233 (setting forth the requirements for FRSA-required track inspections by owners of railroad track); 49 C.F.R. § 234.107(c)(2) (requiring slow orders in certain circumstances at road crossings where a warning signal is falsely activated); 49 C.F.R. § 213.9(b) (providing that a Federal Railroad Administration ("FRA") inspector must reclassify a section of track and therefore reduce the applicable speed limit where the section fails to meet the requirements for its intended class, until the track is brought into compliance with those requirements); 49 C.F.R. § 213.237(e)(2) (requiring an FRA inspector to impose a reduced speed limit where searches for internal track defects, required in certain circumstances, are not feasible for given reasons). Because these regulations concerning slow orders, and presumably others, directly address the harm that ultimately resulted, Defendant cannot be liable for permitting the locomotive to travel over the allegedly defective track under a slow order if FRSA regulations allowed it to do. *See Munns v. CSX Transp., Inc.*, 2009 WL 1514603, at *1 (N.D. Ohio 2009) ("Plaintiff contended that issuance of a 'slow order' at various times for various track segments constituted evidence of defective

8

track. This contention is unavailing: Track Safety Standards expressly under the FRSA permit train operations on slow-ordered track. No liability can ensue in such circumstances.") (internal citation omitted). The existence of these regulations mandate the same conclusion with respect to Plaintiff's claim that Defendant was negligent in failing to issue a more restrictive slow order, in that Plaintiff cannot succeed on this argument unless he can demonstrate that FRSA regulations required the issuance of such an order. *Cf. Murrell v. Union Pac. R.R. Co.*, 544 F. Supp. 2d 1138, 1152 (D. Or. 2008) ("Railroad defendants argue the tracks had been inspected by the FRA inspector before the accident . . . and found to comply with the [applicable] requirements. Plaintiff does not dispute this claim. Thus, I find that plaintiff's [state-law] negligence claim regarding a 'slow order' is covered by federal law and is thus preempted by federal law.").[3]

As such, Plaintiff can only survive summary judgment on his FELA claim if there is a genuine issue of material fact as to whether FRSA regulations required Defendant, before allowing Plaintiff's locomotive to travel over the section of track at issue, either to (a) remedy the alleged track defects or (b) issue a more restrictive slow order. In arguing that Defendant did have the duty to undertake those measures, Plaintiff relies heavily on the deposition testimony of Defendant's corporative representative Joseph Thornburg ("Thornburg"), who acknowledged that company records revealed specific track defects for the section of track – including notations of "rough track," "washouts," and, at the time of Plaintiff's injury, "tie conditions" – and that Defendant's work records do not indicate that the "tie conditions" were remedied prior to the

---

[3] A plaintiff may be able to assert a state-law negligence claim against a railroad for failing to implement a "slow order," applicable FRSA regulations notwithstanding, if he demonstrates that it was "necessary to eliminate or reduce an essentially local safety or security hazard." *See Murrell*, 544 F. Supp. 2d at 1156-57; 49 U.S.C. § 20106(a)(2)(A) (state laws or regulations more restrictive than the FRSA are not preempted by the FRSA to the extent they are necessary to remedy such hazards). That situation is not presented here, however, as Plaintiff is only asserting claims against Defendant under federal law.

9

incident. Thornburg consistently stated, however, that it was proper for Defendant to continue to allow train travel over the track at the designated speeds, and there is no evidence in the record that locomotives – other than the one in which Plaintiff was allegedly injured – ever experienced any problems traveling over that specific section prior to Plaintiff's injury. In sum, then, Thornburg's testimony does not raise a genuine issue of material fact as to whether Defendant's failure to repair the track or issue a more restrictive slow order violated FRSA regulations.

Plaintiff's expert Alan Blackwell ("Blackwell") does state in his expert report that Defendant violated numerous FRSA regulations – specifically, 49 C.F.R. §§ 213.1(a), 213.5(a), 213.103(c), and 213.233(b-c) – by, among other things, failing to repair the track, failing to reduce the speed limit, and failing to conduct FRA inspections in the proper manner and at the required intervals, but his opinions on these matters are entirely conclusory and are therefore insufficient to raise a genuine issue of material fact. *See Dulany v. Carnahan*, 132 F.3d 1234, 1242-43 (8th Cir. 1997) (in prisoner civil rights case, expert physician's "unsupported opinion is not sufficient to create a factual dispute that the prison officials failed to respond reasonably to [the plaintiff's] medical needs"). While Blackwell lists the documents that he reviewed prior to issuing his report, and sets forth the regulations and industry standards that are, in his view, applicable to Defendant's conduct, at no point does he refer to specific facts underlying his conclusions. For example, as noted above, Blackwell opines that Defendant "failed to inspect the track in the proper manner and at the required frequency to ensure that the track was in compliance with internal standards and that [sic] of the FRA." Blackwell does not, however, indicate what it was about Defendant's track inspections that was substandard or how often Defendant did conduct FRA track inspections, in comparison to what is required by FRSA regulations. The same is true with respect to Blackwell's opinion about proper train speed: he

10

states that Defendant "failed to maintain the proper temporary speed restriction," but he fails to establish how he reached that conclusion or what a proper speed restriction would have been. In short, Blackwell's expert report lacks actual application of his alleged expertise to the facts of the case, and it is therefore inadequate to raise any factual disputes as to whether Defendant was negligent under the FELA.

The Court therefore concludes that Defendant is entitled to summary judgment on Plaintiff's FELA claim. Defendant cannot be held liable under the FELA for violating LIA regulations because Plaintiff has not presented any evidence indicating that the locomotive's condition played a role in the incident. As for Plaintiff's remaining allegations of negligence under the FELA, FRSA regulations supply Defendant's duty of care with respect to permitting trains to travel on allegedly defective or substandard track under slow orders, and there is no evidence in the record indicating that Defendant's decision to allow Plaintiff's locomotive to travel on the track in question under a slow order was in violation of such regulations. As a result, there is no genuine issue of material fact as to whether Defendant breached a duty owed to Plaintiff, and summary judgment will therefore be granted in favor of Defendant on this claim.

## IV. CONCLUSION

Defendant's Motion for Summary Judgment will be granted. The LIA does not provide for an independent cause of action, and Defendant is accordingly entitled to summary judgment on Plaintiff's LIA claim. Defendant is likewise entitled to judgment in its favor on Plaintiff's FELA claim, as there is no evidence in the record that Defendant violated any LIA regulations, or that it breached a duty owed to Plaintiff by permitting Plaintiff's locomotive to pass over the section of allegedly defective track under a slow order.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant BNSF Railway Company's Motion for Summary Judgment [doc. #30] is **GRANTED**.

Dated this 7th Day of September, 2010.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE