UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN D. COWDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:08-cv-1534 |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**BNSF RAILWAY COMPANY'S
STATEMENT OF UNCONTROVERTED MATERIAL FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

BNSF Railway Company, Thompson Coburn LLP, and for its Statement of
Uncontroverted Material Facts in Support of its Motion for Summary Judgment, pursuant to
F.R.C.P. 56(a) and Eastern District Local Rule 7-4.01, states as follows:

1.      Plaintiff alleges that on January 14, 2008, he was injured when the locomotive he
was riding in "went over rough track."  (Doc. 103, par. 1).

2.      The track segment at issue is mile post ("MP") 151.4 through 151.8.  (Doc. 103,
par. 9.b).

3.      The track segment where Cowden alleges he was injured was under a slow order
requiring a maximum train speed of 40 miles-per-hour at the time of the alleged incident on
January 14, 2008.  *Exhibit A, p.57.*

4.      Freight trains on track which meets the requirements in Part 213 of the FRA
regulations for Class 3 track can travel up to 40 miles per hour.  49 C.F.R. § 213.5(a).

5.      The track at issue met the requirements in Part 213 of the FRA regulations for
Class 3 track.

6.      Randy McElroy is a track inspector for BNSF.  *Exhibit B, p.6:1-2.*

7.      Joseph Thornburg was the Division Engineer over the territory at issue at the time of the alleged incident.  *Exhibit C, p.9:13-p.10:1.*

8.      BNSF's expert Erik Frohberg is the Director/Track Standards and Procedures for BNSF in Fort Worth, Texas.  *Exhibit D.*

**SURFACE**

9.      Plaintiff has provided no admissible evidence that BNSF failed to maintain the track surface at issue within the proper limits for Class 3 track on January 14, 2008.

10.      The track surface at issue was in compliance with 49 C.F.R. § 213.63 at the time of the alleged incident.

11.      "Surface" is the vertical relationship of the track structure.  *Exhibit C, p.24:16-20.*

12.      Mr. McElroy took track measurements at the location at issue on January 14, 2008 after the alleged incident.  *Exhibit E.*

13.      Mr. Frohberg's report states "the segment was last inspected on 1/11/08 before the alleged incident on 1/14/08 and … no FRA defects were noted."  *Exhibit D, p.7.*

A.      **Dip/deviation from uniform profile**

14.      "Dip" is depression in the track.  *Exhibit B, p.27:25-p.28:4.*

15.      49 C.F.R. § 213.63 "Track surface" requires the following for Class 3 track:  The deviation from uniform profile on either rail at the mid-ordinate of a 62-foot chord may not be more than **2 ¼**".

16.      Here, the "mid-ordinate 62 foot chord" measurement taken on January 14, 2008 after the alleged incident was **2 ¼**".  *Exhibit E.*

17.     The dip measurement taken on January 14, 2008 after the alleged incident was 2 ¼". *Exhibit E.*

18.     Mr. McElroy testified that BNSF was in compliance with the FRA regulations regarding dip at the time of his January 14, 2008 inspection after the alleged incident. *Exhibit B, p.62:13-18.*

**B.     Crosslevel**

19.     "Crosslevel" is the level from the top of one rail across to the top of the other rail. *Exhibit B, p.32:18-p.33:17.*

20.     49 C.F.R. § 213.63 "Track surface" requires the following for Class 3 track:  The deviation from zero crosslevel at any point on tangent or reverse crosslevel elevation on curves may not be more than **1 ¾**".

21.     The crosslevel measurement taken on January 14, 2008 after the alleged incident was **1 ½"**. *Exhibit E.*

22.     49 C.F.R. § 213.63 "Track surface" requires the following for Class 3 track:  The difference in crosslevel between any two points less than 62 feet apart may not be more than **2**".

23.     The maximum difference in 62 feet was **1 ½**" on January 14, 2008 after the alleged incident.  *Exhibit E.*

24.     Mr. McElroy testified that BNSF was in compliance with the FRA regulations regarding crosslevel at the time of his January 14, 2008 inspection after the alleged incident. *Exhibit B, p.62:13-18*.

**C.     Gage.**

25.     "Gage" is the distance between the two rails.  *Exhibit C, p.24:13-15*.

26.     The gage measurement taken on January 14, 2008 after the alleged incident was 56 ½".  *Exhibit E.*

27.     Plaintiff has never alleged any violation regarding gage (49 C.F.R. § 213.53).  (Doc. 103).

**D.     Alinement.**

28.     "Alinement" is if the track is kicked to the right or the left.  *Exhibit B, p.27:19-24.*

29.     Plaintiff has never alleged any violation regarding alinement (49 C.F.R. § 213.55).  (Doc. 103).

30.     Mr. Thornburg testified that he looked at the geometry car data from November 6, 2007 and "there was no surface – track surface or alinement that was – that was out of deviation, everything was good for actually Class 4 or greater."  *Exhibit C, p.53:9-18.*

**E.     Geometry car measurements**

31.     Geometry test vehicles test the surface of the track for profile, surface, alinement, and gage.  *Exhibit C, p.24:4-15.*

32.     Mr. Thornburg testified that he looked at the geometry car data from November 6, 2007, and "there was absolutely no surface conditions, there was no yellow tags, there was no red tags associated with surface through that area."  *Exhibit C, p.52:19-p.53:8.*

33.     Mr. Thornburg testified that he looked at the geometry car data from November 6, 2007 and "as far as any surface, there was no surface – track surface or alinement that was – that was out of deviation, everything was good for actually Class 4 or greater."  *Exhibit C, p.53:9-18.*

