UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KEVIN D. COWDEN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:08CV01534 ERW |
| BNSF RAILWAY COMPANY, | ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant BNSF Railway Company's Second Motion to Bar the Expert Testimony of Alan Blackwell [ECF No. 122].

## I.     BACKGROUND

This suit arises out of injuries allegedly sustained by Plaintiff Kevin D. Cowden while riding in a locomotive as an employee of Defendant BNSF Railway Company. Plaintiff alleges his injuries resulted from poor track conditions, and Defendant negligently failed to provide him with reasonably safe work conditions.

In support of his claims, Plaintiff seeks to offer the expert testimony of Alan Blackwell, a self-described "railway consultant/expert witness" and a former employee of Union Pacific Railroad Company. If permitted, Blackwell would testify Defendant violated certain standards of care, and in doing so failed to provide Plaintiff with a reasonably safe work environment. Blackwell's qualifications for providing expert testimony on these topics are primarily based on his employment with Union Pacific in positions such as track inspector, manager of track maintenance (roadmaster), and relief roadmaster from 1983 through 1995, during which time he conducted Federal Railroad

Administration (FRA) track inspections and managed and oversaw track maintenance. Blackwell's Supplemental Report contains the following summary of his conclusions:

- BNSF Railway failed to support the track near MP 151.4 through 151.8 with proper ballast material to provide adequate drainage for the track.

- BNSF Railway failed to support the track near MP 151.4 through 151.8 with proper ballast material to maintain proper track surface.

- BNSF Railway failed to maintain a sufficient number of non-defective ties that was capable of providing support so as to ensure track surface problems did not result.

- BNSF Railway failed to maintain the track surface near MP 151.4 through 151.8 within the proper maintenance limits for Class 3 track.

- BNSF Railway failed to make proper measurements of the track near MP 151.4 through 151.8 that considered the amount of rail movement that would occur if the track was loaded.

- BNSF Railway failed to provide a sufficient number, type, and/or quality of crossties near MP 151.4 through 151.8 to provide effective support for maintaining the surface within the limits prescribed by 49 C.F.R. § 213.63.

- BNSF Railway failed to provide remedial action when it knew or should have known that a combination of track conditions failed to provide for safe operations over the track near MP 151.4 through 151.8.

- BNSF Railway failed to take corrective or remedial action by repairing, restricting movement, or removing the track from service near MP 151.4 through 151.8 despite notice that the track did not comply with requirements.

- BNSF Railway failed to perform inspections of the track in the proper manner and frequency near MP 151.4 through 151.8.

- BNSF Railway failed to follow AREMA Standards that are the custom and practice of the industry and was not in compliance with the following standards of care:

    BNSF Engineering Instructions 2.1, 2.2.3, 2.4.4, 2.4.5, 4.1, 4.2, 4.3, 7.1, 8.2, 8.6, and 8.9;

    BNSF Maintenance of Way Operating Rules 1.1.3, 1.4 and 1.24;

    BNSF Safety Rule S-1.5.2 Inspection;

> FRA Regulations 213.1(a), 213.5(a), 213.13, 213.63, 213.109(b), 213.103(c) and (d), 213.109(b) and 213.233(b) and (c)[.]

[ECF No. 127-1 at 23-24].

## II. DISCUSSION

Defendant contends that the Court should exclude Blackwell's testimony because (1) his opinions lack a reliable factual foundation; (2) he failed to perform the necessary research and testing to constitute a reliable methodology; (3) his opinions make improper legal conclusions; (4) he discusses inadmissible subsequent remedial measures; (5) he opines about issues precluded by federal law; and (6) his enumerated opinions contain other various flaws that warrant exclusion. The Court addresses each of Defendant's objections, in turn.[1]

### A. *Factual Foundation*

Defendant first contends that Blackwell's opinions lack a sufficient factual foundation. Defendant asserts three factual problems with Blackwell's testimony and report: (1) Blackwell performed his site inspection over two years after the alleged accident; (2) Blackwell misconstrues the testimony of Randy McElroy, a track inspector employed by Defendant; and (3) Blackwell's conclusions incorrectly assume that the track's ballast contained mud at the time of the incident.

