UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN D. COWDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08CV01534 ERW |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant BNSF Railway Company's Motion for Summary Judgment [ECF No. 120].

## I.    STATEMENT OF UNDISPUTED FACTS

The following is a recitation of undisputed facts taken from BNSF Railway Company's Statement of Uncontroverted Material Facts in Support of its Motion for Summary Judgment [ECF No. 124], Plaintiff's Statement of Material Facts in Response to BNSF's Motion for Summary Judgment [ECF No. 138], and BNSF Railway Company's Response to Plaintiff's Statement of Material Facts which Preclude Summary Judgment [ECF No. 149].

This suit arises out of injuries Plaintiff Kevin D. Cowden allegedly sustained while riding in a locomotive owned and operated by Defendant BNSF Railway Company, Plaintiff's employer. On January 14, 2008, Plaintiff, in the course of performing his job duties, was traveling in one of Defendant's locomotives in Golden City, Missouri, somewhere in the vicinity of mile posts 151.4 and 151.8.  The portion of track on which Plaintiff traveled was subject to a "slow order," setting the maximum speed for passing trains at forty miles per hour.  Defendant's business records denote "tie conditions" as the reason for the slow order, and Defendant had previously placed the section

of track under slow orders due to "rough track" and "washouts."  Plaintiff alleges that, on the day in question, the train encountered a rough section of track and "bottomed out," throwing him into the air and causing him to land with a significant impact, resulting in injuries to his back and neck.

Plaintiff initially filed a Complaint [ECF No. 1], alleging that Defendant violated the Federal Employers' Liability Act (FELA) by failing to provide a reasonably safe working environment.[1]  The Court granted summary judgment for Defendant on September 7, 2010.  In its Memorandum and Order, the Court found that certain Federal Railroad Safety Act (FRSA) regulations precluded Plaintiff's FELA claim.  Additionally, the Court found that Plaintiff had failed to allege a foreseeable harm as required by the FELA.  Plaintiff appealed, and the Eighth Circuit reversed.  The Eighth Circuit held that this Court erroneously raised the issue of FRSA preclusion *sua sponte*, and that this Court failed to view the evidence in the light most favorable to Plaintiff in determining the foreseeability issue.  *See generally Cowden v. BNSF Ry. Co.*, 690 F.3d 884 (8th Cir. 2012).

On remand, Plaintiff filed a First Amended Complaint [ECF No. 103], which alleges that Defendant is liable for his injuries under the FELA for negligently failing to provide him with reasonably safe work conditions and for violating several track safety regulations promulgated by the Federal Railroad Administration (FRA), constituting negligence per se.

## II.    SUMMARY JUDGMENT STANDARD

A court shall grant a motion for summary judgment only if the moving party shows that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  By definition, material facts "might affect the outcome of the suit under the governing law," and a

---

[1]Plaintiff also alleged that Defendant violated the Locomotive Inspection Act (LIA).  The Court granted summary judgment for Defendant on Plaintiff's LIA claim, and Plaintiff did not appeal that ruling.

genuine dispute of material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The moving party bears the initial burden of proof in establishing "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). The moving party must show that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence and specific facts that demonstrate a genuine dispute on that issue. *Anderson*, 477 U.S. at 250. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must demonstrate sufficient favorable evidence that could enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue."

*Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.* The Court must view the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009).

## III.  DISCUSSION

In moving for summary judgment, Defendant makes three main arguments. First, Defendant contends that the preemption clause of the FRSA contemplates preclusion of FELA claims when the FRSA "covers" the subject matter of the FELA claim. Second, Defendant maintains that certain FRSA regulations "cover" Plaintiff's specific allegations, and that Defendant undisputedly complied with those FRSA regulations. Finally, Defendant argues that Plaintiff has failed to allege a foreseeable injury.

### A.  *Federal Preclusion and Construction of 49 U.S.C. § 20106(a)(2)*

The First Amended Complaint generally alleges that Defendant violated the FELA by negligently failing to provide a reasonably safe working environment for Plaintiff. Defendant argues that certain FRSA regulations preclude Plaintiff's FELA claim. However, the plain language of the FRSA preemption clause, 49 C.F.R. § 20106(a)(2), speaks only to preemption of state law claims.[2]

_____

[2]"Preemption" concerns the primacy of federal laws over state laws, while "preclusion" concerns the primacy of one federal law over another. *Powell v. Union Pac. R.R. Co.*, No. 2:09CV01857, 2013 WL 1857893, at *2 (E.D. Cal. May 2, 2013); *Carpenter v. Nw. Airlines, Inc.*, No. 00CV2490, 2001 WL 1631445, at *2 (D. Minn. June 7, 2001) ("Just as a federal law may preempt a state law claim, one federal law may preclude, or displace, the application of another federal law."); *Stokes v. Norfolk S. Ry. Co.*, 99 F. Supp. 2d 966, 969 n.1 (N.D. Ind. 2000) ("The RLA may preempt a state law, but it precludes the application of, rather than preempting, other federal law[s]."). Courts often use these terms interchangeably. *Stokes*, 99 F. Supp. 2d at 969 n.1; *Malobabich v. Norfolk S. Corp.*, No. 2:11CV112, 2011 WL 1791306, at *2 n.1 (W.D. Penn. May 10, 2011). Thus, in this Memorandum, the Court cites to cases that describe FRSA "preemption" of federal law. *See, e.g.*, *Kresel v. BNSF Ry. Co.*, No. 09CV2861, 2011 WL

Thus, the initial issue before the Court is whether § 20106(a)(2), as construed by the courts, contemplates preclusion of federal FELA claims.

Enacted in 1908, the FELA provides railroad employees with a federal cause of action for injuries caused by the negligence of the railroad.  49 U.S.C. § 51; *Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 889 (8th Cir. 2012).  "Cognizant of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year, Congress crafted a federal remedy that shifted part of the human overhead of doing business from employees to their employers."  *Nordgren v. Burlington N. R. Co.*, 101 F.3d 1246, 1249 (8th Cir. 1996) (quoting *Consol. Rail Corp. v. Gottschall*, 512 U.S. 532, 542 (1994)).  The FELA should be interpreted liberally in light of its "humanitarian" purposes.  *Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 429 (1997).

