UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEVIN D. COWDEN,<br><br>                    Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY,<br><br>                    Defendant. | Case No. 4:08CV1534 ERW |

## PLAINTIFF'S TRIAL BRIEF

      This case comes to trial on Plaintiff Kevin Cowden's civil compensation claims under the Federal Employers' Liability Act (FELA), 45 U.S.C. §51 et seq. against his former employer, BNSF Railway Co. for disabling spine injuries he sustained during the course of his employment as a freight railroad conductor on January 14, 2008. Cowden was working in a locomotive at the front end of a freight train as it operated over BNSF's track near Springfield, Missouri, when the locomotive suddenly bottomed out, causing Cowden to be thrown from his unrestrained seat and injuring his spine. During the post-injury inspection, BNSF identified track defects (dips and cross-level misalignment) which caused the rough, unsafe ride in the speeding locomotive. Those defects resulted from long term neglect of the track structures and were only corrected after Cowden's injury. Given the track defects, BNSF violated the FELA by directing Cowden's train to operate at the speed which was too fast for the conditions, thereby causing the jolting ride.

      Cowden was diagnosed with damage to his cervical and lumbar spine intervertebral discs and underwent surgical removal of one disc and fusion of his lumbosacral spine, permanently disabling him from returning to work as a conductor. Cowden's lucrative 12 year career with the railroad thus ended when he was only 41 years of age, relegating him to light duty work at a

1

fraction of the compensation he was capable of earning in his previous unrestricted industrial work at the railroad.

I. **LEGAL ISSUES**

a. **FELA claims for negligence and negligence per se**

The legal issues presented by this action have been addressed thoroughly, by the Court of Appeals for the Eighth Circuit, *Cowden v. BNSF Ry. Co.*, 690 F.3d 884 (8th Cir. 2012), and this Court, upon remand, in denying BNSF's motion for summary judgment (Doc. 120). The case is framed by Plaintiff's Amended Complaint (Doc. 103), which asserts claims under the FELA for negligent failure to provide reasonably safe working conditions and for negligence per se based on BNSF's violation of several track safety regulations promulgated by the Federal Railroad Administration (FRA). The FELA is the exclusive remedy for railroad employees who have been injured while engaged in interstate commerce. *New York Cent. R.R. v. Winfield*, 244 U.S. 147, 148 (1917). Federal law controls substantive issues within FELA cases. *Chesapeake & Ohio R. Co. v. Stapleton*, 279 U.S. 578, 590 (1929).

A railroad's fundamental duty is to provide its employees a reasonably safe place to work. *Bailey v. Cent. Vt. Ry.*, 319 U.S. 350, 352 (1943). Railroads breach their duty unless they remove all dangers that can be removed by the exercise of reasonable care. *Ackley v. Chicago & Nw. Transp. Co.*, 820 F.2d 263, 267 (8th Cir. 1987). The elements of an FELA general negligence claim are distinct from those of a claim based on the violation of safety regulations and many traditional principles of strict liability do not apply in FELA cases. When a railroad employer violates a statutory or regulatory standard and its employee is injured as a result, the employer may be held liable under FELA -- even if the injury is not the type against which the statute was meant to protect. *Schmitz v. Canadian Pac. Ry. Co.*, 454 F.3d 678, 682 (7th Cir.

2

2006) (citing *Kernan v. American Dredging Co.*, 355 U.S. 426, 432 (1958)). Proof of a regulatory violation supplies "the wrongful act necessary to ground liability under the FELA." *Carter v. Atlantic & St. Andrews Bay Ry. Co.*, 338 U.S. 430, 434 (1949). Such strict FELA liability claims "dispense, for the purposes of employees' suits, with the necessity of proving that violations of the safety statutes constitute negligence; and making proof of such violations is effective to show negligence as a matter of law." *Urie v. Thompson*, 337 U.S. 163, 174 (1949); *See also Brady v. Terminal Railroad Ass'n of St. Louis*, 303 U.S. 10 (1938). Care on the part of BNSF is immaterial and the defense of contributory negligence is not available to bar Cowden's claim or reduce the amount of his compensable damages. 45 U.S.C. § 53. Accordingly, BNSF has no affirmative defense of contributory negligence or comparative fault to Cowden's negligence per se claim that BNSF violated safety regulations.