34.     Mr. Frohberg testified that the geometry car traversed the location at issue on November 6, 2007, at which time "no conditions were found that would require a slow order or restriction of any kind for Class 4 track.  The fact that no conditions were found indicates the

- 4 -

track structure (rail, ties, ballast, fasteners, anchors, and subgrade) was functioning as intended for maximum authorized speed." *Exhibit D, p.6.*

35.     "[T]he geometry car detected no conditions that would warrant a slow order" on November 6, 2007. *Exhibit D, p.6.*

36.     The geometry car data for November 6, 2007 is attached as Exhibit F and incorporated herein by reference. *See Exhibit C, p.89:11-13.*

37.     The geometry car data for the track at issue dated November 6, 2007 indicates the track meets the requirements for class 4 speeds. *Exhibit F, p.1-3.*

38.     The geometry car data for the track at issue dated July 31, 2007 indicates the track meets the requirements for class 4 speeds. *Exhibit G, p.1.*

39.     The geometry car data for the track at issue dated May 14, 2007 indicates the track meets the requirements for class 4 speeds. *Exhibit H, p.1-3.*

**F.     Conclusion**

40.     Mr. Frohberg's report states "the track inspector measurements post incident indicate that the track was good for class 3 track or 40 mph freight.  The maximum dip was measured at 2 ¼ inches and the maximum cross level was 1 ½ inches which meets the FRA standard for class 3 track – 213.63 (Track Safety Standards Part 213 Subpart A to F.)" *Exhibit D, p.7.*

41.     Mr. Frohberg's report states that "the track segment between mp 151.4 and mp 151.8 on Jan. 14, 2008 was in compliance with BNSF Engineering Instructions, FRA Track Safety Regulations and industry standards." *Exhibit D, p.7.*

42.     Mr. Thornburg testified that the measurements taken by Mr. McElroy after the alleged incident on January 14, 2008 showed "we didn't have a surface defect, we had a surface

condition that was not yet in excess of what was allowable for the class of track at those locations." *Exhibit C, p.100:15-18*.

**G.     Supervisor's report.**

43.     The Supervisor's Report of BNSF Employee Injury/Illness regarding the alleged incident states "Probable Cause/Circumstance Codes:  TRACK (DEFECTIVE)" and "Tool, Machinery, or Surface Code:  BALLAST, STONES, ETC."  *Exhibit I, p.4*.

44.     At the time Mr. Clarke filled out the Supervisor's Report regarding the alleged injury, he did not have access to information concerning actual track conditions, and did not personally inspect the track.  *Exhibit J*.

45.     Mr. Clarke has signed an affidavit stating "the information filled out in the report, including section 19 for Probable Cause/Circumstance Codes and section 20 for Tool, Machinery, or Surface Codes, was based solely on information provided to me by Kevin Cowden, and not on personal knowledge."  *Exhibit J*.

46.     Mr. Thornburg testified that the supervisor would have filled out the Supervisor's Report of BNSF Employee Injury/Illness **only** on information from Plaintiff's own report of the incident.  *Exhibit C, p.7:3-20*.

**MEASUREMENTS UNDER LOAD**

47.     Plaintiff has provided no admissible evidence that BNSF failed to make proper measurements of the track at issue before the alleged incident.

48.     Plaintiff has provided no admissible evidence that BNSF failed to make proper measurements of the track at issue on January 14, 2008 after the alleged incident.

49.     BNSF's measurements of the track at issue after the alleged incident on January 14, 2008 complied with 49 C.F.R. § 213.13.

50. Mr. Thornburg testified that in order to determine how much or if a track measurement would change under the load of a train, one looks for evidence of movement of the rail or ties, including marks on the rocks or supporting material or looking at how much the tie has moved up and down. *Exhibit C, p.101:14-p.102:3; p.103:8-23.*

51. Mr. McElroy testified that when he took the track measurements on the track at issue on January 14, 2008 after the alleged incident, he looked for indications that the measurement would be different if it were under a train load. *Exhibit B, p.30:17-31:10.*

52. Mr. McElroy testified that when he took the track measurements on the track at issue on January 14, 2008 after the alleged incident, he looked to see if there was any evidence of movement under the end of the tie. *Exhibit B, p.30:24-p.31:6.*

### CROSSTIES - HISTORY OF SLOW ORDERS AND TRACK/CROSSTIE REPAIRS

53. Plaintiff has provided no admissible evidence that BNSF failed to adequately maintain the track at issue with adequate ties.

54. Plaintiff has provided no admissible evidence that BNSF failed to provide a sufficient number, type, or quality of crossties in the location at issue.

55. Plaintiff has provided no admissible evidence that BNSF was in violation of 49 C.F.R. § 213.109.

56. At the time of the alleged incident, the track at issue was in compliance with 49 C.F.R. § 213.109.

57. Tie work had been done at approximately milepost 152 in April of 2006, as ties were removed/picked up on April 5, 2006. *Exhibit K, p.8; Exhibit C, p.17-25.*