#### 1. *Site Inspection on January 20, 2010*

Defendant argues Blackwell's testimony will not assist the jury in assessing the track conditions on January 14, 2008, the date of the alleged accident, because Blackwell performed his

---

[1] As an initial matter, Plaintiff contends the instant Motion constitutes a motion to reconsider, because the Court previously ruled on the admissibility of Blackwell's evidence on August 19, 2010. Plaintiff asserts, in moving to "reconsider," Defendant has a substantial burden to demonstrate a "manifest error of law." [ECF No. 137 at 8]. The Court does not agree. Since the Court's previous Order [ECF No. 56], Plaintiff has filed his First Amended Complaint [ECF No. 103], and many of the issues in this case have changed. Thus, the instant Motion is not properly characterized as a "motion to reconsider."

site inspection over two years later on January 20, 2010. Defendant contends the passage of time renders Blackwell's opinions irrelevant. Plaintiff responds, under the liberal relevancy standard, Blackwell's site inspection observations have a tendency to prove that similar conditions existed in the past. Additionally, Plaintiff contends that Blackwell can assist the jury in understanding the geography of the site, because the persistent muddy, wet conditions in the area help establish that Defendant should have taken steps to prevent track deterioration.

The Court finds that Defendant's concerns do not constitute a basis for exclusion. Although a court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered," *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), generally, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility[.]" *David E. Watson, P.C. v. U.S.*, 668 F.3d 1008, 1014 (8th Cir. 2012) (quoting *Neb. Plastics, Inc. v. Holland Colors Am., Inc.*, 408 F.3d 410, 416 (8th Cir. 2005)). Additionally, Blackwell's opinions are not "so fundamentally unsupported that [they] can offer no assistance" to the jury. *Id.* Defendant may therefore challenge the weight of Blackwell's testimony by raising the two-year time gap during cross-examination. *See Ast v. BNSF Ry. Co.*, No. 09-2519-EFM/DWB, 2012 WL 252140, at *4 (D. Kan. Jan. 26, 2012) ("[T]he Court does not find 'too great an analytical gap' between Blackwell's observations of the switch in 2011 and his opinion that similar conditions existed in 2008.").

    2. *McElroy's Testimony*

Defendant maintains Blackwell's report mischaracterizes McElroy's deposition testimony. Specifically, Defendant claims Blackwell erroneously assumes insufficient ties, ballast, subgrade, or a combination of those conditions existed when McElroy inspected the track after the alleged accident. Defendant asserts that Blackwell's report misconstrues McElroy's testimony, because

McElroy was merely listing every conceivable cause of a 2 ¼-inch dip and a 1 ½-inch crosslevel – the measurements reported during McElroy's inspection.

Plaintiff responds that Defendant's concerns are matters for cross-examination. Additionally, Plaintiff contends that a jury could logically infer from McElroy's testimony that the asserted conditions necessarily caused the observed measurements.

McElroy's testimony reads in relevant part:

Q. Tell me every reasonable probability as to why you would find a dip of two and a quarter inches. You've told me about bad ties. You've told me about fouled ballast. Can it be anything else?

A. Subgrade.

Q. Problem with the support of the ballast, the grade underneath the track?

A. That's correct.

\*\*\*

Q. Okay. So it could either be a problem with the ties, a problem with fouled ballast, or the subgrade. Anything else?

A. Not that I can think of.

Q. Okay. Let's talk about the cross-level defect. What could allow the rail to be down an inch and a half on one side? Same three things?

A. Subgrade.

Q. Subgrade. Ballast?

A. Ballast.

Q. Fouled ballasted with mud spots possibly?

A. Could be.

Q. And could be inefficient ties holding the rail in place?

A. No.

5

> Q. No, not ties?
>
> A. No.
>
> Q. Just the ballast or the subgrade?
>
> A. That's correct.
>
> Q. The only – okay.
>
>   And as a track inspector, those are the only reasonable explanations you can give for a two-and-a-quarter-inch dip and an inch-and-a-half cross level; correct?
>
> A. That's correct.
>
> ***
>
> Q. Well, you've got a two-and-a-quarter-inch dip and an inch-and-a-half cross level, a combination of which caused you to downgrade the track; true?
>
> A. True.
>
> Q. Okay. And the reason for those defects are either inefficient ties, fouled ballast, or a problem subgrade or a combination of some or all of those; correct?
>
> A. Yes.