Enacted in 1970, the FRSA "promote[s] safety in every area of railroad operations and reduce[s] railroad-related accidents and incidents."  49 U.S.C. § 20101; *Lybrand v. Union Pac. R.R. Co.*, No. 5:10CV00045, 2012 WL 1436690, at *2 (E.D. Ark. Apr. 25, 2012).  The FRSA grants authority to the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety."  49 U.S.C. § 20103(a).  The Secretary has delegated this authority to the Federal Railroad Administration (FRA).  *Mich. S. R.R. Co. v. City of Kendallville*, 251 F.3d 1152, 1154 (7th Cir. 2001).  The FRSA strives for national consistency, stating, "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable."  49 U.S.C. § 20106(a).  Thus, pursuant to 49 U.S.C. § 20106(a)(2),  the FRSA allows states to "adopt or continue

---

1456766, at *8 (D. Minn. Apr. 15, 2011) (Because "a reasonable jury would have to conclude that the ballast on which Kresel was standing when he slipped was track-supporting ballast that was subject to the requirements of § 213.103[,] Kresel's ballast-related [FELA] claim is therefore preempted by § 213.103.").  In any event, because the Court concludes "an FELA claim is precluded when the same claim would be preempted by the FRSA if brought as a state-law negligence claim," *Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d 426, 429-30 (6th Cir. 2009), the distinction between the two terms is irrelevant to this case.

in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters) . . . prescribes a regulation or an order covering the subject matter of the State requirement."  The term "'covering' indicates that preemption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 658 (1993).

Although the FRSA only addresses preemption of state matters, courts in other circuits have also applied § 20106(a)(2) to federal negligence claims, including FELA claims.  *See, e.g.*, *Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d 426, 430 (6th Cir. 2009); *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 443 (5th Cir. 2001); *Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773, 776 (7th Cir. 2000). Further, other district courts in this circuit have found preclusion of FELA claims by the FRSA.  *See Lybrand v. Union Pac. R.R. Co.*, No. 5:10CV00045, 2012 WL 1436690 (E.D. Ark. Apr. 25, 2012); *Giebel v. Union Pac. R.R. Co.*, No. 08CV6294, 2010 WL 1904921 (D. Minn. May 11, 2010); *Davis v. Union Pac. R.R. Co.*, 598 F. Supp. 2d 955 (E.D. Ark. 2009).  The Eighth Circuit, however, has not expressly determined whether the FRSA precludes federal negligence claims.  In *Cowden v. BNSF Railway Company*, the Eighth Circuit abstained from deciding this matter, "declin[ing] to create a circuit split on this issue, in part because the issue was not properly raised below[.]" 690 F.3d at 892.  The Court suggested, though, that § 20106(a)(2) contemplates preclusion of federal negligence claims,  noting that it "adhere[s] to the policy that a sister circuit's reasoned decision deserves great weight and precedential value." *Id.*  Additionally, it embraced the possibility of preclusion when it directed this Court that, "[o]n remand, [Defendant] has the burden of persuading the court that particular regulations meet the standard for preemption set out in § 20106(a)(2)." *Id.* at 895.

6

Based on the reasoned decisions of other sister circuits and the guidance of the Eighth Circuit in *Cowden*, the Court finds that, when the subject matter of an FELA claim is "substantially subsumed" by the FRSA, § 20106(a)(2) precludes that FELA claim.  To hold otherwise would not only create different remedies in different circuits, but also disparately treat similarly injured plaintiffs based on their status as an employee or non-employee.

> Dissimilar treatment of the claims would have the untenable result of making the railroad safety regulations established under the FRSA virtually meaningless: 'The railroad could at one time be in compliance with federal railroad safety standards with respect to certain classes of plaintiffs yet be found negligent under the FELA with respect to other classes of plaintiffs for the very same conduct.'

*Lane*, 241 F.3d at 443 (quoting *Waymire v. Norfolk & W. Ry. Co.*, 65 F. Supp. 2d 951, 955 (S.D. Ind. 1999), *aff'd*, 218 F.3d 776 (7th Cir. 2000)).   Therefore, pursuant to this construction of § 20106(a)(2), "an FELA claim is precluded when the same claim would be preempted by the FRSA if brought as a state-law negligence claim."[3]  *Cowden*, 690 F.3d at 893.

### B.    *Individual Allegations*

Having determined that § 20106(a)(2) contemplates preclusion of FELA actions, the Court addresses whether the FRSA precludes Plaintiff's specific allegations.  To establish preclusion, Defendant bears the burden of demonstrating that Plaintiff's FELA claims are "covered" by the FRSA.  *Duluth, Winnipeg and Pac Ry. Co. v. City of Orr*, 529 F.3d 794, 797 (8th Cir. 2008).  Meeting this burden requires establishing more than the FRSA regulations "touch upon" or "relate to" the FELA subject matter; Defendant must show that the FRSA "substantially subsumes" the

---

[3]Plaintiff contends that FRSA preclusion of an FELA claim would "impliedly repeal" the FELA. [ECF No. 140 at 11-20].  The Court does not agree.  The FRSA precludes FELA claims only when applicable regulations "substantially subsume" the subject matter of an FELA claim. Therefore, the FELA is fully applicable in situations where FRSA regulations do not "substantially subsume" the claim.  Because the FELA remains in effect, it is not impliedly repealed.  *Dorsey v. U.S.*, 131 S. Ct. 2321, 2340 (2012) ("The presumption against implied repeals requires us to give effect to both [statutes].").

FELA allegations.  *Cowden*, 690 F.3d at 893.  "What is important is that the FRA has considered the 'subject matter' and has addressed it 'in an effective scope of treatment and operation.'" *BNSF Ry. Co. v. Swanson*, 533 F.3d 618, 621 (8th Cir. 2008) (quoting *Easterwood*, 507 U.S. at 664-65)).  "[A] regulatory framework need not impose bureaucratic micromanagement in order to substantially subsume a particular subject matter."  *In re Derailment Cases*, 416 F.3d 787, 794 (8th Cir. 2005).  "Because [Plaintiff's] suit addresses the maintenance of track[,] . . . relevant regulations will deal . . . specifically with track conditions."  *Cowden*, 690 F.3d at 895.  If Defendant meets its burden of establishing that relevant regulations substantially subsume Plaintiff's claims, the burden shifts to Plaintiff to demonstrate that his claim is not precluded.  *Giebel*, 2010 WL 1904921, at *5.

Even if applicable regulations "substantially subsume" Plaintiff's allegation, however, Plaintiff can avoid preclusion by sufficiently alleging that Defendant violated a federal standard of care.  *See Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 177 (3d Cir. 2013).  The "2007 Clarification Amendment" to § 20106 makes this clear.  It reads:

> Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party . . . has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or . . . has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation[.]

49 U.S.C. § 20106(b)(1)(A)-(B).  Thus, "even when a regulation covers the subject matter of a claim, the claim can avoid preemption if the railroad violated a federal standard of care or its internal rule." *Zimmerman*, 706 F.3d at 177.  Put another way, when FRSA regulations "cover" the FELA subject matter pursuant to § 20106(a)(2), the FRSA regulations become the sole standard of care under a FELA claim.  *See id.* at 179 ("Zimmerman's excessive-speed claim avoids preemption if § 213.9 creates a federal standard of care."); *MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 488 (3d Cir. 2013) ("[A] plaintiff may still bring claims 'seeking damages for personal injury, death, or

8

property damage' when the plaintiff 'alleg[es] that a party . . . has failed to comply with the Federal standard of care[.]'"). Accordingly, even if Defendant establishes that certain FRSA regulations "cover" Plaintiff's FELA claim, Plaintiff's FELA claim is only precluded if Defendant establishes it undisputedly complied with those regulations.