A jury trial is favored in FELA cases and is considered to be part of a railroad employee's substantive remedy.  *Bailey*, 319 U.S. at 354. Therefore, FELA cases operate on a strong tendency to reserve most matters for jury resolution. *Chicago, Rock Island and Pacific R.R. Co. v. Melcher*, 333 F.2d 996, 999 (8th Cir. 1964). In fact, the jury's power to engage in inferences is recognized as significantly broader in FELA cases than in common law negligence actions. *Id.*

While the Court denied BNSF's summary judgment motion in its entirety, Doc. 154 at 30, it nevertheless found that the possibility of FELA *negligence* was precluded in this case by 49 U.S.C. §20106(a)(2), because FRSA regulations "substantially subsume" the subject matter of the FELA claim, see, e.g., Doc. 153 at 4 n.2; Doc. 154 at 7.  To be clear, Plaintiff does not dispute, for purposes of this brief, the Court's finding that applicable regulations "substantially subsume" the subject matters of his FELA claims. However, Plaintiff respectfully submits that

3

§20106(a)(2) simply has no application in the context of a federal statute such as the FELA. Indeed, as the Court noted, "the plain language of the FRSA preemption clause, 49 C.F.R. § 20106(a)(2), speaks only to preemption of state law claims." Doc. 154 at 4. The Court's "starting point in interpreting a statute is always the language of the statute itself." *United States v. Jungers*, 702 F.3d 1066, 1069 (8th Cir. 2013) (quoting *United States v. S.A.*, 129 F.3d 995, 998 (8th Cir. 1997)). "[I]f the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end." *Id.* (quoting *United States v. Behrens*, 644 F.3d 754, 755 (8th Cir. 2011)). Although this Court interpreted the Eighth Circuit's opinion as suggesting that §20106(a)(2) contemplated preclusion of federal negligence claims, Doc. 154 at 6, the Georgia Supreme Court recently interpreted *Cowden* as "expressing doubt" that FELA claims could *ever* be precluded, and thus merely assuming—without deciding—that *if* preclusion is possible in some cases, then the *Easterwood* test for §20106(a)(2) preemption of *state-law* negligence claims would also apply in the FELA context, see *Norfolk S. Ry. v. Zeagler*, No. S12G2031 slip op. at 36, 2013 Ga. LEXIS 706, *40–41 (Ga. Sept. 23, 2013).

Instead of the *Easterwood* test for state-law preemption under §20106(a)(2), the proper test for analyzing whether a federal negligence claim may be precluded is whether there is an "intolerable conflict" between the federal statutes, which is an aspect of the Supreme Court's "implied repeal" jurisprudence. *Atchison, T.& S.F.R. CO. v. Buell*, 480 U.S. 557, 566–67 (1987); see also *Zeagler*, slip op. at 37–38, 2013 Ga. LEXIS 706, *42 (declining to resolve whether *Buell* standard controlled FELA preclusion analysis because railroad's argument failed under either standard) (citing *Cowden*, 690 F.3d at 892–93). This Court found that the "implied repeal" standard did not apply here because the FELA remains "fully applicable in situations where FRSA regulations do not substantially subsume the subject matter of the FELA claim." Doc. 154

4

at 7 n.3. However, Plaintiff respectfully submits that the Court's reasoning overlooks controlling Supreme Court precedent. In *Buell*, the Supreme Court applied the doctrine to just such a "partial" repeal issue. The railroad in that case argued that the Railway Labor Act should be read as carving out "a narrow … exception" to FELA when the subject matter of the FELA claim is an emotional injury. 480 U.S. at 566. The Supreme Court rejected that argument because "absent an intolerable conflict between the two statutes, we are unwilling to read the RLA as repealing *any part* of the FELA." *Id.* at 566–67 (emphasis added) (citing *Morton v. Mancari*, 417 U.S. 535, 550 (1974)); see also Doc. 140 at 12–13 (Pl.'s summary judgment opposition, citing *Buell* and *Morton v. Mancari* among other "implied repeal" cases). The argument rejected in *Buell* is analogous to BNSF's position that the FRSA should be read as carving out an exception to FELA negligence under 45 U.S.C. §51, whenever a regulation covers the subject matter of the FELA claim. Absent an intolerable conflict, *Buell* holds that there can be no FELA preclusion.