58. The history of track repairs and slow orders is as follows:

| GANG | MILEPOST | DATE | WORK |
|------|----------|------|------|
| TMGX0114 | 151.45-151.45 | 1/17/07 | "repair##." *Exhibit K, p.7.* |

| | | | |
|---|---|---|---|
| TMGX0114 | 152-152 | 1/31/07 | "general track maintenance" "pull apart" (0 minutes). *Exhibit K, p.7.* |
| TMGX0114 | 151.4-151.4 | 2/5/07 | "repair service failed rail(s)##." *Exhibit K, p.7.* |
| TRWX0569 | 151.3-151.5 | 4/5/07 | "repair##." *Exhibit K, p.6.* |
| | 151.3-151.5 | 4/18/07 | 40 mph slow order already in place "rough surface." *Exhibit L, p.1* (this is the first date available for slow order information). |
| | 151.3-151.5 | 5/1/07 | 40 mph slow order for "rough surface" ended. *Exhibit K, p.1.* |
| | 151.3-151.5 | 5/1/07 | 25 mph slow order began for "disturbed track." [1] *Exhibit L, p.1.* |
| TRWX1184 | 151.4-151.4 | 5/8/07 | "rail joint elimination" work. *Exhibit K, p.7.* |
| TRWX1184 | 151.45-151.45 | 5/8/07 | "rail joint elimination" and "follow D car / report rail defect" (0 minutes). *Exhibit K, p.7.* |
| TRWX1184 | 151.45-151.45 | 5/8/07 | "remove rail – less than 12 inches ##." *Exhibit K, p.7.* |
| TRWX1185 | 151.46-151.455 | 5/8/07 | "rail joint elimination**"** work. *Exhibit K, p.7.* |
| TRPX0016 | 151.33-151.415 | 5/14/07 | "**replace rail**" work. *Exhibit K, p.7.* |
| | | 5/14/07 | Rail geometry met FRA requirements for class 4 speeds. *Exhibit H.* |
| | 151.3-151.5 | 5/23/07 | 25 mph slow order for "disturbed track" ended. *Exhibit L, p.1-2.* |
| | 151.3-151.5 | 5/23/07 | 25 mph slow order began for "tie condition." *Exhibit L, p.2.* |
| | 151.3-151.5 | 5/29/07 | 25 mph slow order for "tie condition" ended. *Exhibit L, p.2.* |
| BBCX0113 | 151.3-151.3 | 7/18/07 | "repair bridge" work "washed and cleaned piers and headwalls on bridge." *Exhibit K, p.7.* |
| BBCX0403 | 151.3-151.3 | 7/18/07 | "repair bridge" and "follow D car / report rail defect." *Exhibit K, p.6.* |
| BBCX0113 | 151-151 | 7/18/07 | "repair bridge" work. *Exhibit K, p.5.* |
| BBCX0403 | 151.3-151.3 | 7/19/07 | "repair bridge" work. *Exhibit K, p.7.* |
| BBCX0403 | 151.3-151.3 | 7/30/07 | "sir M bridge exception" work. *Exhibit K, p.6.* |
| | | 7/31/07 | Rail geometry met FRA requirements for class 4 speeds. *Exhibit G.* |
| TMGX0114 | 151-152 | 8/8/07 | "Repair##." *Exhibit K, p.6.* |
| TRWX0569 | 151-152 | 8/8/07 | "production##." *Exhibit K, p.6.* |
| TMOX0740 | 151-152 | 9/8/07 | "support/assist MTCE activities." [2] *Exhibit K, p.5.* |

---

[1] Mr. Thornburg testified that "disturbed track is an indication of some type of work activity that has occurred and you're allowing trains to pass to get the track to restore back to its stability, the balance to compact." *Exhibit C, p.49:12-16.*

[2] Mr. Thornburg testified that "support/assist MTCE activities" means "maintenance activities." *Exhibit C, p.33:6-8.*