[ECF No. 137-6 at 62:25-64:12, 66:6-15]. Given this testimony, Blackwell could reasonably infer McElroy believed the purported track conditions could only be caused by inefficient ties, fouled ballast or subgrade conditions or a combination of those track conditions. Although McElroy was listing every conceivable cause for the track measurements, he also testified that those were the *only* possible causes for those conditions. To the extent McElroy expressed doubt as to the precise causes

of the track conditions, Defendant may appropriately challenge the weight of Blackwell's evidence on cross examination.[2] *David E. Watson, P.C.*, 668 F.3d at 1014.

       3.      *Muddy Track and Fouled Ballast*

Defendant claims that Blackwell erroneously assumes Plaintiff saw "muddy track" at mile posts 151.4 through 151.8 for six months before the incident. Defendant argues that based on Plaintiff's testimony that "it was muddy around that area," Blackwell incorrectly concluded that the ballast contained mud. Plaintiff counters that he testified that the area "around the track" was muddy, and, as demonstrated by Blackwell's inspection photographs, the area "around the track" consists entirely of ballast. Additionally, Plaintiff argues that the record contains other evidence of mud in the ballast. Specifically, Plaintiff cites the Declaration of Greg Willard,[3] which states that "there was mud in the ballast and around the track" on January 14, 2008.[4] [ECF No. 137-4 at ¶ 5].

In light of Plaintiff's testimony and Willard's declaration, Plaintiff has set forth a sufficient factual foundation to establish that the ballast contained mud. Moreover, Defendant's concerns go to the weight, not the admissibility, of the evidence, and on cross examination, Defendant may rebut

---

    [2]Additionally, as discussed *infra*, evidence that McElroy downgraded the track to Class 4 after the alleged incident constitutes a subsequent remedial measure. Such evidence is inadmissible to prove negligence under Federal Rule of Evidence 407 and will be excluded, unless Plaintiff sets forth a legitimate purpose for its admission at trial, such as impeachment. Fed. R. Evid. 407.

    [3]Defendant has filed a separate Motion to Strike the Declarations of Kenny Scammell and Greg Willard [ECF No. 145]. For reasons discussed in a separate Memorandum and Order, the Court denies that Motion.

    [4]Plaintiff also argues that McElroy admitted he observed mud in the ballast on January 14, 2008. However, the cited portions of McElroy's deposition merely establish that mud may indicate a developing "problem area," and may, in general, constitute one possible reason for certain types of track deterioration. [ECF No. 137-6 at 31:14-22, 40:18-20, 52:1-4, 60:13-17, 63:23-24]. Thus, the Court does not rely on McElroy's testimony in determining this issue.

7

any charge that the mud contained ballast. Accordingly, the Court finds that Blackwell's testimony has adequate factual foundations.

   B.   *Reliable Methodology*

Defendant contends that the Court should bar Blackwell's testimony, because Blackwell has not offered an objective, independent validation of his methodology. Defendant maintains that Blackwell's testimony is inadmissible, because he merely relies on his "education and experience," without providing a credible methodology to sustain his conclusions. Plaintiff counters that Blackwell applies industry-accepted standards regarding track conditions and maintenance, which others in the field would recognize as adequate. Plaintiff asserts that Blackwell relies on several well-known railway engineering publications, and that Blackwell details his reasoning throughout his report.

> Federal Rule of Evidence 702 provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principle and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

A district court has the duty of ensuring that "all scientific testimony is both reliable and relevant." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)). To establish reliability, the party offering the expert testimony must demonstrate by a preponderance of the evidence that "the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Id.*

8

(quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90 (1993)). While the Court should "resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility," it should not admit evidence based solely on the *ipse dixit* of the expert. *Marmo*, 457 F.3d at 758.