The First Amended Complaint sets forth sixteen specific allegations of negligent conduct.[4] In its Motion, Defendant contends that relevant FRSA regulations substantially subsume all of Plaintiff's allegations, thereby precluding any FELA claim.[5] Additionally, Defendant maintains that it undisputedly complied with the applicable FRSA regulations. To the extent applicable regulations do not "cover" Plaintiff's allegations, Defendant argues that Plaintiff has provided no evidence of negligence on the part of Defendant, and it is therefore entitled to judgment as a matter of law.[6]

---

[4]The First Amended Complaint contains an additional conclusory allegation -- Allegation "a" -- which states, "[Defendant] failed to provide the plaintiff with reasonably safe conditions to work[.]" [ECF No. 103 at ¶ a]. For reasons discussed *infra*, the Court finds that the FRSA establishes the standard of care for all of Plaintiff's claims, and genuine disputes of material fact remain as to whether Defendant met that standard. Accordingly, the Court denies summary judgment as to Allegation "a."

[5]As an initial matter, Plaintiff argues that Defendant "has not remotely carried its burden" of showing that FRSA regulations substantially subsume Plaintiff's claim. Plaintiff asserts that rather than explaining how each allegation is substantially subsumed by FRSA regulations, Defendant merely "follows the pattern of reciting an allegation in the complaint, and then quot[es] the language of a corresponding regulation[.]" [ECF No. 140 at 14]. Thus, Plaintiff concludes that "[t]hose cursory arguments amount to nothing more than a bald assertion that the regulations 'relate to' or 'touch upon' the subject of the FELA allegations." [ECF No. 140 at 14].
The Court cannot agree with this characterization of Defendant's arguments. Part I of Defendant's Memorandum of Law in Support of BNSF Railway Company's Motion for Summary Judgment [ECF No. 126] categorizes each of Plaintiff's allegations by subject matter and states which FRSA regulations purportedly "cover" those categories. [ECF No. 126 at 4-11]. Additionally, Part II is replete with case law and analysis, supporting its position that FRSA regulations preclude Plaintiff's FELA claim. [ECF No. 126 at 12-25].

[6]In his Memorandum in Opposition to Defendant's Motion for Summary Judgment [ECF No. 140], Plaintiff spends considerable time arguing that 49 U.S.C. § 20106(a)(2) does not preclude the FELA under any circumstances. Plaintiff also states that Defendant has failed to meet its burden in demonstrating that FRSA regulations "substantially subsume" his claim. However, in the event that Defendant *has* met its initial burden, Plaintiff has not offered any

The Court will examine each of Plaintiff's sixteen specific allegations individually to determine (1) whether applicable FRSA regulations substantially subsume the claim, thereby setting the sole standard of care for Plaintiff's allegations, and (2) whether genuine disputes of material fact remain as to whether Defendant engaged in culpable conduct under a relevant standard of care.

    1.    *Allegation "b": Defendant "failed to adequately maintain the track and roadbed near MP 151.4 through 151.8 with adequate ballast and ties to properly support the track in a reasonably safe condition."*

Allegation "b" asserts that Defendant negligently maintained its ballast and crossties. Defendant argues Allegation "b" is precluded with respect to both of those subject matters. For reasons discussed below, the Court concludes that FRSA regulations substantially subsume the subject matters of ballast and crossties. However, the Court also concludes that genuine disputes of material fact remain as to whether Defendant complied with the standard of care established by those regulations.

    a.    *Inadequate Ballast Claim*

Defendant maintains that the FRSA covers the subject matter of ballast support requirements. Specifically, Defendant cites 49 C.F.R. § 213.103(c)-(d), which states that "all track shall be supported by material which will . . . [p]rovide adequate drainage for the track; and . . . [m]aintain proper track crosslevel, surface, and alinement." Citing various cases, Defendant maintains that if the ballast at issue is "track-supporting ballast," it is subject to § 213.103, and an FELA claim which alleges negligence regarding the ballast is covered by the FRSA.

---

rebuttal evidence to show that his claims are *not* substantially subsumed by FRSA regulations. *See Duluth, Winnipeg and Pac. Ry. Co. v. City of Orr*, 529 F.3d 794, 797 (8th Cir. 2008) (explaining that if the moving party meets its initial burden in establishing preclusion under 49 U.S.C. § 20106(a)(2), the burden shifts to the nonmoving party). The Court will therefore limit its analysis to (1) whether Defendant has met its burden in establishing that FRSA regulations substantially subsume each of Plaintiff's individual allegations; and (2) whether genuine disputes of material fact remain as to whether Defendant engaged in culpable conduct.

The Court agrees with Defendant that § 213.103 substantially subsumes Plaintiff's inadequate ballast claims.  A recent case, *Brenner v. Consolidated Rail Corporation*, 806 F. Supp. 2d 786 (E.D. Pa. 2011), is instructive on situations where § 213.103 "covers" the subject matter of an FELA claim.  In *Brenner*, a railway employee alleged that he "was exposed to excessive and harmful cumulative trauma to his knees due to the repetitive climbing, bending, stopping and walking on uneven or unleveled ballast."  806 F. Supp. 2d at 788.   The Court found that, "to the extent that [the employee's] claims are predicated upon allegations of negligence regarding the nature and size of ballast used for track stability, support, and drainage . . . [,] such claims are precluded by 49 C.F.R. § 213.103."  *Id.* at 796.  The court reasoned that § 213.103 substantially subsumed the subject matter of track-supporting ballast – but not ballast in the walkway areas of the workplace – because the FRSA generally occupies the field of safety in railroad operations.  *Id.* at 793-95.  In contrast, the court allowed the employee to pursue FELA claims regarding ballast in walkways, because such ballast did not function to support the railway tracks.  *Id.* at 796.

*Brenner* stands for the proposition that § 213.103 substantially subsumes claims relating to the ballast's ability to provide proper track support and drainage.  Other courts have adhered to this line of reasoning.  *See Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d 426, 433 (6th Cir. 2009) ("Even to the extent that the plaintiffs argue oversized ballast was used 'along,' 'adjacent to,' or 'parallel to' the track, they do not contend that the ballast in those areas was not being used for stability under § 213.103."); *Kresel v. BNSF Ry. Co.*, No. 09CV2861, 2011 WL 1456766, at *8 (D. Minn. Apr. 15, 2011) (Because "a reasonable jury would have to conclude that the ballast on which Kresel was standing when he slipped was track-supporting ballast that was subject to the requirements of § 213.103[,] Kresel's ballast-related claim is therefore preempted by § 213.103."); *Davis v. Union Pac. R.R. Co.*, 598 F. Supp. 2d 955, 959 (E.D. Ark. 2009) ("It is obvious when

reading the regulation that it is concerned with track and its immediately adjoining area and not with railroad yards."); *Elston v. Union Pac. R.R. Co.*, 74 P.3d 478, 488 (Colo. App. 2003) ("These standards are directed at promoting a safe roadbed for trains, but offer no indication whether a railroad has a duty to provide safe walkways for employees alongside its tracks.").