Applying the *Buell* standard here, it becomes clear that there is no "intolerable conflict" between BNSF's ability to comply with safety statutes and regulatory standards while also fulfilling the general FELA duty to provide a safe workplace. FRSA regulations prescribe only the "minimum" track safety requirements, expressly contemplate circumstances in which remedial action will be required even though the railroad is in compliance with the requirements for all individual track conditions in isolation, and expressly contemplate that railroads may "adopt[] and enforc[e] additional or more stringent requirements not inconsistent" with the regulations. 49 C.F.R. §213.1(a). Indeed, this Court recognized, in this case, that §213.1(a) "broadens the scope of track owner liability." Doc. 153 at 5. Because the regulations contemplate railroad liability for failing to take action beyond the minimum regulatory requirements, there is no conflict between the regulations and a jury finding that the railroad was generally negligent in

5

failing to maintain a safe work place; for example, by repairing defective ties or replenishing ballast. Here, BNSF has failed to show any intolerable conflict between its ability to comply with the regulations while at the same time properly repairing the defective track in order to fulfill its general FELA duty to provide a safe workplace. Thus, Cowden should be permitted to submit his case to the jury on both a general negligence theory as well as based on whether BNSF violated the applicable FRSA regulations. Allowing Plaintiff to submit his case to the jury under both theories will also serve the interest of judicial economy by obviating the potential need for a new trial if the Court's application of the §20106(a)(2) state-law preemption test to a federal negligence claim is found to be in error.

### b. Liberal causation standard under FELA

The Supreme Court has confirmed the long-standing rule that "a relaxed standard of causation applies under FELA." *CSX Transp., Inc. v. McBride*, 131 S.Ct. 2630, 2636 (2011); *see also*, *Crane v. Cedar Rapids & Iowa City Rwy. Co.*, 395 U.S. 164, 166 (1969) (stating that a FELA plaintiff "is not required to prove common-law proximate causation but only that his injury resulted 'in whole or in part' from the railroad's violation of the Act").

> Under [the FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.

*McBride*, 131 S.Ct. at 2636–41 (*citing Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500, 506 (1957)); *see also Fletcher v. Union Pac. R. Co.*, 621 F.2d 902, 909 (8th Cir. 1980) ("The test of causation under the FELA is whether the railroad's negligence played any part, however small, in the injury which is the subject of the suit."); *Paul v. Mo. Pac. R. Co*., 963 F.2d 1058, 1061 (8th Cir. 1992) ("Under FELA, the plaintiff carries only a slight burden on causation."). Thus, juries in FELA cases "are properly instructed that a defendant railroad 'caused or contributed to'

a railroad worker's injury 'if [the railroad's] negligence played a part—no matter how small—in bringing about the injury.'" *McBride*, 131 S.Ct. at 2644.

### c. Damages

The proper measure of damages in FELA cases is inseparably intertwined with the right of action itself and should be analyzed with a view toward the broad remedial purpose of the Act. *Norfolk & Western Ry. Co. v. Liepelt*, 444 U.S. 490, 493 (1980), *reh'g denied*, 445 U.S. 972 (1980). Under the FELA, a plaintiff may recover damages for lost earnings, unpaid medical expenses, fringe benefit loss, household services, and past and present pain and suffering. See Loumiet & Jungbauer, TRAIN ACCIDENT RECONSTRUCTION AND FELA AND RAILROAD LITIGATION 337, 340 (4th ed. 2005) (collecting cases).

An employee may recover future damages, such as loss of earning capacity and future pain and suffering, which includes recovery for embarrassment and humiliation when an injury results in scars, mutilation or disfigurement. *Id*. at 337. Several jurisdictions require no more than proof that the plaintiff has a permanent injury somehow causing work difficulties to send to the jury the question of damages for impairment of future earning capacity. See, e.g., *CSX Transp. Inc. v. Maynard*, 667 So.2d 642, 647 (Ala. 1995) ("A complaint alleging permanent injury is sufficient to imply impairment of earning capacity."); *Honeycutt v. Wabash R.R. Co.*, 313 S.W.2d 214, 218 (Mo.App.1958) ("[P]roof that plaintiff suffered a permanent injury is sufficient evidence for a recovery for loss of future earnings ... [so long as there is] a causal relationship between the permanent injury and the impairment of ability to work"), *aff'd*, 337 S.W.2d 50 (Mo. 1960).