| | | | |
|---|---|---|---|
| TSCX0109 | 151-152 | 9/8/07 | "surface track." *Exhibit K, p.5*. |
| TMGX0114 | 151-152 | 9/8/07 | "support/assist MTCE activities." *Exhibit K, p.5*. |
| TRWX0124 | 151-152 | 9/8/07 | "support/assist MTCE activities." *Exhibit K, p.5*. |
| TMOX0339 | 151.4-151.7 | 9/8/07 | "support/assist MTCE activities" and "follow D car/report rail defect." *Exhibit K, p.6*. |
| BINS0101 | 151.3-151.8 | 9/8/07 | "inspect bridges." *Exhibit K, p.7*. |
| TTD0322 | 151-152 | 9/8/07 | "general track maintenance" with a note "Golden City, Mo. **Washout**." *Exhibit K, p.6*. |
| TRW0569 | 151-152 | 9/8/07 | "support/assist MTCE activities." *Exhibit K, p.5*. |
| TSE0138 | 151-152 | 9/8/07 | "support/assist MTCE activities." *Exhibit K, p.5*. |
| | 151.4-151.8 | 9/9/07 | 25 mph slow order began for "**washout** site." *Exhibit L, p.2*. |
| TRWX0841 | 151.5-151.7 | 9/9/07 | "support/assist MTCE activities" and "follow D car / report rail defect." *Exhibit K, p.7*. |
| TSEC956 | 151.5-151.9 | 9/9/07 | "general track maintenance" for "**washout at** Golden City." *Exhibit K, p.7*. |
| TRWX0841 | 151.5-151.7 | 9/9/07 | "support/assist MTCE activities." *Exhibit K, p.7*. |
| TSCX0109 | 151-152 | 9/9/07 | "surface track" work. *Exhibit K, p.6*. |
| TSEC0722 | 151-151.5 | 9/9/07 | "unload/place ballast/rip rap." *Exhibit K, p.6*. |
| TSEC0132 | 151-151.5 | 9/9/07 | "general track maintenance" and "thermite weld construction." *Exhibit K, p.6*. |
| TTPG0162 | 151-152 | 9/9/07 | "unload/place ballast/rip rap." *Exhibit K, p.6*. |
| TMOX0740 | 151-152 | 9/9/07 | "support/assist MTCE activities." *Exhibit K, p.6*. |
| TRWX0882 | 151-152 | 9/9/07 | "support/assist MTCE activities." *Exhibit K, p.6*. |
| TSCX0112 | 151-151.8 | 9/9/07 | "surface track" work. *Exhibit K, p.5*. |
| TRWX0124 | 151-152 | 9/9/07 | "support/assist MTCE activities." *Exhibit K, p.6*. |
| TSCX0109 | 151-152 | 9/10/07 | "surface track" work. *Exhibit K, p.6*. |
| TMGX0114 | 151-152 | 9/10/07 | "support/assist MTCE activities." *Exhibit K, p.5*. |
| TMGX0114 | 151-152 | 9/11/07 | "support/assist MTCE activities." *Exhibit K, p.5*. |
| TSCX0109 | 151-152 | 9/11/07 | "surface track" work. *Exhibit K, p.5*. |
| TSCX0109 | 151-152 | 9/12/07 | "surface track" work. *Exhibit K, p.5*. |
| TMGX0114 | 151-152 | 9/12/07 | "support/assist MTCE activities." *Exhibit K, p.6*. |
| TMGX0114 | 151-152 | 9/13/07 | "support/assist MTCE activities." *Exhibit K, p.5*. |
| TSCX0109 | 151-152 | 9/13/07 | "surface track" work. *Exhibit K, p.5*. |
| TMGX0114 | 151-152 | 9/14/07 | "support/assist MTCE activities." *Exhibit K, p.5*. |
| TSCX0109 | 151-152 | 9/14/07 | "surface track" (0 minutes worked). *Exhibit K, p.6*. |
| TSCX0109 | 151-152 | 9/17/07 | "surface track" work. *Exhibit K, p.6*. |
| TMGX0114 | 151-152 | 9/17/07 | "support/assist MTCE activities." *Exhibit K, p.5*. |
| TMGX0114 | 151-152 | 9/18/07 | "support/assist MTCE activities." *Exhibit K, p.6*. |
| TSC0109 | 151-152 | 9/18/07 | "surface track" work. *Exhibit K, p.6*. |
| TMGX0114 | 151-152 | 9/19/07 | "support/assist MTCE activities." *Exhibit K, p.5*. |
| TMGX0114 | 151-152 | 9/20/07 | "support/assist MTCE activities." *Exhibit K, p.5*. |
| TMGX0114 | 151-152 | 9/21/07 | "support/assist MTCE activities." *Exhibit K, p.5*. |
| | 151.4-151.8 | 10/9/07 | Trouble ticket states "have a report of rough track," 25 mph slow order. *Exhibit M*. |

| | 151.4-151.8 | 10/9/07 | Slow order changed from 40 mph to 25 mph – reason remains "washout site." *Exhibit L, p.3.* |
|---|---|---|---|
| | 151.4-151.8 | 10/25/07 | slow order regarding "**washout** site" increased from 25 mph to 40 mph. *Exhibit L, p.3.* |
| | 151.4-151.8 | 11/2/07 | 40 mph slow order for "**washout** site" **ended**. *Exhibit L, p.3.* |
| | 151.4-151.8 | 11/2/07 | 40 mph slow order began re "tie condition." *Exhibit L, p.3.* |
| | | 11/6/07 | Rail geometry met FRA requirements for class 4 speeds. *Exhibit F.* |
| TTD0309 | 151-151 | 11/11/07 | "support/assist MTCE activities." *Exhibit K, p.5.* |
| TTD0309 | 151-151 | 11/12/07 | "support/assist MTCE activities." *Exhibit K, p.5.* |
| TTD0309 | 151-151 | 11/13/07 | "support/assist MTCE activities" and "follow D car / report rail defect." *Exhibit K, p.5.* |
| TTD0309 | 151-151 | 11/14/07 | "support/assist MTCE activities." *Exhibit K, p.6.* |
| TTD0309 | 151-151 | 11/15/07 | "support/assist MTCE activities." *Exhibit K, p.5.* |
| TTD0309 | 151-151 | 11/16/07 | "support/assist MTCE activities." *Exhibit K, p.6.* |
| | 151.4-151.8 | 1/14/08 | 40 mph slow order re "tie condition" still in effect. *Exhibit L, p.5.* |

## A.    MAY 2007 SLOW ORDERS

59.    Work was done on the track from MP 151.3 to 151.5 to "correct the rough track surface" on or around May 23, 2007.  *Exhibit C, p.22:2-p.23:1.*

60.    Mr. Thornburg testified that changing the reason for a slow order from disturbed track to tie condition (as indicated on May 23, 2007) is "not normal.  It should stay disturbed track and then the slow order would come completely off.  So that's the reason I'm questioning really was that tie condition. … [B]ut I really question that that is the – it's probably disturbed track and it just got carried – for some reason got changed over to tie condition in the coding.  And that is – that is a problem that does occur when you're coding and using a code.  Instead of spelling it out you type in a DT or TC or something like that that indicates that code, and that has happened in the past in my experience." *Exhibit C, p.49:8-p.50:7;*See also *p.21:18-p.23:1; p.68:15-18; p.84:13-p.85:19.*

61.    The indication of a "tie condition" as the reason for the May 23, 2007 slow order "was just a continuance of that slow order continuing on all the way from" May 1, 2007 regarding disturbed conditions.  *Exhibit C, p.22:2-6.*

62.    Mr. Thornburg testified as to the slow order from May 23, 2007 through May 29, 2007 that "I don't believe that those were tie condition.  I believe they're disturbed track because they run concurrent with the disturbed track, and it would be logical that they would be disturbed track instead of tie condition because the slow order was completely removed on 5/28." *Exhibit C, p.61:9-19*.