The Court finds that Blackwell's Supplemental Report sets forth a sufficiently reliable methodology. Throughout the Supplemental Report, Blackwell cites various sources that demonstrate how he came to his conclusions. For example, he cites the American Railway Engineering and Maintenance of Way Association (AREMA) Practical Guide to Railway Engineering for the following proposition:

> If the free draining characteristics of the ballast are disrupted, i.e., it becomes plugged with mud or fines, surface will be impossible to maintain. Because the mud does not have the bearing support of clean rock, the track structure will compress under each passing wheel. A siphoning effect much like a toilet plunger will only bring more water and fines up into the ballast section. Undercutting, shoulder cleaning or in some cases a full out-of-face ballast raise are about the only options available to alleviate this condition. Inadequate drainage because of fouled ballast or other related factor [sic] may be considered a FRA non-class specific defect under certain situations.

[ECF No. 137-1 at 11]. Given this notion, and based on track measurements in the record and evidence that suggests the ballast contained mud on January 14, 2008,[5] Blackwell concludes Defendant failed to maintain the track surface with ballast material that properly provided adequate drainage for the track. [ECF No. 137-1 at 9-11, 23]. Blackwell's report is replete with similar analyses. Aside from AREMA, he employs sources such as the Federal Railroad Administration Track Safety Standards Compliance Manual and the BNSF Railway Field Manual. The Court, therefore, cannot agree with Defendant that Blackwell "has not articulated any credible methodology for his opinions[.]" [ECF No. 127 at 7].

---

[5]Again, on cross examination, Defendant is free to rebut any allegations that the ballast contained mud.

Accordingly, the Court finds by a preponderance of the evidence that Blackwell uses an acceptable methodology underlying his conclusions. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are the proper means of challenging Blackwell's evidence. *Daubert*, 509 U.S. at 595; *David E. Watson, P.C.*, 668 F.3d at 1015 (citing *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007)).

## C.    *Improper Legal Conclusions*

Defendant contends that the Court should exclude Blackwell's opinions about whether Defendant's conduct violated FRSA regulations because they constitute inadmissible legal conclusions. Plaintiff argues Blackwell may properly testify as to these matters, because, now that FRSA regulations supply the standard of care,[6] Blackwell's conclusions merely address "ultimate issues" admissible under FRE 704(a).[7]

As an initial matter, the parties dispute the meaning of the Eighth Circuit's holding regarding this issue when this case was reviewed on appeal. Before this case was appealed, the Court excluded Blackwell's opinions that Defendant violated FRSA regulations as improper legal conclusions. [ECF No. 56 at 6]. The Court also found that, because FRSA regulations established the sole standard of care for Plaintiff's claim, Blackwell could not testify that Defendant was negligent in permitting the train to operate within FRSA-mandated speed limits. [ECF No. 56 at 7-8]. Plaintiff

---

[6]Whether FRSA regulations supply the standard of care in this case is the subject of Defendant's Motion for Summary Judgment [ECF No. 120]. For reasons explained in a separate Memorandum and Order, the Court finds that FRSA regulations provide the sole standard of care in this case.

[7]Plaintiff also argues that Defendant's position on this issue is undermined by Defendant's reliance on various legal conclusions from its own witnesses. The Court does not agree. The Court does not currently make any determination as to whether Defendant relies on testimony in the form of legal conclusions, but even assuming Defendant does so, this has no bearing on the admissibility of Blackwell's testimony. Rather, Plaintiff may properly address any purportedly inadmissible legal conclusions by moving to exclude such evidence.

appealed, arguing the Court should allow Blackwell to testify that Defendant was negligent even if its behavior complied with FRSA regulations. *Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 897 (8th Cir. 2012). The Eighth Circuit simply held,

> [I]f we assume that FRSA preclusion is appropriate in some cases, [Defendant] bears the burden to show that specific regulations substantially subsume [Plaintiff's] claim under [49 U.S.C. § 20106(a)(2)]. If [Defendant] meets that burden, the district court may assess the admissibility of Blackwell's testimony on the subsumed subject matter. However, because [Defendant] did not meet its burden below, we reverse that part of the district court's ruling and remand it for further consideration.