In the instant case, the alleged incident occurred on the track, and Plaintiff claims the ballast failed to adequately support the track; the parties do not dispute that the ballast at issue is track-supporting ballast. Therefore, § 213.103 covers Plaintiff's inadequate ballast claims under the *Brenner* line of cases. Moreover, the Court finds that, given the plain language of § 213.103, the FRA has considered the subject matter of track-supporting ballast and addressed it in an effective scope of treatment and operation. Thus, to prevail on its Motion for Summary Judgment, Defendant must establish that it undisputedly complied with § 213.103, which provides the relevant standard of care for Plaintiff's inadequate ballast allegations.

Defendant argues it undisputedly complied with § 213.103, and it is therefore entitled to judgment as a matter of law. Specifically, Defendant claims that, because it maintained proper crosslevel, surface, and alinement pursuant to § 213.103(d), it could not possibly have breached its duty of care. Plaintiff responds that genuine issues of material fact remain as to whether Defendant complied with § 213.103. Plaintiff contends that Defendant did not maintain proper track surface, and that for at least six months prior to the incident, Defendant negligently failed to provide adequate ballast for track support.

Defendant's contention that it maintained proper track surface is premised on its averment that it complied with 49 C.F.R. § 213.63.[7] Section 213.63 sets forth several requirements for Class

---

[7] Defendant also contends that § 213.63 substantially subsumes Plaintiff's Allegation "f." The Court addresses that matter in Section III.B.5, *infra*.

3 track. First, "[t]he deviation from zero crosslevel[8] at any point on tangent or reverse crosslevel elevation on curves may not be more than . . . 1 ¾ [inches]." § 213.63(a). Additionally, "[t]he deviation from uniform profile[9] on either rail at the mid-ordinate of a 62-foot chord may not be more than . . . 2 ¼ [inches]." *Id.* Finally, "[t]he difference in crosslevel between any two points less than 62 feet apart may not be more than . . . 2 [inches]." *Id.*

Defendant claims it undisputedly complied with § 213.63, and by implication § 213.103. Defendant cites the Track Measurement Notes of Randy McElroy, a track inspector for Defendant. Dated January 14, 2008, the Notes state that the crosslevel measurement after the alleged incident was 1 ½ inches, which is less than the 1 ¾-inch maximum. [ECF No. 124-5]. Similarly, Defendant claims the mid-ordinate of a 62-foot chord taken January 14, 2008 was 2 ¼ inches, which is equal to the maximum measurement set by § 213.63. [ECF No. 124-5]. Finally, Defendant avers that the maximum difference in crosslevel between two points 62 feet apart was 1 ½ inches, which is less than the 2-inch maximum. [ECF No. 124-5]. Defendant therefore concludes that it undisputedly complied with the maximum measurements set forth in § 213.63.

Plaintiff counters that genuine disputes of material fact remain as to whether Defendant complied with § 213.63, and by implication § 213.103, because the record must be read in light of 49 C.F.R. § 213.13. Section 213.13 states, "When unloaded track is measured to determine compliance with requirements of this part, the amount of rail movement, if any, that occurs while

---

[8]The parties dispute the meaning of the term "crosslevel." Defendant defines "crosslevel" as "the level from the top of one rail across to the top of the other rail." [ECF No. 124 at ¶ 19]. Plaintiff defines "crosslevel" as "the difference in height between the top surface of one rail and the top surface of the opposite rail." [ECF No. 138 at ¶ 19].

[9]The parties also refer to this measurement as the "dip." The parties dispute the meaning of the term "dip." Defendant states, "'Dip' is depression in the track." [ECF No. 124 at ¶ 14]. Plaintiff states, "Dip is a profile defect which is a depression or sag in the track." [ECF No. 138 at ¶ 14].

the track is loaded must be added to the measurements of the unloaded track."[10] Plaintiff asserts that McElroy admitted he does not recall measuring deflection in order to add to the unloaded dip and crosslevel measurements.  Plaintiff cites portions of McElroy's deposition, which read as follows:

> Q.      Okay.  Now, when you measured this -- this dip as you describe from the -- from the string down to the top of the rail, do you look for any other indication that the rail may dip below that if it were under a train load?
>
> A.      Yes.
>
> Q.      What do you do?
>
> A.      Look if there's any movement under the -- at the end of the tie.
>
> Q.      What do you mean by that?
>
> A.      See if it's pumping up and down in the ballast.
>
> Q.      Okay.  What do you mean by 'pumping'?
>
> A.      Moving up and down.
>
> ***
>
> Q.      Do you know if you checked under the tie to see if it was moving in that area?
>
> A.      That's -- that's been -- it's just been too long ago.  I can't remember.
>
> Q.      Okay.  Do you check under the -- the rail and between the tie plate to see if there was any gap?
>
> A.      Like I said, it's just been too long ago to really know exactly what all I did do.

[ECF No. 138-4 at 30:17-31:6, 55:7-15].

Additionally, Plaintiff cites a portion of Blackwell's report, which states,

> Based on the deposition testimony of Mr. McElroy that the track profile deviation (dip) measured on the surface of the rail with the track not under load equaled 2 ¼ inches within 3 hours of the incident, it is reasonable to conclude and my opinion that had the Track Inspector measured under the rail and ties for the deflection that occurs

---

[10]This rail movement is referred to as "deflection."  [ECF No. 138-10 at 42].

under train movement (as he is required to do per CFR 213.13) the profile deviation would certainly have been greater than 2 ¼ inches and therefore not in compliance with CFR 213.63.

[ECF No. 138-10 at 11].

The Court finds that genuine issues of material fact remain as to whether the ballast adequately supported the track. Although Defendant has met its initial burden in demonstrating that it complied with § 213.63, and by implication § 213.103, Plaintiff has raised genuine fact disputes in rebuttal. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that McElroy's measurements failed to account for potential deflection. Additionally, based upon Blackwell's report, a reasonable jury could conclude that the measurements would not have complied with § 213.63 if McElroy had taken deflection into account. Moreover, Plaintiff has set forth evidence that suggests the ballast itself was inadequate in the months leading up to the incident. For example, Joseph Thornburg, Defendant's Division Engineer, testified that on September 9, 2007, rainfall had "washed the rock out between the ties" in areas between mile posts 151.4 and 151.8. [ECF No. 138-5 at 32:4-11]. Additionally, Defendant's Slow Order Log shows a slow order on October 9, 2007 due to "washout site." [ECF No. 138-7 at 3]. Defendant's track maintenance records contain no entries after September 9, 2007 for ballast replacement. [ECF No. 138-9].