An FELA plaintiff may establish a claim for impaired future earning capacity even though some "speculation" on the part of the jury would be required to evaluate the claim. *Wiles*

*v. New York, Chicago & St. Louis R.R. Co.*, 283 F.2d 328, 332 (3rd Cir. 1960), *cert denied*, 364 U.S. 900 (1960). "A plaintiff need not, as a prerequisite to recovery, prove that in the near future he will earn less money than he would have but for his injury. Rather, a plaintiff need only show that his injury has caused a diminution in his ability to earn a living." *Gorniak v. Nat'l R.R. Passenger Corp.*, 889 F.2d 481, 484 (3rd Cir.1989).

Illustrative of the liberal standard for recovery of future lost earnings and medical expenses in FELA cases is *Quilter v. Elgin, Joliet and E. Ry. Co.*, 409 F.2d 338 (7th Cir.1969). The appellate court affirmed a finding that the evidence was sufficient to support a finding of permanent injury and consequently a reasonable certainty of loss of future earnings. *Id.* at 340. In *Quilter*, plaintiff suffered orthopedic injuries for which he received treatment and then returned to work regularly as a switchman for almost sixteen months. *Id.* at 339. Thereafter, he was terminated for drinking on the job. *Id.* At trial, plaintiff contended that he was drinking because of pain from his injuries. *Id.* Since the evidence supported a finding of permanent injury and the jury was aware of his life expectancy, his age of fifty-three years, and past wages earned, there was adequate evidence to support the submission of lost earnings which were reasonably certain. *Id.* at 340.

Similarly, the Missouri Supreme Court in *Adams v. Atchison, Topeka & Santa Fe Ry. Co.*, affirmed the submission of future damages. 280 S.W.2d 84, 93 (Mo. 1955). The Court noted that "the jury could take into consideration any impairment of the power to work and earn money in lines of work other than railroad work or for railroad companies, in the past dating from plaintiff's injuries or that he is reasonably certain to sustain in the future, if any, as a direct result of his injuries." *Id.* The evidence supported the fact that plaintiff received permanent

injuries which adversely affected his ability to work and earn money and that he would continue to do so. *Id*. The Court further noted evidence of a permanent medical impairment. *Id*. at 95.

Finally, the Missouri Supreme Court in *Brock v. Gulf, Mobile and Ohio R.R. Co*., 270 S.W.2d 827, 835 (Mo.1954), held that where "the injuries shown are of a permanent nature resulting in pain and suffering and loss of earnings, the evidence is sufficient to show plaintiff is reasonably certain to suffer a loss of earnings and to endure pain and suffering in the future." Where such inferences may be drawn from the evidence presented at trial, an instruction may include the future loss of earnings or earning capacity, as well as future pain and suffering. *Id*.

Cowden was evaluated by several spine specialists, underwent spinal MRIs, myelograms and Cat Scans, a lumbar discogram, lumbar facet injections and physical therapy before having spine surgery on January 28, 2009 to remove a herniated lumbar disc and to fuse his fifth lumbar vertebrae to his sacrum. Cowden has over $14,000 in outstanding medical bills which he still owes. He has not worked for BNSF since his surgery. A Functional Capacity Exam in September 2009 determined that it would be unsafe for him to return to work as a conductor due to the physical nature of the job and the risk for re-injury. His healthcare providers recommended that he limit himself to light physical work and, subsequently, he obtained such an entry level job at Bass Pro Shop which pays about $20,000 annually, compared to the approximately $100,000 BNSF conductors earn annually in wages and benefits. Given Cowden's diminished 25 year earning capacity, an economic expert has calculated Cowden's economic damages to range from $1.3 to $1.9 million. Additional compensation for Cowden's past and future pain, suffering, disfigurement and disability likely matches or exceeds the economic damages.