63.    Mr. Thornburg testified that "I don't believe it was ever a tie condition in May" 2007. *Exhibit C, p.51:23-24*.

**B.    SEPTEMBER 2007 "WASHOUT"**

64.    Mr. Thornburg testified that "there had been heavy rainfall in the area on, I believe, it was September 9[th].  …  At this 151.4 to 8 area the water had been over the track and washed the rock in spots in – between 151.4 and 151.8 in spots it had washed the rock out between the ties." *Exhibit C, p.32:2-11*.

**C.    TROUBLE TICKETS**

65.    As for "trouble tickets," Mr. Frohberg's report states "Engineering Trouble Tickets may be called in by various people ranging from concerned citizens to BNSF TYE personnel.  A report of rough track is a generic term that would generate a call out to one of our engineering employees to inspect the reported segment of track.  Rough track is also generic and open to interpretation as to what constitutes a rough ride due to its subjectivity." *Exhibit D, p.7*.

## D.    SUBSEQUENT REMEDIAL MEASURES

66.    Any evidence of a slow order placed on the track at issue after the alleged incident is inadmissible evidence of a subsequent remedial measure.  Fed.R.Evid. 407.[3]

67.    Mr. Frohberg's report states that "it is not uncommon to drop the speed of the track after an incident so the segment can further be reviewed either by the assigned Track Inspector and or another qualified employee.  It should be noted that trains continue to run and time is needed to complete the inspections" *Exhibit D, p.6*.

68.    Mr. Frohberg's report states that if a 25 mph slow order was placed after the alleged "rough track" was reported to BNSF, he "would deem [it] prudent given a report of an alleged injury." *Exhibit D, p.7*.

69.    On October 9, 2007, a trouble ticket stated "have a report of rough track" and a 25 mph slow order was put into effect because of that report.  *Exhibit M*.

70.    BNSF reduces the speed on a track where rough track has been reported as a matter of course.  *See Exhibit M*.

### BALLAST

71.    Plaintiff has provided no admissible evidence that BNSF failed to adequately maintain the track at issue with adequate ballast.

72.    Plaintiff has provided no admissible evidence that BNSF failed to support the track at issue with proper ballast material to provide adequate drainage.

73.    Plaintiff has provided no admissible evidence that the track at issue was in violation of 49 C.F.R. § 213.103(c) at the time of the alleged incident.

---

[3] BNSF anticipates that Plaintiff's Response will address evidence of a slow order imposed after the alleged incident, which is improper evidence of a subsequent remedial measure.  However, since BNSF will not have a second opportunity to set forth material facts as required by the local rules, it addresses the issue here under protest.

74.     The track at issue was in compliance with 49 C.F.R. § 213.103(c) at the time of the alleged incident.

75.     Plaintiff has provided no admissible evidence that the track at issue was in violation of 49 C.F.R. § 213.103(d) at the time of the alleged incident.

76.     The track at issue was in compliance with 49 C.F.R. § 213.103(d) at the time of the alleged incident.

77.     Plaintiff has presented no evidence of "fouled" ballast in the location at issue at the time of the alleged incident.  *See Exhibit A, p.63:1-11*.

78.     Plaintiff has presented no evidence of "muddy" ballast in the location at issue at the time of the alleged incident.  *See Exhibit A, p.63:1-11*.

79.     Plaintiff testified that "it was muddy around that area" where the incident occurred, and he saw that "it was muddy around the track."  *Exhibit A, p.63:1-11*.

80.     Plaintiff testified that the alleged incident "happened, like I said earlier, where the mud would stay there.  I remember that's where it happened."  *Exhibit A, p.81:11-18*.

81.     Plaintiff never testified that there was mud in the ballast.  *See Exhibit A*.

### TRACK CLASSIFICATION / SPEED

82.     Plaintiff has provided no admissible evidence that BNSF failed to properly classify the track at issue in a proper class.

83.     Plaintiff has provided no admissible evidence that BNSF was in violation of 49 C.F.R. § 213.9(b) regarding the track at issue at the time of the alleged incident.

84.     Plaintiff has provided no admissible evidence that BNSF failed to timely reduce the track speed because the track did not meet all requirements for Class 3 track before the alleged incident.

85.     At the time of the alleged incident, the track at issue met all requirements for Class 3 track.

86.     Plaintiff has provided no admissible evidence that BNSF negligently failed to reduce the track speed in the location at issue before the alleged incident.

87.     Mr. Frohberg's report states that the measurements taken on the day of the alleged incident were consistent with the 40 mph slow order which was in place at the time of the alleged incident.  *Exhibit D, p.6.*

88.     Mr. Frohberg's report states "the track inspector measurements post incident indicate that the track was good for class 3 track or 40 mph freight.  The maximum dip was measured at 2 ¼ inches and the maximum cross level was 1 ½ inches which meets the FRA standard for class 3 track – 213.63 (Track Safety Standards Part 213 Subpart A to F.)"  *Exhibit D, p.7.*

89.     Mr. Frohberg's report states "the measurements taken would validate a 40 mph slow order which was the restriction at the time of the alleged incident."  *Exhibit D, p.7.*

90.     When Mr. McElroy asked if he could have downgraded the track to Class 2 and a 25 mile per hour maximum speed before the alleged incident, he testified he had "no reason to do it" because "there was no defect."  *Exhibit B, p.65:19-p.66:5.*

### "COMBINATION OF FACTORS"

91.     Plaintiff has provided no admissible evidence that BNSF knew or should have known that a combination of track conditions failed to provide for safe operations over the track at issue before the alleged incident.

92.     Plaintiff has provided no admissible evidence that BNSF knew or should have known that a combination of track conditions failed to provide for safe operations over the track at issue at the time of the alleged incident.