*Id.* Given this procedural history, Defendant contends that the Court's previous exclusion of the purported legal conclusions "remains the law of the case." [ECF No. 127 at 7-8].

The Court cannot agree with Defendant that the exclusion of portions of Blackwell's testimony is a settled matter. Plaintiff did not appeal the Court's exclusion of the purported legal conclusions; rather, Plaintiff appealed the Court's decision to exclude testimony that Defendant was negligent even if it complied with FRSA regulations. Thus, the instant issue never appeared before the Eighth Circuit. Moreover, as Plaintiff notes, the ultimate issues of the case have changed since the Court's previous ruling, and the Eighth Circuit expressly directed the Court to "assess the admissibility of Blackwell's testimony on the subsumed subject matter," precluding Defendant's notion that this matter became settled by the Court's initial ruling.

That said, upon "assess[ing] the admissibility of Blackwell's testimony on the subsumed subject matter," the Court finds that Blackwell may not testify that Defendant violated certain FRSA regulations. The law is clear that expert witnesses may not opine as to whether a party violated a given regulation. *See S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) ("The evidence took the form, essentially, of a battle of experts opining as to whether Southern Pine had violated FAA regulations. As we have had occasion to remark before, however, expert testimony on legal matters is not admissible."); *In re Genetically Modified Rice*

11

*Litig.*, No. 4:06MD1811 CDP, 2010 WL 5070718, at *5 (E.D. Mo. Dec. 6, 2010) ("Experts may not draw legal conclusions or interpret laws or regulations. No witness may testify that . . . Bayer violated or complied with a standard of care prescribed by the regulations."); *Johnson v. Avco Corp.*, 207 F. Supp. 2d 1093, 1109-10 (E.D. Mo. 2010) (Expert "may discuss the evidence indicating that Swan had not sufficiently practiced night landings and he may discuss the requirements outlined in the regulations, but he may not opine about whether Swan in fact violated the regulations.").

Moreover, Plaintiff has not cited any authority allowing an expert to opine as to whether a party violated a regulation or other law. At best, Plaintiff's cited cases stand for the proposition that, in general, experts may *refer* to regulations in addition to their industry experience; none of them, however, state that an expert could properly testify as to whether a regulation was violated. *See Haager v. Chicago Rail Link, LLC*, 232 F.R.D. 289, 295 (N.D. Ill. 2005) ("If his testimony is based on certain regulations . . . he may reference those regulations. Byrnes may not, however, offer an opinion that concludes or opines that such regulations were violated."); *Alumbaugh v. Union Pac. R.R. Co.*, 322 F.3d 520, 525 (8th Cir. 2003) (jury was entitled to hear expert testimony that "crossing was not in a state of good repair . . . because its components were not maintained properly and were badly deteriorated"); *Wood v. Minn. Mining and Mfg. Co.*, 112 F.3d 306, 310 (8th Cir. 1997) ("Even if . . . testimony [as to whether the defendant provided reasonable warning of a crossing] was inappropriate, we conclude that admitting it was harmless error.").

Accordingly, Blackwell may not offer his opinion about whether Defendant's conduct violated applicable regulations. That said, Blackwell may still refer to FRSA regulations in addition to his industry experience, so long as his opinions do not extend to whether Defendant's conduct actually violated the regulations.

### D.     *Subsequent Remedial Measures*

Defendant argues that Blackwell's report contains improper references to two instances of subsequent remedial measures prohibited by Federal Rule of Evidence (FRE) 407. First, Defendant seeks to exclude portions of the report that refer to track improvements at the site as of January 20, 2010. Second, Defendant argues that the Court should exclude evidence that McElroy downgraded the track from Class 3 to Class 4 after the alleged accident.