Accordingly, the Court concludes that, although § 213.103 provides the applicable standard of care, genuine disputes of material fact remain as to whether Defendant provided adequate ballast to properly support the track at issue. Plaintiff has set forth specific references to the record from which a reasonable jury could conclude that Defendant failed to comply with § 213.103, and by implication § 213.63. Summary judgment will be denied on this point.

b.      *Inadequate Crossties Claim*

With respect to crossties, Defendant claims that Plaintiff's Allegation "b" is "covered" by § 213.109.[11]   Section 213.109 is extensive, providing several details concerning the minimum requirements of crossties.   It dictates that "[c]rossties shall be made of a material to which rail can be securely fastened"; it provides the minimum number and frequency of crossties in a given section of track; it provides for the minimum quality of crossties, depending on their material. § 213.109(a)-(d).   It also describes the requisite positioning of crossties for each class of track. § 213.109(e).   In light of this considerable scope, the Court finds that § 213.109 does not merely "touch upon" or "relate to" crossties; it substantially subsumes that subject matter.   The FRA has clearly considered the subject matter and given it an effective scope of treatment and operation.

Having determined that § 213.109 substantially subsumes the subject matter of crossties, the Court addresses whether Defendant conclusively met its duty of care.   Defendant contends that it undisputedly complied with § 213.109, and it is therefore entitled to judgment as a matter of law on Plaintiff's crosstie allegations.   In support of this, Defendant states,

> 49 C.F.R. § 213.109(b) requires that 'each 39 foot segment of track shall have (1) a sufficient number of crossties which in combination provide effective support that will . . . (ii) maintain surface within the limits prescribed in § 213.63 . . .'   As discussed above, there was no violation of § 213.63 regarding track surface.   Nor has Plaintiff provided any evidence regarding the 'sufficiency' of any crossties within any 39 foot segment of track.   As such, summary judgment is proper in favor of [Defendant] on Plaintiff's allegations regarding ties in [the First Amended Complaint].

[ECF No. 126 at 7 (internal citations omitted)].

---

[11]Curiously, Defendant initially cites § 213.109 as having a preclusive effect on Plaintiff's crossties allegations, [ECF No. 126 at 4], but then proceeds to discuss only subpart (b)(1)(ii) in its analysis. [ECF No. 126 at 7].   The Court is troubled by Defendant's cursory treatment of this expansive regulation, which details the requisite number, quality, and positioning of crossties. Nonetheless, the Court will read § 213.109 as a whole to determine whether it covers Plaintiff's allegations concerning inadequate crossties.

Based on this cursory argument, the Court cannot conclude that Defendant has met its burden in establishing it undisputedly complied with § 213.109. Section 213.109 is extensive, but Defendant only addresses subpart (b)(1)(ii), which concerns the requisite number of crossties. This is problematic, given that Plaintiff has alleged that the crossties lacked adequate quality as well. Additionally, as explained in Section III.B.1.a, *supra*, genuine disputes of material fact remain as to whether Defendant complied with § 213.63. Finally, even if Defendant had met its initial burden, Plaintiff has established genuine disputes of fact in his rebuttal. Plaintiff notes that Defendant's Slow Order Log lists slow orders due to tie conditions in the months leading up to the alleged incident, [ECF No. 138-7 at 3-6], and that Defendant's maintenance records show no crosstie repairs during these times. Additionally, Plaintiff cites a portion of McElroy's deposition that supports his claim of defective crossties:

> Q.    Okay. And on the 15th when you reduced the class – a speed limit of 25, what class track is that?
>
> A.    Class 2.
>
> Q.    Okay. So you took the class from Class 3, 40, down to Class 2, 25; correct?
>
> A.    That's correct.
>
> Q.    And the reason on this form was due to tie conditions; correct?
>
> A.    By this form, yes.
>
> Q.    All right. Do you have any memory that it was for any reason other than tie conditions?
>
> A.    I can't remember what it was for.

[ECF No. 138-4 at 52:5-18].[12]  Thus, viewing the record in the light most favorable to Plaintiff, a reasonable jury could find that the crossties were in violation of § 213.109 at the time of the alleged incident, and summary judgment will be denied on this point.

> 2.   *Allegation "c": Defendant "failed to properly classify the track near MP 151.4 through 151.8 when the track did not meet all requirements for its intended class, in violation of 49 C.F.R. § 213.9(b), constituting negligence per se."*[13]

Defendant contends Allegation "c" is precluded by 49 C.F.R. § 213.9,[14] which concerns classes of tracks and their corresponding speed limits.  Part (a) of § 213.9 sets the maximum speed limit for Class 3 track at 40 miles per hour.  Part (b) of § 213.9 states, "if a segment of track does not meet all the requirements for its intended class, it is reclassified to the next lowest class of track for which it does meet all of the requirements of this part."

The Court agrees with Defendant that § 213.9 covers the subject matter of proper track classification.  Section 213.9 expressly sets forth a duty to reclassify track that fails to meet the requirements of its current classification, and Plaintiff alleges that Defendant negligently failed to

---

[12]The Court realizes that some of this evidence may constitute inadmissible subsequent remedial measures.  However, a redacted version of this testimony could be admitted to show McElroy's observations of the track on January 15, 2008.

[13]Plaintiff has set forth several allegations of negligence per se.  The Court finds it peculiar that Defendant has treated Plaintiff's negligence per se claims identically to Plaintiff's general negligence claims.  Because a statutory standard of care is inherent in a negligence per se claim, the Court cannot understand why Defendant would need to assert FRSA preclusion to establish a statutory standard of care for these claims.  *See In re Genetically Modified Rice Litig.*, 666 F. Supp. 2d 1004, 1043 (E.D. Mo. 2009) ("Negligence per se arises when the legislature pronounces in a statute what the conduct of a reasonable person must be . . . and the court then adopts the statutory standard of care to define the standard of conduct of a reasonable person.") (applying Missouri law).  Regardless, the Court will address Plaintiff's allegations from a preclusion standpoint.

[14]Defendant cites 49 C.F.R. § 213.5. [ECF No. 126 at 8].  However, § 213.5 concerns responsibility for compliance, not classes of track and operating speed limits.  Additionally, Defendant's quoted regulatory portions match the language of § 213.9, and the Court therefore construes Defendant's arguments as they apply to § 213.9.

downgrade the track at mile posts 151.4 through 151.8.  Accordingly, § 213.9, read together with the specific track requirements listed in § 213.63, provides the standard of care for Plaintiff's negligent track classification claims.

Having determined the standard of care, the Court addresses whether Defendant has established it undisputedly complied with § 213.9.  Defendant argues that, because the track at issue undisputedly met the requirements for Class 3 track pursuant to § 213.63, it was appropriately assigned a maximum speed of 40 miles per hour pursuant to § 213.9(a).  Thus, Defendant concludes it had no duty to reclassify the track pursuant to § 213.9(b).  As discussed in Section III.B.1.a, *supra*, genuine issues of material fact remain as to whether Defendant's track met the requirements for Class 3 track in § 213.63, and summary judgment will therefore be denied on this point.