II. <u>**FACTUAL/EVIDENTIARY ISSUES**</u>

    a. <u>Liability Expert Testimony</u>

9

BNSF denies liability for its failure to provide safe track conditions and its violations of federal track safety regulations. The parties will present lay and expert fact and opinion witnesses to provide evidence on these issues. The Court denied BNSF's motion to Bar the Testimony of Plaintiff's liability expert Alan Blackwell, finding that this witness has adequate factual foundations and reliable methodology to support his opinions of BNSF's liability. See Doc. 152. Accordingly, factual issues of BNSF's negligence and violation of track safety regulations will be resolved by the jury with the Court's legal instructions of law.

To the extent the Court prohibits Blackwell from testifying that BNSF violated certain FRSA regulations or that it knew or should have known of the track defects, or other "legal matters", Doc. 152 at 10-13; 17, BNSF's expert Erik Frohberg, should also be barred from offering similar testimony, such that BNSF did not violate the regulations or did not have notice.

b. <u>Subsequent Remedial Measures</u>

In addressing BNSF's motion to exclude portions of Blackwell's expert report, the Court addressed the subsequent remedial measure doctrine as to track improvements observed two years post-injury and the issuance of a low order on the date of injury, soon after the incident. Doc. 153 at 13-16. The Court did not rely on such evidence in denying BNSF's MSJ, Doc. 153 at 15, n.10, and the evidentiary issue has not been fully briefed apart from Blackwell's consideration of this limited evidence.

At trial, the Court should consider, in the evidentiary context, the admissibility of such evidence, for purposes apart from showing negligence. The general exclusionary rule set forth in Fed.R.Evid. 407 is not absolute, but is subject to exceptions. The Court acknowledged that "the Eighth Circuit historically exempted strict products liability cases from FRE 407", although it has not expressly determined whether exemption applies in a case such as this. Doc. 152 at 13.

Moreover, characterization of Cowden's regulatory violation claim as strict liability or negligence per se should not be dispositive. To the extent any weight is given, Cowden's claim is more similar to that of strict liability. See *Schmitz v. Canadian Pac. Ry. Co.*, 454 F.3d 678, 682 (7th Cir. 2006) (employer may be held liable under FELA even if the injury is not the type against which the statute was meant to protect) (citing *Kernan v. American Dredging Co.*, 355 U.S. 426, 432 (1958)).

Regardless, allowing evidence any subsequent remedial measure by BNSF was mandated by the FRSA regulations, as well as BNSF's own inspection and maintenance policies. Where federal law mandates corrective action, the Eighth Circuit has recognized an exception to the subsequent remedial measure doctrine because "the policy of encouraging remediation would not necessarily be furthered by the exclusion of such evidence." *See, e.g., O'Dell v. Hercules Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990) (internal citation omitted).

Here, the evidence is undisputed that the FRA regulations and BNSF's internal inspection and maintenance policies were already in place, which required remediation of the defective track conditions even if Cowden had not been injured. The public policy rationale for excluding evidence of BNSF's remedial action simply does not apply in this case. Moreover, the Court has allowed that Cowden may set forth other legitimate basis for admission of this evidence, such as impeachment, and as evidence of the actual track conditions on the date of Cowden's injury.

| | |
|---|---|
| October 14, 2013 | SCHLICHTER, BOGARD & DENTON |
| | /s/ Nelson G. Wolff_____ |
| | Roger C. Denton #30292 |
| | Nelson G. Wolff #40796 |
| | Elizabeth M. Wilkins #61284 |
| | 100 South Fourth Street, Suite 900 |
| | St. Louis, Missouri 63102 |
| | 314-621-6115 |
| | 314-621-7151 (fax) |
| | rdenton@uselaws.com |
| | nwolff@uselaws.com |
| | bwilkins@uselaws.com |
| | |
| | Attorneys for Plaintiff |

**CERTIFICATE OF SERVICE**

On October 14, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which shall send notification of such filing to all counsel of record.

Thomas E. Jones
Harlan A. Harla
THOMPSON COBURN, LLP
525 West Main Street
P.O. Box 750
Belleville, IL 62222-0750
tjones@thompsoncoburn.com
hharla@thompsoncoburn.com


                                                              /s/ Nelson G. Wolff_____