93.     Plaintiff has provided no admissible evidence that BNSF was in violation of 49 C.F.R. § 213.1(a) at the time of the alleged incident.

94.     The track at issue was in compliance with 49 C.F.R. § 213.1(a) at the time of the alleged incident.

95.     Plaintiff has provided no admissible evidence that BNSF knew or should have known of a combination of track geometry conditions that failed to ensure good ride quality and safe operations in the location at issue before the alleged incident.

96.     When Mr. McElroy asked if he could have downgraded the track to Class 2 and a 25 mile per hour maximum speed before the alleged incident, he testified he had "no reason to do it" because "there was no defect." *Exhibit B, p.65:19-p.66:5.*

97.     Mr. Frohberg's report states that no trouble tickets were called in between the time of the geometry car reading on November 6, 2007 and the time of the alleged incident on January 14, 2008." *Exhibit D, p.7.*

### TRACK INSPECTIONS

98.     Plaintiff has presented no evidence that BNSF failed to inspect the track in the proper manner near MP 151.4 through 151.8 before the alleged incident.

99.     Plaintiff has presented no evidence that BNSF failed to inspect the track with the proper frequency near MP 151.4 through 151.8 before the alleged incident

100.     Plaintiff has provided no admissible evidence that BNSF failed to comply with 49 C.F.R. § 213.233(b) before the time of the alleged incident.

101.    BNSF inspected the track at issue in compliance with 49 C.F.R. § 213.233(b) before the alleged incident.

102.    Plaintiff has provided no admissible evidence that BNSF failed to comply with 49 C.F.R. § 213.233(c) before the time of the alleged incident.

103.    BNSF inspected the track at issue in compliance with 49 C.F.R. § 213.233(c) before the alleged incident.

104.    Mr. Frohberg's report states that "the track inspections were done according to FRA and BNSF requirements." *Exhibit D, p.6.*

105.    Mr. Frohberg's report states "the segment was last inspected on 1/11/08 before the alleged incident on 1/14/08 and it should be noted that no FRA defects were noted.  This is within the required FRA and BNSF frequency." *Exhibit D, p.7.*

106.    Mr. Frohberg's report states "[t]he 40 pages of inspection documentation over the prior year to the alleged incident indicate the frequency of inspection was per FRA and BNSF requirements." *Exhibit D, p.7.*

107.    Pursuant to the FRA Track Inspection report for mile post range 148 to 158, the mainline track at issue (mile post 151.4-151.8) was inspected on the following dates (looking at the beginning mile post (BMP) and the ending mile post (EMP) on the inspection report):

| | |
|---|---|
| 1/2/07 | *Exhibit N, p.1.* |
| 1/4/07 | *Exhibit N, p.1.* |
| 1/8/07 | *Exhibit N, p.1.* |
| 1/11/07 | *Exhibit N, p.1.* |
| 1/16/07 | *Exhibit N, p.2.* |
| 1/18/07 | *Exhibit N, p.2.* |
| 1/19/07 | *Exhibit N, p.2.* |
| 1/22/07 | *Exhibit N, p.2.* |
| 1/23/07 | *Exhibit N, p.3.* |
| 1/25/07 | *Exhibit N, p.3.* |
| 1/29/07 | *Exhibit N, p.3.* |
| 1/30/07 | *Exhibit N, p.3.* |

| | |
|---|---|
| 1/31/07 | *Exhibit N, p.4.* |
| 2/1/07 | *Exhibit N, p.4.* |
| 2/2/07 | *Exhibit N, p.4.* |
| 2/3/07 | *Exhibit N, p.4.* |
| 2/5/07 | *Exhibit N, p.4..* |
| 2/6/07 | *Exhibit N, p.4.* |
| 2/9/07 | *Exhibit N, p.4.* |
| 2/12/07 | *Exhibit N, p.5.* |
| 2/14/07 | *Exhibit N, p.5.* |
| 2/15/07 | *Exhibit N, p.5.* |
| 2/16/07 | *Exhibit N, p.5.* |
| 2/19/07 | *Exhibit N, p.5.* |
| 2/22/07 | *Exhibit N, p.5.* |
| 2/23/07 | *Exhibit N, p.6.* |
| 2/26/07 | *Exhibit N, p.6.* |
| 3/1/07 | *Exhibit N, p.6.* |
| 3/2/07 | *Exhibit N, p.6.* |
| 3/5/07 | *Exhibit N, p.7.* |
| 3/7/07 | *Exhibit N, p.7.* |
| 3/8/07 | *Exhibit N, p.7.* |
| 3/9/07 | *Exhibit N, p.7.* |
| 3/12/07 | *Exhibit N, p.7.* |
| 3/14/07 | *Exhibit N, p.7.* |
| 3/19/07 | *Exhibit N, p.8.* |
| 3/22/07 | *Exhibit N, p.8.* |
| 3/23/07 | *Exhibit N, p.8.* |
| 3/26/07 | *Exhibit N, p.8.* |
| 3/29/07 | *Exhibit N, p.8.* |
| 3/30/07 | *Exhibit N, p.9.* |
| 4/2/07 | *Exhibit N, p.9.* |
| 4/4/07 | *Exhibit N, p.9.* |
| 4/5/07 | *Exhibit N, p.9.* |
| 4/7/07 | *Exhibit N, p.9.* |
| 4/8/07 | *Exhibit N, p.9.* |
| 4/9/07 | *Exhibit N, p.10.* |
| 4/12/07 | *Exhibit N, p.10.* |
| 4/14/07 | *Exhibit N, p.10.* |
| 4/17/07 | *Exhibit N, p.10.* |
| 4/18/07 | *Exhibit N, p.10.* |
| 4/20/07 | *Exhibit N, p.10.* |
| 4/23/07 | *Exhibit N, p.11.* |
| 4/26/07 | *Exhibit N, p.11.* |
| 4/30/07 | *Exhibit N, p.11.* |
| 5/3/07 | *Exhibit N, p.11.* |
| 5/7/07 | *Exhibit N, p.12.* |
| 5/10/07 | *Exhibit N, p.12.* |