#### 1.     *Track Improvements Observed on January 20, 2010*

Regarding the 2010 track improvements, Plaintiff responds that, should FRSA regulations supply the standard of care in this case,[8] then this suit would become a strict liability suit. In such a situation, Plaintiff argues, FRE 407 would not apply.[9]

The Court finds that FRE 407 remains applicable to Plaintiff's case for two reasons. First, even assuming Plaintiff has asserted a strict liability claim, the Eighth Circuit has not determined whether FRE 407 applies in such a case. *Lopez v. Tyson Foods, Inc.*, 690 F.3d 869, 882-83 (8th Cir. 2012). That is, although the Eighth Circuit historically exempted strict products liability cases from FRE 407, it is not clear that other types of strict liability cases were also exempt, and "[i]t is unclear whether [the] 'strict liability' exception to Rule 407 survived the 1997 amendment [to the rule]." *Id.* ("The employees argue that Rule 407 does not apply because their FLSA claim is a strict liability claim. . . . Because [the rule's application] is unclear, any error apply Rule 407 here is not plain error.").

---

[8]As previously noted, the Court finds that FRSA regulations provide the sole standard of care in this case.

[9]Plaintiff acknowledges that, if FRSA regulations do not supply the standard of care, evidence of subsequent track improvements should be excluded.

Second, Plaintiff conflates negligence per se with strict liability. The Court realizes that other judicial opinions occasionally use the terms "negligence per se" and "strict liability" loosely, and some courts have referred to the FRSA as a "strict liability statute." *See, e.g.*, *Grogg v. CSX Transp. Inc.*, 659 F. Supp. 2d 998, 1013 (N.D. Ind. 2009) ("FRSA, like the LIA, is a strict liability statute regulating railroad safety.") (quoting *Becraft v. Norfolk S. Ry. Co.*, No. 1:08CV80 PS, 2009 WL 1605293, at *3 (June 5, 2009 N.D. Ind. 2009)). The derivation of this custom is unknown, but the Court is convinced that "strict liability" as applied to the FRSA is a misnomer.

"Strict liability is similar but not identical to negligence per se." 57A AM. JUR. 2D *Negligence* § 675. In negligence per se cases, "the law accepts the legislative judgment that acts in violation of the statute constitute unreasonable conduct[.]" *Id.* "[S]tatutes forming the basis of a negligence per se action are often penal and do not expressly provide for a civil action." *Seim v. Garavalia*, 306 N.W.2d 806, 811 (Minn. 1981). In contrast, strict liability "assumes no negligence of the actor, but chooses to impose liability anyway." 57A AM. JUR. 2D *Negligence* § 675. That is, regardless of how reasonably the defendant acts, the statute imposes liability, and the plaintiff need not prove the defendant breached a standard of care. *See, e.g.*, *Hoppe v. Midwest Conveyor Co., Inc.*, 485 F.2d 1196, 1999 (8th Cir. 1973) ("Recognition of the doctrine of strict liability now eliminates proof as to violation of the standard of reasonable care.").

In light of the foregoing, violating an FRSA regulation constitutes negligence per se, not strict liability, because FRSA regulations establish a statutory standard of care. *Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 180 (3d Cir. 2013) ("We conclude that the speed limits in [49 C.F.R. § 213.9] create a federal standard of care."). Notably, the FRSA lacks characteristics of a strict liability statute; it "does not explicitly create a private cause of action for private enforcement. And it does not imply one." *Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 711 (6th Cir.

14

2012). Moreover, Plaintiff actually cites cases *supporting* a finding of negligence per se. *See Kernan v. Am. Dredging Co.*, 355 U.S. 426, 438-39 (1958) ("[T]he theory of the FELA is that where the employer's conduct falls short of the *high standard* required of him by this Act, and *his fault*, in whole or in part causes injury, liability ensues.") (emphases added); *Schmitz v. Canadian Pac. Ry. Co.*, 454 F.3d 678, 683 (7th Cir. 2006) ("In a FELA action, the violation of a statute or regulation . . . automatically constitutes a breach of the employer's duty and *negligence per se* and will result in liability if the violation contributed in fact to the plaintiff['s] injury.") (emphasis added); *Walden v. Ill. Cent. Gulf R.R.*, 975 F.2d 361, 364 (7th Cir. 1992) ("In an FELA action, the violation of a statute or regulation . . . automatically constitutes breach of the employer's duty *and negligence per se* and will result in liability if the violation contributed in fact to the plaintiff's injury.") (emphasis added).