      3.    *Allegation "d": Defendant "failed to support the track near MP 151.4 through 151.8 with proper ballast material to provide adequate drainage for the track, in violation of 49 C.F.R. § 213.103(c), constituting negligence per se."*

As discussed in Section III.B.1.a, *supra*, § 213.103 substantially subsumes Plaintiff's ballast allegations.  Thus, regarding Allegation "d," the issue becomes whether Defendant undisputedly provided ballast with adequate drainage.  Defendant asserts that Plaintiff has offered no evidence of improper drainage.  Specifically, Defendant avers that, while Plaintiff testified that "it was muddy around the track," he never testified that the ballast contained mud. [ECF No. 124-1 at 63:1-11; 81:11-18].

Examining Plaintiff's cited testimony, the Court finds that, viewed in the light most favorable to Plaintiff, a reasonable jury could conclude that the ballast contained mud.  Plaintiff's testimony was as follows:

Q.    (By Mr. Jones) I realize in your job, it's not your responsibility to actually maintain the track, but when you had this information in the slow order that was in effect for that area for the six months prior to the accident, was there anything that you could actually visualize as to the reason why that slow order was in effect?

A.      Yes, it was muddy around that area.

Q.      Okay.  So you saw evidence that it was muddy around the track?

A.      Yes, sir.

***

Q.      Okay.  But even though you can't define it other than it was, I think you said 100 yards after this southernmost crossing in Golden City, it was – just describe in your own words what you remember happened.

A.      I can remember it happened like I said earlier where the mud would stay there.  I remember that's where it happened.

Q.      Okay.

[ECF No. 124-1 at 63:1-11; 81:11-18].  Adopting Defendant's argument would preclude a reasonable inference that the area "around the track" included the ballast surrounding the track.  Additionally, the Declaration of Greg Willard, a locomotive engineer employed by Defendant, states, "When we encountered the track on January 14, 2008, there was mud in the ballast and around the track."[15] [ECF No. 138-3 at 2].  Viewing the evidence in the light most favorable to Plaintiff, the Court cannot conclude that Defendant has met its burden in establishing the absence of any evidence that the ballast contained mud.  This is a factual issue for the jury, and summary judgment will be denied as to Allegation "d."

---

[15]Defendant has separately filed a Motion to Strike the Declarations of Kenny Scammell and Greg Willard. [ECF No. 145].  For reasons discussed in a separate Memorandum and Order, the Court denies Defendant's Motion to Strike.

4.    *Allegation "e": Defendant "failed to support the track near MP 151.4 through 151.8 with proper ballast material to maintain crosslevel, surface, and alignment [sic],[16] in violation of 49 C.F.R. § 213.103(d), constituting negligence per se."*

As discussed in Section III.B.1.a, *supra*, § 213.103 substantially subsumes Plaintiff's inadequate ballast claims and genuine disputes of material fact remain as to whether Defendant complied with this standard of care.  Summary judgment is denied as to Allegation "e."

5.    *Allegation "f": Defendant "failed to maintain the track surface near MP 151.4 through 151.8 within the proper limits for Class 3 track in violation of 49 C.F.R. § 213.63, constituting negligence per se."*

Defendant argues that 49 C.F.R. § 213.63 substantially subsumes Plaintiff's Allegation "f", and the Court agrees.  Section 213.63 details the requisite measurements, including crosslevel and dip, for various classes of track, substantially subsuming the subject matter of track surface.  *See Plasser Am. Corp. v. Burlington N. & Santa Fe Ry. Co.*, No. 3:06CV00095 JLH, 2007 WL 4410682, at *3 (E.D. Ark. Dec. 14, 2007) (finding that § 213.63 substantially subsumed the plaintiff's claim that defective rail elevation caused the derailment of a train).  However, as discussed in Section III.B.1.a, *supra*, genuine disputes of material fact remain as to whether Defendant complied with § 213.63, and summary judgment is accordingly denied as to Allegation "f."

---

[16]The parties state that "'[a]linement' is if the track is kicked to the right or left."  [ECF Nos. 124 at ¶ 28, 138 at ¶ 28].  Regarding alinement, Defendant cites a portion of Thornburg's deposition, in which he states that "there was no . . . alinement that was . . . out of deviation" on November 6, 2007. [ECF No. 124-3 at 53:9-21].  Defendant also notes – and Plaintiff admits – Plaintiff has never alleged any violation of 49 C.F.R. § 213.55, which pertains to track alinement.  Moreover, in rebuttal, Plaintiff has failed to point out any specific references to the record that could allow a reasonable jury to determine that the track's alinement was improper.  However, the Court will still deny summary judgment on Allegation "e," because, as previously discussed, genuine disputes of material fact remain as to whether the track had proper crosslevel and dip pursuant to 49 C.F.R. § 213.63.

      6.     *Allegation "g": Defendant "failed to provide a sufficient number, type, and/or quality of crossties near MP 151.4 through 151.8 to provide effective support for maintaining the surface within the limits prescribed by 49 C.F.R. § 213.63, in violation of 49 C.F.R. § 213.109, constituting negligence per se."*

As discussed in Section III.B.1.b, *supra*, Plaintiff's crosstie claims are substantially subsumed by § 213.109, and genuine disputes of material fact remain as to whether Defendant maintained adequate crossties and track support.  Therefore, the Court denies summary judgment as to Allegation "g."

      7.     *Allegation "h": Defendant "failed to provide remedial action when it knew or should have known that a combination of track conditions failed to provide for safe operations over the track near MP 151.4 through 151.8, in violation of 49 C.F.R. § 213.1(a), constituting negligence per se."*

Defendant claims that 49 C.F.R. § 213.1(a) substantially subsumes Plaintiff's Allegation "h." Section 213.1(a) states,

> In general, the requirements prescribed in this part apply to specific track conditions existing in isolation.  Therefore, a combination of track conditions, none of which individually amounts to a deviation from the requirements in this part, may require remedial action to provide for safe operations over that track.

The Court agrees that § 213.1(a) covers Allegation "h."  Plaintiff alleges that a "combination of factors" created unsafe conditions; the regulation states that a "combination of factors," while individually in compliance with the FRSA, may generate liability as a whole.  Thus, the Court concludes that § 213.1(a) sets the standard of care for Allegation "h."

That said, genuine disputes of material fact exist as to whether a "combination of factors" created unsafe conditions on Defendant's track.  The Court has already found that a reasonable jury could find that Defendant failed to satisfy minimum requirements concerning crossties, ballast, and track measurements in isolation.  Certainly, then, a reasonable jury could find that a combination of substandard conditions existed under § 213.1(a), which, in a sense, broadens the scope of liability. That is, under § 213.1(a), Plaintiff need not demonstrate that Defendant literally violated a separate

FRA Track Safety Standard; rather, Plaintiff may demonstrate that a combination of conditions existed that, as a whole, necessitated remedial action.  Thus, the Court denies summary judgment as to Plaintiff's Allegation "h."

> 8.    *Allegation "i": Defendant "failed to take corrective or remedial action by repairing, restricting movement, or removing the track from service near MP 151.4 through 151.8 despite notice that the track did not comply with requirements, in violation of 49 C.F.R. § 213.5(a), constituting negligence per se."*

Defendant contends that the FRSA substantially subsumes Plaintiff's Allegation "i." Defendant cites 49 C.F.R. § 213.5(a), which requires that

> any owner of track to which this part applies who knows of or has notice that the track does not comply with the requirements of this part, shall . . . (1) Bring the track into compliance; (2) Halt operations over that track; or (3) Operate under authority of a person designated under § 213.7(a), who has at least one year of supervisory experience in railroad track maintenance, subject to conditions set forth in this part.

Because Plaintiff alleges that Defendant negligently failed to take remedial action regarding defects in the track at mile posts 151.4 through 151.8, and because § 213.5(a) provides specific instructions as to what track owners must do if their tracks do not comply with FRA standards, the Court finds that § 213.5(a) substantially subsumes Plaintiff's Allegation "i."

Having determined the standard of care, the Court addresses whether Defendant has established it undisputedly complied with § 213.5(a).  Defendant argues that it could not possibly have had notice of any regulatory violations, because it undisputedly complied with the applicable regulations.  Thus, Defendant concludes it had no duty to take remedial action pursuant to § 213.5(a). As previously discussed, genuine disputes of material fact remain as to whether Defendant complied with applicable regulations, including 49 C.F.R. §§ 213.1, 213.9, 213.13, 213.63, 213.103, and 213.109.  Accordingly, the Court denies summary judgment as to Allegation "i."

23

> 9.    Allegation "j": Defendant "failed to perform inspection of the track in the
> proper manner and frequency near MP 151.4 through 151.8 in violation of
> 49 C.F.R. § 213.233(b) and (c), constituting negligence per se."

Defendant argues that Plaintiff's Allegation "j" is precluded by 49 C.F.R. § 213.233(b) and

(c).  Section 213.233(b) sets forth several requirements concerning the manner in which inspections

are performed:

> (b) Each inspection shall be made on foot or by riding over the track in a vehicle at
> a speed that allows the person making the inspection to visually inspect the track
> structure for compliance with this part. However, mechanical, electrical, and other
> track inspection devices may be used to supplement visual inspection. If a vehicle is
> used for visual inspection, the speed of the vehicle may not be more than 5 miles per
> hour when passing over track crossings and turnouts, otherwise, the inspection
> vehicle speed shall be at the sole discretion of the inspector, based on track
> conditions and inspection requirements. When riding over the track in a vehicle, the
> inspection will be subject to the following conditions--

> > (1) One inspector in a vehicle may inspect up to two tracks at one time
> > provided that the inspector's visibility remains unobstructed by any cause and
> > that the second track is not centered more than 30 feet from the track upon
> > which the inspector is riding;

> > (2) Two inspectors in one vehicle may inspect up to four tracks at a time
> > provided that the inspectors' visibility remains unobstructed by any cause and
> > that each track being inspected is centered within 39 feet from the track upon
> > which the inspectors are riding;

> > (3) Each main track is actually traversed by the vehicle or inspected on foot
> > at least once every two weeks, and each siding is actually traversed by the
> > vehicle or inspected on foot at least once every month. On high density
> > commuter railroad lines where track time does not permit an on track vehicle
> > inspection, and where track centers are 15 foot or less, the requirements of
> > this paragraph (b)(3) will not apply; and

> > (4) Track inspection records shall indicate which track(s) are traversed by the
> > vehicle or inspected on foot as outlined in paragraph (b)(3) of this section.

Section 213.233(c) addresses the frequency of track inspections.  It requires track owners to inspect

Class 3 track "[w]eekly with at least 3 calendar days interval between inspections, or before use, if

the track is used less than once a week, or twice weekly with at least 1 calendar day interval between

inspections, if the track carries passenger trains or more than 10 million gross tons of traffic during the preceding calendar year." § 213.233(c). In light of these extensive provisions, the Court finds that § 213.233(b)-(c) does not merely "relate to" or "touch upon" Plaintiff's negligent inspection claims; it substantially subsumes them. Thus, Section 213.233(b)-(c) sets the standard of care for Allegation "j."

Defendant claims that it undisputedly complied with this standard of care. Defendant avers that "Plaintiff has made no attempt to show that [Defendant] did not conduct any specific inspection in a manner that did not comply with section 213.233(b)." [ECF No. 126 at 9-10]. Defendant notes that Erik Frohberg, Defendant's "Director/Track Standards and Procedures," stated, "I have reviewed the materials as sent to me on April 16, 2013 and it is apparent that the track inspections were done according to FRA and BNSF requirements."[17] [ECF No.124-4 at 6]. Citing its track inspection records, Defendant maintains that it complied with § 213.233(c), because it inspected the tracks with the required frequency.[18]

Plaintiff responds that the inspections were conducted improperly, because they do not reflect the actual conditions of the track at the time of the inspection. Plaintiff avers that certain adverse track conditions listed on the Slow Order Log and Trouble Ticket Reports do not appear on the Track Inspection Reports. For example, the Slow Order Log lists a slow order due to tie conditions on November 5, 2007, [ECF No. 137-8 at 3], but the Track Inspection Reports do not list any defect for

---

[17]Plaintiff objects to this testimony as an inadmissible legal conclusion. Because the Court finds that genuine disputes of material fact remain as to whether the inspections were conducted in accordance with § 213.233, the Court declines to rule on that evidentiary issue at this time.

[18]Section 213.233(c) provides two sets of instructions regarding inspection frequency for Class 3 track – one for track used less than once a week and one for track carrying "passenger trains or more than 10 million gross tons of traffic during the preceding calendar year." Neither party, however, has informed the Court which standard applies in the instant case.

that date. [ECF No. 138-13 at 28]. Similarly, the Slow Order Log lists a washout site on September 21, 2007, [ECF No. 137-8 at 2], without any corresponding notation on the Track Inspection Report. [ECF No. 138-13 at 25]. Thus, in rebuttal, Plaintiff has established genuine disputes of material fact as to whether the inspections were properly executed under § 213.233(b). By implication, genuine disputes of material fact also exist as to whether Defendant conducted qualifying inspections at the frequency prescribed by § 213.233(c). Summary judgment will be denied as to Allegation "j."[19]

> 10.    Allegation "k": Defendant "failed to make proper measurements of the track near MP 151.4 through 151.8 considering the amount of rail movement occurring when the track is loaded in violation of 49 C.F.R. § 213.13, constituting negligence per se."

Defendant claims 49 C.F.R. § 213.13 covers the subject matter of Plaintiff's Allegation "k." Section 213.13 states, "When unloaded track is measured to determine compliance with requirements of this part, the amount of rail movement, if any, that occurs while the track is loaded must be added to the measurements of the unloaded track." Section 213.13 directly encompasses the subject matter of properly accounting for rail movement. The Court finds that § 213.233 constitutes the standard of care for Allegation "k."

However, as discussed in Section III.B.1.a, *supra*, genuine disputes of material fact remain as to whether Defendant complied with § 213.13. Therefore, the Court will deny summary judgment as to Allegation "k."

---

[19]In rebuttal, Plaintiff also states, for the first time, that Defendant violated § 213.233(d), which states, "If the person making the inspection finds a deviation from the requirements of this part, the inspector shall immediately initiate remedial action." Allegation "j" only asserts violations of § 213.233(b) and (c). However, § 213.233(d) may be relevant to Plaintiff's Allegation "m," discussed *infra*, which generally claims that Defendant failed to take proper remedial action.

11. *Allegation "l": Defendant "negligently failed to provide ballast material for the track that was not fouled and provided proper drainage, which caused the ballast to not properly support the track."*

Defendant argues that § 213.103(c)-(d) precludes Plaintiff's ballast claims and that summary judgment should be granted in its favor. As explained in Section III.B.1.a, *supra*, although § 213.103(c)-(d) substantially subsumes Plaintiff's ballast claims, genuine disputes of material fact remain as to whether Defendant complied with that standard, and summary judgment will accordingly be denied as to Allegation "l."

12. *Allegation "m": Defendant "negligently failed to timely repair the track with sufficient ties and ballast to ensure good ride quality and safe operations."*

As to Allegation "m," Defendant again maintains that (1) Plaintiff's inadequate ballast claims are "covered by" § 213.103(c)-(d), and (2) Plaintiff's inadequate ties claims are "covered by" §§ 213.63 and 213.109. As discussed in Sections III.B.1.a and III.B.1.b, *supra*, the Court finds that those regulations set the standards of care, respectively, for Plaintiff's claims. However, as previously explained, genuine disputes of material fact remain as to whether Defendant complied with the applicable regulations, and summary judgment will be denied as to Allegation "m."

13. *Allegation "n": Defendant "negligently failed to perform adequate inspections to ensure good ride quality and safe operations."*

As discussed in Section III.B.9, *supra*, § 213.233 provides the standard of care for Plaintiff's negligent inspection claims, and genuine disputes of material fact remain as to whether Defendant properly inspected its track under that standard. Therefore, summary judgment is denied as to Allegation "n."

14. *Allegation "o": Defendant "negligently failed to provide adequate crossties to properly support the track to ensure good ride quality and safe operations."*

Defendant argues that Allegation "o" is substantially subsumed by § 213.109, and that it is entitled to judgment as a matter of law. As discussed in Section III.B.1.b, *supra*, § 213.109 sets the

27

standard of care for Plaintiff's crossties claims, and genuine disputes of material fact remain as to whether Defendant complied with that standard.  Summary judgment is denied with respect to Allegation "o."

>    15.   *Allegation "p": Defendant "negligently failed to timely reduce the track speed when it knew or should have known of a combination of track geometry conditions that failed to ensure good ride quality and safe operations."*

Defendant asserts that 49 C.F.R. §§ 213.9 and 213.1(a) substantially subsume Allegation "p," as those regulations govern track classifications and combinations of track conditions necessitating remedial action, respectively.  As previously explained in Sections III.B.2 and III.B.7, *supra*, § 213.9 provides the standard of care for allegations that Defendant failed to properly classify its track, and § 213.1(a) provides the standard of care for allegations that a combination of track conditions necessitated remedial actions.  That said, genuine disputes of material fact remain as to whether Defendant complied with those regulations, and summary judgment is denied as to Allegation "p."

>    16.   *Allegation "q": Defendant "negligently failed to use proper procedures when taking measurements of the track near MP 151.4 through 151.8 to ensure good ride quality and safe operations."*

Defendant maintains that Allegation "q" is covered by 49 C.F.R. § 213.13.  As discussed in Section III.B.1.a, *supra*, § 213.13 sets the standard of care for Plaintiff's allegations that Defendant failed to properly make track measurements, and genuine disputes of material fact remain as to whether Defendant complied with that standard.  Summary judgment is denied as to Allegation "q."

## C.   *Foreseeability*

Finally, Defendant maintains that it is entitled to summary judgment, because Plaintiff has failed to produce sufficient evidence of foreseeability.  Defendant argues that it had no reason to believe that the alleged harm could occur, because it lacked any notice that the track at issue was defective.  Plaintiff responds that Defendant is incorrect for two reasons.  First, Plaintiff argues that,

because he has alleged negligence per se, he need not prove foreseeability.  Second, Plaintiff contends

that, when the Eighth Circuit reviewed this case on appeal, it held that Plaintiff had produced

sufficient evidence to raise a jury question of foreseeability.

The Court finds that Plaintiff's case survives summary judgment.  By alleging FRSA

regulatory violations, Plaintiff has alleged negligence per se.  *Morant v. Long Island R.R.*, 66 F.3d

518 , 523 (2d Cir. 1995) ("It is well-settled that the FELA requires a finding of negligence per se

when there has been a violation of a safety statute specifically aimed at the railroad industry.").

"Under a negligence per se theory, if a plaintiff proves that a statutory violation has occurred[,] he

need not prove the traditional negligence elements of foreseeability, duty and breach, but he is still

required to prove causation."  *Capriotti v. Consol. Rail Corp.*, 878 F. Supp. 429, 434 (N.D.N.Y.

1995) (citing *Moody v. Boston and Maine Corp.*, 921 F.2d 1, 4 (1st Cir. 1990)).  *See also Deso v. CSX

Transp., Inc.*, 790 F. Supp. 2d 1, 11-12 (N.D.N.Y. 2011) ("Under a FELA negligence per se theory,

if a plaintiff proves that a statutory violation has occurred he need not prove the traditional negligence

elements of foreseeability, duty and breach[.]"); *Buss v. BNSF Ry. Co.*, No. 08C6720, 2010 WL

2836736, at *2 (N.D. Ill. July 12, 2010) ("FELA is not a strict liability statute, and plaintiffs must still

prove the common law elements of negligence, including foreseeability, duty, breach, and causation.

However, a plaintiff can satisfy the first three elements by proving that the defendant violated a statute

or regulation.").

In any event, as the Eighth Circuit held on appeal, the concept of foreseeability has been

construed liberally in FELA cases, and Plaintiff has set forth evidence that Defendant "knew of

problems with the stretch of track in question before the accident."  *Cowden*, 690 F.3d at 896.

Additionally, "the proper foreseeability question for the present case[20] is whether a reasonably prudent person who knew of the reported problems would have anticipated an injury to occur as a result of operating a train over that stretch of track at the same speed." *Id*.  Defendant has therefore failed to meet its burden in establishing it is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant BNSF Railway Company's Motion for Summary Judgment [ECF No. 120] is **DENIED.**

Dated this  30th  day of September, 2013.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE

---

[20]At the time that the Eight Circuit reviewed this case, Plaintiff had not alleged negligence per se under the FELA.