| | |
|---|---|
| 5/14/07 | *Exhibit N, p.12.* |
| 5/17/07 | *Exhibit N, p.12.* |
| 5/21/07 | *Exhibit N, p.12.* |
| 5/24/07 | *Exhibit N, p.12.* |
| 5/28/07 | *Exhibit N, p.13.* |
| 5/31/07 | *Exhibit N, p.13.* |
| 6/1/07 | *Exhibit N, p.13.* |
| 6/4/07 | *Exhibit N, p.13.* |
| 6/7/07 | *Exhibit N, p.14.* |
| 6/11/07 | *Exhibit N, p.14.* |
| 6/12/07 | *Exhibit N, p.14.* |
| 6/14/07 | *Exhibit N, p.14.* |
| 6/15/07 | *Exhibit N, p.14.* |
| 6/18/07 | *Exhibit N, p.14.* |
| 6/19/07 | *Exhibit N, p.15.* |
| 6/21/07 | *Exhibit N, p.15.* |
| 6/22/07 | *Exhibit N, p.15.* |
| 6/25/07 | *Exhibit N, p.15.* |
| 6/28/07 | *Exhibit N, p.16.* |
| 6/29/07 | *Exhibit N, p.16.* |
| 7/2/07 | *Exhibit N, p.16.* |
| 7/3/07 | *Exhibit N, p.16.* |
| 7/5/07 | *Exhibit N, p.16.* |
| 7/6/07 | *Exhibit N, p.16.* |
| 7/7/07 | *Exhibit N, p.16.* |
| 7/8/07 | *Exhibit N, p.17.* |
| 7/9/07 | *Exhibit N, p.17.* |
| 7/10/07 | *Exhibit N, p.17.* |
| 7/13/07 | *Exhibit N, p.17.* |
| 7/15/07 | *Exhibit N, p.17.* |
| 7/16/07 | *Exhibit N, p.17.* |
| 7/17/07 | *Exhibit N, p.17.* |
| 7/18/07 | *Exhibit N, p.18.* |
| 7/19/07 | *Exhibit N, p.18.* |
| 7/23/07 | *Exhibit N, p.18.* |
| 7/25/07 | *Exhibit N, p.18.* |
| 7/26/07 | *Exhibit N, p.19.* |
| 7/27/07 | *Exhibit N, p.19.* |
| 7/28/07 | *Exhibit N, p.19.* |
| 7/31/07 | *Exhibit N, p.19.* |
| 8/1/07 | *Exhibit N, p.19.* |
| 8/2/07 | *Exhibit N, p.19.* |
| 8/3/07 | *Exhibit N, p.19.* |
| 8/4/07 | *Exhibit N, p.20.* |
| 8/5/07 | *Exhibit N, p.20.* |
| 8/6/07 | *Exhibit N, p.20.* |

| | |
|---|---|
| 8/7/07 | *Exhibit N, p.20.* |
| 8/8/07 | *Exhibit N, p.20.* |
| 8/9/07 | *Exhibit N, p.20.* |
| 8/10/07 | *Exhibit N, p.21.* |
| 8/11/07 | *Exhibit N, p.21.* |
| 8/12/07 | *Exhibit N, p.21.* |
| 8/13/07 | *Exhibit N, p.21.* |
| 8/14/07 | *Exhibit N, p.21.* |
| 8/15/07 | *Exhibit N, p.22.* |
| 8/16/07 | *Exhibit N, p.22.* |
| 8/17/07 | *Exhibit N, p.22.* |
| 8/20/07 | *Exhibit N, p.22.* |
| 8/22/07 | *Exhibit N, p.22.* |
| 8/24/07 | *Exhibit N, p.22.* |
| 8/27/07 | *Exhibit N, p.23.* |
| 8/28/07 | *Exhibit N, p.23.* |
| 8/30/07 | *Exhibit N, p.23.* |
| 9/3/07 | *Exhibit N, p.23.* |
| 9/4/07 | *Exhibit N, p.23.* |
| 9/6/07 | *Exhibit N, p.23.* |
| 9/7/07 | *Exhibit N, p.23.* |
| 9/8/07 | *Exhibit N, p.24.* |
| 9/10/07 | *Exhibit N, p.24.* |
| 9/11/07 | *Exhibit N, p.24.* |
| 9/13/07 | *Exhibit N, p.24.* |
| 9/17/07 | *Exhibit N, p.24.* |
| 9/20/07 | *Exhibit N, p.24.* |
| 9/21/07 | *Exhibit N, p.25.* |
| 9/24/07 | *Exhibit N, p.25.* |
| 9/25/07 | *Exhibit N, p.25.* |
| 9/27/07 | *Exhibit N, p.25.* |
| 10/1/07 | *Exhibit N, p.25.* |
| 10/4/07 | *Exhibit N, p.26.* |
| 10/8/07 | *Exhibit N, p.26.* |
| 10/9/07 | *Exhibit N, p.26* ("Late Reason: Synchronization failure"). |
| 10/11/07 | *Exhibit N, p.26.* |
| 10/12/07 | *Exhibit N, p.26.* |
| 10/15/07 | *Exhibit N, p.26.* |
| 10/18/07 | *Exhibit N, p.26.* |
| 10/22/07 | *Exhibit N, p.27.* |
| 10/23/07 | *Exhibit N, p.27.* |
| 10/25/07 | *Exhibit N, p.27.* |
| 10/29/07 | *Exhibit N, p.27.* |
| 11/1/07 | *Exhibit N, p.27.* |
| 11/5/07 | *Exhibit N, p.28.* |
| 11/8/07 | *Exhibit N, p.28.* |

11/12/07   *Exhibit N, p.28*.
11/13/07   *Exhibit N, p.28*.
11/15/07   *Exhibit N, p.28*.
11/19/07   *Exhibit N, p.28*.
11/20/07   *Exhibit N, p.29*.
11/21/07   *Exhibit N, p.29*.
11/24/07   *Exhibit N, p.29*.
11/26/07   *Exhibit N, p.29*.
11/27/07   *Exhibit N, p.29*.
11/29/07   *Exhibit N, p.30*.
12/3/07    *Exhibit N, p.30*.
12/6/07    *Exhibit N, p.30*.
12/10/07   *Exhibit N, p.30*.
12/11/07   *Exhibit N, p.30*.
12/13/07   *Exhibit N, p.31*.
12/17/07   *Exhibit N, p.31*.
12/20/07   *Exhibit N, p.31*.
12/23/07   *Exhibit N, p.32*.
12/26/07   *Exhibit N, p.32*.
12/27/07   *Exhibit N, p.32*.
12/30/07   *Exhibit N, p.32*.
1/2/08     *Exhibit N, p.32*.
1/3/08     *Exhibit N, p.32*.
1/4/08     *Exhibit N, p.32*.
1/8/08     *Exhibit N, p.33*.
1/11/08    *Exhibit N, p.33*.
1/14/08    *Exhibit N, p.33*.

## SAFE CONDITIONS TO WORK

108.   Plaintiff has provided no admissible evidence that BNSF failed to provide him with reasonably safe conditions to work.

109.   BNSF did not have notice that the track at issue was out of compliance with the FRA regulations in Chapter 213 before the alleged incident.

110.   BNSF could not have had notice that the track at issue was out of compliance with the FRA regulations in Chapter 213 before the alleged incident because the evidence shows that it **was** in compliance.

111.     Plaintiff has provided no admissible evidence that BNSF failed to comply with 49 C.F.R. § 213.5(a) regarding the track at issue before the time of the alleged incident.

112.     BNSF was in compliance with 49 C.F.R. § 213.5(a) regarding the track at issue before the time of the alleged incident.

113.     There is no evidence in the record that BNSF breached a duty owed to Plaintiff by permitting Plaintiff's locomotive to pass over the section of allegedly defective track under a 40 mph slow order on January 14, 2008.

## FORESEEABILITY

114.     Plaintiff has provided no admissible evidence that the alleged incident was foreseeable.

115.     Plaintiff testified that in the six month period before January 14, 2008, he had ridden locomotives over the track at issue where the alleged incident occurred "multiple times" on a variety of different trains going both north and south.  *Exhibit A, p.62:1-9.*

116.     Plaintiff estimated he had ridden locomotives over the track where the alleged incident occurred 150 to 200 times in the six months before January 14, 2008.  *Exhibit A, p.62:10-13.*

117.     Plaintiff testified that in the six month period before January 14, 2008, he had never experienced any problems riding locomotives over the track where the alleged incident occurred.  *Exhibit A, p.61:13-20.*

118.     Plaintiff testified that in the 150-200 times he rode a locomotive over the track at issue in the six month period before January 14, 2008, he did not experience any problems, bouncing, or anything indicating the track was too rough.  *Exhibit A, p.62:14-20.*

119.    When Plaintiff rode the locomotive over the area at issue on January 14, 2008, he did not see anything different about the conditions of the area.  *Exhibit A, p.64:13-19*.

120.    On January 14, 2008, Plaintiff did not receive any calls or hear any radio transmissions from other trains indicating that they had gone over the area and experience any type of problem with the tracks.  *Exhibit A, p.64:20-p.65:1*.

121.    Plaintiff believes he was the first one to encounter any problem riding a locomotive over the area at issue with the 40 mile per hour speed restriction.  *Exhibit A, p.65:2-6*.

122.    At the time of the alleged incident, Plaintiff testified to the best of his memory that the train was traveling between 35 and 38 miles per hour, "but I know it was 40 or less for a fact."  *Exhibit A, p.65:23-p.66:5*.

123.    Plaintiff testified that at the time of the alleged incident, the train was operated in full compliance with the operating rules and the slow order.  *Exhibit A, p.66:6-15*.

124.    Plaintiff has no criticisms of the engineer's operation of the train that day.  *Exhibit A, p.66*.

### ALAN BLACKWELL

125.    BNSF has moved to bar the expert opinions of Plaintiff's retained expert, Alan Blackwell.

126.    Without the opinions of Alan Blackwell, Plaintiff has provided no admissible evidence to support the claims in his First Amended Complaint.

Respectfully submitted,


s/ Thomas E. Jones
Thomas E. Jones, #34549MO
Harlan A. Harla, #35567
525 West Main Street
P.O. Box 750
Belleville, Illinois  62222-0750
618-277-4700
FAX 618-236-3434
tjones@thompsoncoburn.com
hharla@thompsoncoburn.com

Attorney for Defendant

OF COUNSEL:
THOMPSON COBURN LLP

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of July, 2013, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:  Ms. Elizabeth M. Wilkins.

s/ Thomas E. Jones

- 23 -