Accordingly, the Court finds that violating an FRSA regulation constitutes negligence per se, not strict liability. *See also CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2643 n. 12 (2011) ("A railroad's violation of a safety statute is negligence per se."). Negligence per se requires a showing of fault, and, thus, excluding evidence of subsequent remedial measures furthers FRE 407's "policy goal of encouraging remediation[.]" *Buchanna v. Diehl Mach., Inc.*, 98 F.3d 366, 370 (8th Cir. 1996). Evidence that Defendant repaired the track at mile posts 151.4 through 151.8 subsequent to the alleged accident will therefore be excluded at trial.[10]

---

[10]Furthermore, the Court has not relied on this evidence in ruling on Defendant's Motion for Summary Judgment [ECF No. 120].

2.     *Class 4 Track Order*

Plaintiff avers that the Court should admit evidence of McElroy's slow order on January 14, 2008, because it demonstrates "the defects that existed prior to the injury, not . . . what could have been done to prevent the injury." [ECF No. 137 at 28]. Additionally, Plaintiff asserts that the slow order was not a remedial measure, because Defendant claims it did not learn of Plaintiff's injury until January 17, 2008.

At this time, the Court can see no legitimate purpose for allowing evidence of the slow order imposed after the alleged accident. Plaintiff suggests that the slow order demonstrates prior track defects, but this simply constitutes evidence that Defendant breached its duty of care – in direct contravention of FRE 407, which expressly prohibits evidence of subsequent remedial measures to prove negligence. Additionally, nothing in FRE 407 indicates that Defendant must have "known" of Plaintiff's injury to invoke the rule, and Plaintiff cites no authority that such a requirement exists. Thus, the Court will exclude evidence of the slow order imposed after the alleged accident unless Plaintiff sets forth a legitimate purpose for its admission, such as impeachment. *See* Fed. R. Evid. 407. Evidence of McElroy's observations and measurements after the incident, however, remain admissible.

E.     ***Federal Preclusion***

Defendant claims that, to the extent the FRSA "precludes" Plaintiff's FELA claim, the Court should not permit Blackwell to testify about precluded subject matters. Plaintiff counters that, even if Defendant sufficiently shows that specific regulations establish the standard of care, Blackwell's testimony will help the jury resolve whether Defendant complied with those regulations.

In general, the FELA holds railroads to a "prudent person" standard of care. *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1062 (7th Cir. 1998). However, for reasons discussed

in a separate Memorandum and Order, the Court has concluded that certain FRSA regulations provide the standard of care for Plaintiff's FELA claim. Accordingly, evidence that merely tends to establish Defendant violated a "prudent person" standard of care is irrelevant and therefore inadmissible. Fed. R. Evid. 402. However, as Plaintiff argues, Blackwell has set forth a multitude of opinions suggesting that Defendant did not comply with FRSA regulations, which will be admissible provided they do not violate other evidentiary rules.

### F. *Blackwell's List of Opinions*

Finally, Defendant challenges each of Blackwell's ten conclusions individually. With one exception, however, Defendant's arguments merely repeat objections already discussed. The Court will not reiterate its findings with respect to each of the previously raised objections. Instead, the Court will address the single newly raised argument, which claims Blackwell's report improperly addresses whether Defendant knew or should have known of the alleged track defects. Specifically, Defendant notes that Blackwell's report discusses how to "[e]stablish[] constructive knowledge of a defect[.]" [ECF No. 127-1 at 5, 7].

The Court agrees with Defendant that this evidence falls outside the scope of expert testimony. Blackwell may not discuss how to "establish constructive knowledge of a defect," which requires legal interpretation. Additionally, he may not provide legal conclusions as to whether Defendant ultimately knew or should have known of the alleged track defects. He may, however, still discuss underlying facts that help establish actual or constructive notice – such as whether a reasonable track inspection would have revealed particular track defects – provided his testimony does not violate any other evidentiary rules.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant BNSF Railway Company's Second Motion to Bar the Expert Opinion Testimony of Alan Blackwell [ECF No. 122] is **GRANTED, in part and DENIED, in part**.

Dated this 30th day of September, 2013.

_E. Richard Webber_
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE