# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

**KEVIN D. COWDEN,**

                    **Plaintiff,**

**vs.**                                        **No. 4:08-cv-1534**

**BNSF RAILWAY COMPANY,**

                    **Defendant.**

## PLAINTIFF'S MOTIONS IN LIMINE

Plaintiff Kevin Cowden, by and through his attorneys, moves the Court in limine to instruct Defendant and its counsel to abstain from and preclude them from using any pleading, testimony, remarks, questions, arguments, opening statements, or evidence which might inform the jury of the following facts:

    1.    <u>When and Why Plaintiff Hired and Consulted With an Attorney.</u>

Defendant should be barred from inquiring as to when Plaintiff hired an attorney, when suit was filed or when Plaintiff consulted with his attorneys because this would improperly suggest that it was improper for him to seek legal counsel and guidance and would unfairly prejudice the jury against Plaintiff. Defendant also retained legal counsel promptly. The circumstances surrounding the timing of hiring an attorney is protected by the attorney/client privilege, irrelevant, and collateral to the material issues in this case. The evidence would also be confusing, unduly prejudicial, lacks any probative value, be misleading, and a waste of time. FRE 401, 402, 501; *Carlyle v. Lai, et al*, 783 S.W. 925, 928-30 (Mo. App. W.D. 1990). *See also Yingling v. Hartwig*, 925 S.W.2d 952, 956 (Mo.App.1996); *Edgell v. Leighty*, 825 S.W.2d 325, 326-27 (Mo.App.1992); *Nguyen v. Haworth*, 916 S.W.2d 887, 889 (Mo.App. 1996); *Dietz v. Southern Pacific*, 28 S.W.2d 395, 397 (Mo. 1930). Further, Defendant should be barred from

discussing the date this case was filed or set for trial, since such information is irrelevant and would only tend to prejudice Plaintiff by improperly suggesting a litigious nature. *Edgell*, 825 S.W.2d at 327.

MOTION IS:  GRANTED ___                          DENIED____

2.      <u>Date and venue of case filing</u>.

Defendant should be barred from discussing the date this case was filed or suggesting that venue is improper in this Court because since information is irrelevant and would tend to unfairly prejudice Plaintiff by improperly suggesting a litigious nature. FRE 401, 402, 403; *Carlyle v. Lai*, 783 S.W.2d 925, 928 (Mo.App. 1989); *Chatham v. Gonzalez-Caballero*, 2012 WL 8254975 at *1 (Colo.Dist.Ct. Nov. 6, 2012).  Any such argument of this nature would be an improper attempt to prejudice the jury against Plaintiff.

MOTION IS:  GRANTED____                          DENIED ____

3.      <u>Collateral Source and Railroad Retirement Benefits.</u>

Plaintiff has, in the past, received short term disability benefits from the Railroad Retirement Board (RRB) which have been funded, at least in part, by withholding from his earnings. These benefits must be paid back to RRB from any recovery in this case. Similarly, Plaintiff has received, and is eligible to continue receiving, healthcare benefits from the Veteran's Administration. Had Plaintiff not been disabled from his railroad job and completed 30 years of service, he would have been eligible for a retirement pension, funded in part by payroll withholdings, at or near age 60. Defendant should not be allowed to introduce any such evidence because such is irrelevant, unduly prejudicial, and barred by the collateral source rule. See *Eichel v. New York Central R.R.*, 375 U.S. 253 (1963). The Supreme Court has held that evidence of

collateral source payments such as RRB benefits are not admissible in FELA cases as a general

rule because

> the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of disability pension.  Moreover, it would violate the spirit of the federal statutes if the receipt of disability benefits under the Railroad Retirement Act . . . were considered as evidence of malingering by an employee asserting a claim under the Federal Employers' Liability Act.  We have recently had occasion to be reminded that evidence of collateral benefits is readily subject to misuse by a jury.  *Tipton v. Socony Mobil Oil Co., Inc.*, 375 U.S. 34 (1963).  It has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse.  Similarly, we must recognize that the petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact.

*Eichel*, 375 U.S. at 255.  The Court also noted that RRB disability income is inadmissible to

show a lack of motivation to mitigate damages.  *Id*. at 254.

The Eighth Circuit has recognized that collateral source payments are "inadmissible per

se." *Vanstrike v. ACF Industries, Inc.*, 665 F.2d 188, 200 (8th Cir. 1981). Since *Eichel*, other

federal circuit courts have recognized a stricter exclusionary rule in FELA cases than is present

in non-FELA cases and followed *Eichel* to exclude evidence of RRB payments. See e.g., *Page v.*

*St. Louis Southwestern Ry. Co*., 349 F.2d 820 (5th Cir. 1965); *Green v. Denver and Rio Grande*

*Western Railway Co*., 59 F.3d 1029, 1032-33 (10th Cir. 1995) ("*Eichel* compels the conclusion

that the collateral source rule prohibits admission of RRA disability benefits in a FELA case");

*Reed v. Philadelphia, Bethlehem & New England Railroad Co*., 939 F.2d 128, 134 (3d Cir. 1991)

(trial court improperly allowed the defense to argue that the plaintiff was receiving disability

payments); *Sheehy v. Southern Pacific Transportation Co*., 631 F.2d 649, 652 (9th Cir. 1980)

("the discretion normally applicable to admit all relevant evidence of collateral benefits is greatly

limited in FELA cases"). Likewise, courts in this district have followed *Eichel* in ruling that

"evidence of disability payments from the Railroad Retirement Board under the Railroad Retirement Act [are] inadmissible in FELA actions." *Abernathy v. Union Pacific R.R. Co.*, No. 4:08-cv-04187, Doc. 172 at 11 (E.D. Ark. July 8, 2011) (J. Beth Deere) (attached hereto as Exhibit 1); *see also Cash v. Union Pacific R.R. Co.*, No. 5:08-cv-00060, 2010 WL 330354, at *2 (E.D. Ark. Jan. 20, 2010) (J. Billy Roy Wilson); *Stevenson v. Union Pacific R.R. Co.*, No. 07-cv-00552, 2009 WL 652932 (E.D. Ark. March 12, 2009) (J. Brian S. Miller); *Graham v. Union Pacific R.R. Co.*, No. 06-cv-00187, 2008 WL 4643292, at *1 (E.D. Ark. Oct. 17, 2008) (J. J. Leon Holmes).

The scope of exclusion of collateral source evidence is unquestionably broad and precludes any attempt by a railroad defendant from suggesting that a worker can retire at a certain age when a retirement pension vests. The simple suggestion by a defendant that railroad employees are entitled to full retirement benefits when they attain the age of sixty and have thirty years of service constitutes reversible error, if admitted. *Greisser v. National Railroad Passenger Corp.*, 761 A.2d 606 (Penn.Sup.Ct. 2000) (citing *Green*, supra). The rationale for such broad exclusion has been explained as follows:

> We understand that future retirement benefits are not triggered by the injury; rather, they would have been awarded even if [the employee] had not been injured.  Moreover, future retirement benefits do to improperly suggest that the plaintiff is currently being compensated for his injury from another source.  In these respects, the evidence at issue is not "classic" collateral source evidence.
>
> On the other hand, there remains a significant danger that a jury will misuse and misinterpret evidence of early retirement benefits.  For example, the jury could conclude that [the railroad] was liable for lost wages to age 65 or 70, but then decline to award such damages because of the fortuitous existence of equivalent retirement benefits. Or, the jury could conclude that [the employee] was entitled to benefits only to age 60 and was attempting to seek a double recovery of benefits after age 60.  In short, this evidence distracts the jury from the issues in the case and has a strong likelihood of prejudicing the plaintiff.  Thus, we conclude that evidence of [plaintiff's] future retirement benefits was inadmissible to show that [he] had an economic incentive to retire before age 65, because of the

4

danger that the jury would use this evidence for the improper purpose of mitigating [his] damages or reducing [the railroad's] liability.  In this way, we adhere to the underlying purpose of the collateral source rule in light of the strong policy against the admission of collateral benefits in FELA cases.

In the case at bar, Plaintiff does not claim he is totally disabled from any and all employment. Rather, he claims diminished employment/earning capacity due to his inability to return to work as a locomotive engineer. Indeed, Plaintiff has testified that he has applied for various jobs and has been working full time at a lighter duty job following his recovery from career ending spine surgery. Under the FELA, Plaintiff is entitled to recover economic damages for the difference in earnings over a career as a locomotive engineer compared to his current earning capacity.

Plaintiff would be prejudiced if Defendant is permitted to introduce evidence that Plaintiff received RRB sickness benefits and Veteran's benefits because such could be used improperly by a jury to offset Defendant's liability under the FELA. Moreover, Plaintiff would be prejudiced if his railroad work life capacity is limited by the availability of retirement benefits before his later planned retirement age. Such evidence likely would be misused by the jury to limit his economic compensation. All of this evidence should be excluded because it is irrelevant, unduly prejudicial, misleading and its introduction would constitute a waste of time and "the likelihood of misuse by the jury clearly outweighs the value of this evidence . . . ." *Eichel* 375 U.S. at 254.

MOTION IS:  GRANTED ___                DENIED____

4.     Reduction of Earnings based on Railroad Retirement Withholdings or Business Expenses.

The proper measure of a railroad worker's wage loss is gross wages, net of federal and state income taxes. Defendant should not be allowed to present any evidence of the amounts withheld from his railroad gross earnings to fund his RRB benefits, otherwise known as Tier I and Tier II withholdings, based on or business expenses.

The overwhelming majority of jurisdictions allow a plaintiff to submit a claim for a future earnings loss discounted by federal and state income taxes only. There is no authority in any jurisdiction for reduction of net earnings on account of any business expenses the plaintiff may have incurred or Medicare withholdings withheld. Courts uniformly have excluded evidence of Tier I and Tier II withholdings in  FELA cases such as the one at bar.

Retirement annuities for railroad workers are governed by the Railroad Retirement Act of 1974, 45 U.S.C. § 231 et seq. (RRA). The money for the payment of these annuities is kept in the railroad retirement account maintained in the United States Treasury. 45 U.S.C. § 231n. This account is funded primarily by the Railroad Retirement Tax Act, 26 U.S.C. § 3201 et seq. Railroad employers and employees are required to pay to the Internal Revenue Service Tier I and Tier II taxes, which are calculated as a percentage of employee compensation. See 26 U.S.C. §§3201, 3221. The railroad is responsible for making a contribution regardless of whether an employee is injured on the job and the benefits forwarded under the RRA are of a separate and distinct nature from any recovery under the FELA. *Melton v. Illinois Central Gulf R.Co.*, 763 S.W.2d 321, 326 (Mo.App. 1988).

The United States Supreme Court has recognized railroads are entitled to have a plaintiff's earnings loss reduced by federal and state income taxes. *Norfolk & Western R. Co. v. Liepelt*, 444 U.S.490, 493-94 (1980). The Supreme Court, however, has never held that Tier I

and Tier II payments toward retirement are to be treated the same as federal and state income taxes and, therefore, deducted to establish net income. *Norfolk & Western Ry. v. Chittum*, 468 S.E.2d 877, 882 (Va. 1996) (*cert. denied*, 519 U.S. 1034 (1996); *Riley v. Union Pac. R.R. Co.*, 2010 WL 1946286 (E.D. Okla. May 13, 2010) ("[i]n denying certiorari on the [*Chittum*] case, this Court must presume that the United States Supreme Court did not find that this position did violence to the Liepelt opinion.").

Courts have uniformly held that railroad retirement withholdings are inadmissible to offset a plaintiff's damages. *See e.g.*, *Sloas v. Assoc. of American Railroads*, 616 F.3d 380, 391-92 (4th Cir. 2010); *Riley*, 2010 WL 1946286 at *4; *CSX Transp., Inc. v. Miller*, 46 So.3d 434, 459-60 (Ala. 2010); *Chittum*, 468 S.E.2d 877, 882 (citing *Hetrick v. Reading*, 39 F.Supp. 22 (D.N.J.1941) (railroad may <u>not</u> set off payments made under RRA against damages awarded under FELA); *Folkstad v. Burlington Northern, Inc.*, 813 F.2d 1377, 1379-80 (9th Cir. 1987) (payments to RRA are inadmissible collateral source benefits and admission of payments is improper under 42 U.S. § 55 barring devices attempted by railroads to exempt themselves from full liability for employee injuries); *Newhard v. Philadelphia Bethlehem & New England R. Co.*, No. 97-1527 (3d Cir. 1999) (fundamental difference between income taxes and the RRB tax which effects the amount of pension benefits an employee receives upon retirement warrants exclusion from evidence). See also *Rachel v. Consolidated Rail Corp.*, 819 F. Supp. 428 (D.Ohio. 1995) (evidence of railroad retirement taxes are not admissible as proof of plaintiff's loss of future annuity value). When figuring after tax lost income in an FELA case, the court in *Maylie v. National Railroad Passenger Corp.*, 791 F.Supp. 477, 487 (E.D.Pa. 1992), explicitly found that Social Security taxes were not analogous to retirement taxes and that railroad retirement taxes should not be deducted from plaintiff's projected gross income. Likewise, courts

in this district have held that railroad retirement taxes are inadmissible to offset a plaintiff's damages. *See Abernathy,* No. 4:08-cv-04187, Doc. 172 at 13; *Cash,* 2010 WL 330354, at *3-4.

Accordingly, the Court should exclude any evidence of railroad retirement taxes.  The only types of taxes to be deducted under federal law are state and federal income taxes.

MOTION IS:  GRANTED ____                DENIED____

5.      Any unrelated medical conditions or treatment to Plaintiff.

Under Federal Rules 401,402, and 403, Defendant should be barred from introducing any information concerning medical conditions or treatment that is unrelated to the injuries involved herein.  During his deposition, Defendant's counsel questioned Plaintiff regarding medical treatment unrelated to his injuries from this incident including knee problems, shortness of breath, and pressure in the chest. Any other medical treatment for conditions or body parts not at issue here is not relevant to the injuries and damages Plaintiff suffered as a result of this occurrence. No medical expert has opined that any unrelated health condition is relevant to any issue in the case. Admission of such evidence of any unrelated other medical condition or treatment would only be for the purpose of embarrassing Plaintiff or causing unfair prejudice and surprise, confusion of the issues, or misleading the jury. Therefore, any such evidence should be excluded.

MOTION IS:  GRANTED ____                DENIED____

6.      The Financial or Pecuniary Circumstances of the Plaintiff.

During his deposition, Plaintiff was asked several questions about personal and real property he owns, whether he has taken out any loans, and other questions related to his current financial state. Information regarding the financial or pecuniary circumstances of the plaintiff or

8

his wife, the type and number of cars, home, or other material possessions they own, or loans taken out by the plaintiff or his wife after he sustained the injuries at issues in this suit is inadmissible. BNSF has designated excerpts of this testimony, to which plaintiff has lodged separate objections. Such evidence is irrelevant, immaterial, and collateral to any matter at issue. FRE 401, 402, 403; *Lewis v. Hubert*, 532 S.W.2d 860, 866 (Mo.App. 1975); *M&A Electric Power Cooperative v. True*, et al., 480 S.W.2d 310, 314 (Mo.App. 1972).

MOTION IS:  GRANTED ___              DENIED____

7.     Retirement Age of Other Workers.

Defendant should be barred from attempting to introduce evidence comparing Plaintiff's testimony concerning when he planned to retire to the retirement age of any other railroad employee. Such evidence that other railroad employees have "retired" at a certain age and/or after a certain number of years of service should be excluded, as well as any purported "average retirement age" because this evidence is hearsay, irrelevant, confusing, unduly prejudicial, is misleading, and its introduction would constitute a waste of time. Such evidence does not tend to make more or less likely Plaintiff's planned retirement age, based upon his own circumstances. As Defendant is aware, there is no mandatory retirement age for railroad workers of any craft, and employees may retire for different reasons at any time; yet, such does not make the date of Plaintiff's planned retirement any more or less likely and, thus, is irrelevant. *See Norfolk Southern Ry. Corp. v. Tiller*, 944 A.2d 1272, 1281 (Ma.Ct.Spec. App.2008); *Griesser v. Nat'l R.R. Passenger Corp.*, 761 A.2d 606, 610, 612 (Pa. Super. Ct. 1999); *Brumley v. Fed'l Barge Lines*, 396 N.E.2d 1333, 1340 (111. App. 1979); *Lee v. Consol. Rail Corp*,. 1995 WL 734108 (E.D. Pa.).

Defendant has failed to identify any witness who arguably could lay an adequate foundation for such opinion. Accordingly, even if this evidence could be considered marginally relevant, which it is not, Defendant cannot lay proper foundation for the same here.

MOTION IS:  GRANTED ___               DENIED____

8.     The Plaintiff's Failure to Consider Alternative Positions with the Defendant that would require relocation of his family.

During depositions, Defendant has suggested that Plaintiff is capable of returning to work with the Defendant in some capacity. During Plaintiff's deposition, counsel for Defendant asked if Plaintiff would be willing to consider alternative positions with the railroad. This evidence should be excluded to the extent that any of these positions, if offered and accepted by the plaintiff, would have required him to relocate from his residence in Marshfield, Missouri. Under the FELA, an injured employee's duty to mitigate his damages does not require him to move from his area of residence and relocate.  *Coleman v. City of Omaha*, 714 F.2d 804 (8th Cir. 1983) ("Both jobs [suggested by the defendant] would have required that [the plaintiff] leave Omaha, his home for most of his life. [Plaintiff] cannot be required to move from his home 'in order to reduce damages caused by the [defendant's] unlawful acts.'"); *Wagner v Union Pacific Railroad Co.*, 642 N.W.2d 821 (Neb. 2002); *Harris v Masters*, 2006 WL 2536456 (Wash.App. 2006); Cf. *Edwards v. Atchison, Topeka and Santa Fe Railway Co.*, 684 N.E.2d 919 (Ill.App. 1997) (citing Restatement (Second) of Torts § 918, Comment j, at 506 (1979)).

MOTION IS:  GRANTED ___               DENIED____

9.      Letters and Other Evidence Regarding Defendant's Vocational Rehabilitation "program".

Defendant should be barred from introducing any evidence that it "offered" Plaintiff vocational or job placement services or sent him letters about same, during the course of litigation, because it cannot lay a proper foundation for the admissibility of any such letter, the letters constitute *ex parte* communications to Plaintiff, and the letters are self-serving hearsay. Moreover, these letters are akin to partial settlement offers and are thus barred by Federal Rule of Evidence 408.

**A.  Lack of Foundation**

Federal Rule of Evidence 901 requires that the proponent of any item into evidence must produce sufficient evidence to support a finding that the item is what the proponent claims it to be. Defendant cannot lay a proper foundation for any vocational rehabilitation letters or offers as there is no evidence that the letters were mailed to or received by Plaintiff. For example, during his deposition, Plaintiff testified that at most, he may have received one letter "something about vocation something," but could not recall the contents. (Aug. 11, 2009 Deposition of Kevin Cowden at p. 120). Likewise, Defendant has failed to designate any witness who has first-hand knowledge of the alleged letters, content, and purported delivery. Accordingly, any such letters should be excluded from evidence.

**B.  Improper *Ex Parte* Communications and Self-Serving Hearsay**

Missouri Rule of Professional Conduct 4.4.2 prohibits communications with a party known to be represented by counsel in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order. The vocational rehabilitation letters BNSF allegedly sent to Plaintiff are inadmissible *ex parte* communications issued as part of Defendant's legal claims handling process. After receiving notice that Plaintiff was represented

by legal counsel, BNSF embarked on what can only be called an illegitimate letter-writing campaign designed to manufacture false evidence in support of its claim that Plaintiff failed to mitigate his damages.

The self-serving nature of BNSF's vocational department is evidenced in this case by notations in Defendant's medical file showing that BSNF ceased offering vocational rehabilitation services after summary judgment had been entered and was pending appeal, and purportedly resumed only after summary judgment had been reversed. (Exhibit P4, Bates No. 001685-001686, attached hereto as Exhibit 2. This BNSF business record claims that BNSF regularly sent vocational rehabilitation letters to Plaintiff every two months from June, 2009 through June, 2010.   These efforts stopped coinciding with BNSF's summary judgment motion. *Id.* On November 1, 2012, after the Eighth Circuit reversed the summary judgment decision, BNSF notes "Advised MSJ was overturned on appeal. The circumstances warrant a reminder to the [employee] of the services available. Sent [employee] reminder of VOC services…" *Id*. Such admissions clearly show that Defendant's conducted is claims directed and litigation motivated.

Defendant has admitted that the issuance of these letters is a process controlled by its claims department, and it uses such letters against injured employees in FELA lawsuits to artificially reduce the value of plaintiffs' claims. Notably, several courts have granted similar motions in limine and barred this same type of evidence in other FELA cases involving similar railroad mitigation defense schemes. *See e.g., Hartsfield v. Union Pacific Railroad Company*, Cause No. 08 SL-CC05194, Circuit Court of St. Louis County; *Galloway v. Union Pacific*, Cause No. 042-01789, Circuit Court for the City of St. Louis; *Smith v. Hamm & Phillips Service Co.*, *et al.*, District Court of Oklahoma, 6th Judicial District;  *Cash v. Union Pacific R.R. Co.*, No.

08-60, United States District Court for E.D. Ark; *Guffey v. Union Pacific R.R. Co.*, No. 32-10428, Circuit Court for the City of St. Louis.[1]

Internal BNSF documents show that BNSF's vocational rehabilitation program is a litigation strategy, and not truly intended to place injured employees into new positions. To implement their purported program, BNSF designed a graphic flowchart outlining the flow of an injured employee's case through the vocational rehabilitation program. (Ex. P-111). In reviewing the flow chart, Claims Representative Lavoy Reed acknowledged  the claims-driven, rather than medical, process. *Id*. ("The diagram makes it appear this process is a claim controlled process, cutting out medical altogether, but if we are going to become responsible for the mailing of the letters, I suppose there isn't any way to avoid the way it appears.").

 As part of its "vocational program", BNSF issues job postings to injured employees for the "wrong craft", do not meet the employee's medical restrictions, and require education or background experience the employee does not have. *See* Ex. P-205. BNSF acknowledges that these types of postings would not be "easy ones to explain in trial other than by saying 'oops', or that they don't have to respond if not applicable." *Id*. Various communications between BNSF Claims and Vocational Rehabilitation Personnel evidence the strategy purposes of the program. For example, BNSF Claims Director Larry Mayronne writes to BNSF Claims Representative Robert Hemming:

> You felt that [plaintiff's attorney] had very successfully managed [the plaintiff's] response to the medical dept.'s mailings of all job postings, which apparently the Voc. Rehab manager … was totally unaware, thereby creating the situation allowing [the plaintiff] to testify that he had applied for numerous railroad jobs but had never heard anything back from the railroad. We did in fact 'paper' our file with proof that [the plaintiff] had been offered numerous opportunities to apply for various jobs that could have

---

[1] The orders are attached hereto as Exhibits 3 through 8.

accommodated his permanent physical restrictions, but [the plaintiff]
would have been able to prove that he had in fact applied for positions
but never received a callback from anybody with the railroad… In my
mind, this case points up a serious shortfall in the company's current
Voc Rehab process. With numerous employees across the system
receiving job postings on a regular basis directly from the medical
dept., there apparently is no system in place to instruct the
employee that if interested in applying for any of the jobs, that the
employee must contact a specific Voc Rehab Mgr. or other supervisor
rather than simply making an application directly to the office
shown on the specific job posting bulletin.

(Ex. P-106). In response to Mayronne's letter, Hemming writes,

"[The plaintiff's attorney] was well educated on how to build the
case against us and make us look silly in front of a jury…the
entire rehab program- in my not-so-humble opinion- is not
working very well. ***The program can either make or break us
and unfortunately in this case it broke us…***

*Id*. (emphasis added). Mayronne then forwards the conversation to Amanda Gambrell, Director

of Field Clinical Medical & Environmental Health, stating, "***we feel that the settlement could***

***have been even lower*** than it was had we responded directly to [the plaintiff's] numerous

applications and made a written job offer."  (Ex. P-107) (emphasis added).

After discussing the "problem" for more than six months, Gambrell writes,

Here is the problem. Claims told me that pay outs for FELA are up
20M this year and that they believe… that this is due to not being able
to directly offer positions to employees in litigated cases. If you
figure that a "settled out of service" case costs between $350,000
and $500,000 per case and an actual job offer under a supervisors
signature saves an estimated $250,000 per case it would not take many
cases to account for 20M. We settled out of service 370 cases for 2001
… On the other hand we have a focused campaign to develop our
leadership and promote the best. So the question is "Does being injured
mean you do not have leadership qualities?" I would like to think not,
however, ***I met with all the field H.R. folks last week and asked them
if they have <u>ever</u> interviewed an injured employee that they felt
would be an asset to this company as a first line supervisor? I got a
<u>resounding NO.</u>***…Can we really evaluate claims data to present a case
that the buy out cost increases are definitely related to a change
in our processes…i.e., no job offers, regardless of whether or not

they are qualified?

(Ex. P-111) (emphasis added).

The exchanges between these BNSF claims and vocational rehabilitation personnel evidence the intended nature of BNSF's  vocational rehabilitation program—not as a service to injured employees to assist them in returning to work, but as a litigation strategy to reduce their potential recoveries.

Additionally, BNSF should be barred from introducing evidence of its purported vocational rehabilitation "services" or letters, because there is no evidence demonstrating that Plaintiff failed to exercise reasonable care and diligence to avoid loss. *Jones v. Consol. Rail Corp.*, 800 F. 2d 590, 592 (6th Cir. 1986) (holding it "is error, however, to instruct the jury on an issue when there has been insufficient evidence presented to support a jury finding on that issue."); *Morran v. Pennsylvania R. Co.*, 321 F.2d 402 (3rd Cir. 1963) (holding that it constitutes prejudicial error to permit the jury to speculate on a defense when direct evidence supporting that defense is lacking; *Ner Tamid v. Krivoruchko*, 638 F. Supp. 2d 913, 922 (N.D. Ill. 2009) (holding that a claim of failure to mitigate damages "is not a basis for a hypercritical examination of a plaintiff's conduct.").

Defendant has submitted a proposed jury instruction, accusing Plaintiff of failing to "minimize" his damages. Defendant seeks to reduce the amount of Plaintiff's damages by any amount he could have reasonably avoided had he taken steps to minimize his damages. There is a complete absence of evidence that Plaintiff would have been advantaged had he received vocational rehabilitation assistance. Defendant has not identified any vocational rehabilitation experts or other witnesses to offer the opinion that Plaintiff would have obtained employment that satisfied his physical restrictions, within his geographical area, that he was qualified to

perform. To allow defense counsel to refer to such alleged material would be highly prejudicial to Plaintiff and confuse the jury as to the true issues in this case.

MOTION IS:  GRANTED ___          DENIED____

10.     Claims that Plaintiff "sued the men and women of "BNSF Railway Company".

Such a statement, as defense counsel has attempted to make in other cases, is improper, highly prejudicial, misleading and irrelevant, especially since this civil action has been brought against the corporate entity of "BNSF Railway Company", not the individual employees of Defendant.

MOTION IS:  GRANTED ___          DENIED____

11.     Evidence that Defendant allegedly has received any safety awards.

Defendant should be barred from presenting any evidence that it is a "safe" railroad or has received safety awards. Accordingly, this self-serving and prejudicial evidence should be excluded.  Moreover, such assertions amount to improper character evidence which would open the door to evidence of Defendant's multiple legal and administrative sanctions for unsafe work conditions, which Defendant seeks to exclude. FRE 405.

MOTION IS:  GRANTED ___          DENIED____

12.     Suggestions of secondary gain motivation or that patients involved in litigation have complaints of injury for a longer period of time than patients who are not involved in litigation or do not return to work.

Defendant has no competent evidence to suggest that Plaintiff falls within any of these unfair stereotypes and the prejudicial subject is irrelevant. To the extent the Court sustains Plaintiff's objections on this issue, Defendant should also be barred from attempting to present this argument through any other witness or during any arguments and voir dire by counsel. To

allow the suggestion that other individuals may be motivated by secondary gain or have longer recovery periods when involved in litigation is irrelevant to the issues in this case and would encourage the jury to speculate and should be excluded.  *Rihn v. Jackson*, 2008 WL 748327 at *4 (E.D. Mo. March 18, 2008) (J. E. Richard Webber); *Wall v. Bascombe*, 2011 WL 29745 at *2 (W.D. Mo. Jan 4, 2011); *Yingling v. Hartwig*, 925 S.W.2d 952, 956 (Mo.App. 1996).

MOTION IS:  GRANTED ___        DENIED ___


13.    Evidence that Plaintiff's medical bills have been paid by Defendant or Plaintiff's medical insurance or the potential availability of future health insurance or coverage under the Affordable Care Act.

Plaintiff is not making a claim for any medical bills that have already been paid by Defendant or his health insurance. The fact of any such payment should be excluded because this evidence is irrelevant, confusing, unduly prejudicial, is misleading and its introduction would constitute a waste of time. Therefore, the existence of health insurance is irrelevant, except to the extent Plaintiff has suffered the loss of such, which is a proper element of his compensation claim. Defendant likely would seek to preclude Plaintiff from introducing evidence of paid medical bills, particularly to show such as an admission of fault.

Under FELA, the defendant railroad is not obligated to pay medical expenses unless it negligently caused injury. Thus, payment of bills could be construed as an admission of fault. However, for the same reasons that may be inadmissible, Defendant should not be able to garner sympathy by claiming to have paid medical bills when it was not obligated to do so. Simply stated, any such evidence is irrelevant since Plaintiff is not making a claim for medical bills that have already been paid. Plaintiff's medical bills claim is limited to outstanding bills and future medical bills. Accordingly, evidence that Defendant paid some medical bills in the past, if true, should nonetheless be excluded as irrelevant.

The potential existence of any replacement health insurance obtained by Plaintiff, including potential coverage under the Affordable Care Act, should also be excluded as irrelevant and violative of the collateral source rule, for the reasons set for *supra*.

MOTION IS:  GRANTED ___                DENIED____

14.     <u>Opinion testimony that BNSF purportedly complied with statutes or regulations.</u>

A number of BNSF's witnesses, including track inspector Randy McElroy, corporate representative Joseph Thornburg, and Defendant's designated opinion witness, Erik Frohburg have proffered opinions claiming that BNSF's actions complied with various FRSA regulations or standards. As the Court held in its Order denying BNSF's Second Motion to Bar the Expert Testimony of Alan Blackwell, "the law is clear that expert witnesses may not opine as to whether a party violated a given regulation." Doc. 152 at 11-12; (*citing S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) ("The evidence took the form, essentially, of a battle of experts opining as to whether Southern Pine had violated FAA regulations. As we have had occasion to remark before, however, expert testimony on legal matters is not admissible."); *In re Genetically Modified Rice Litig.*, No. 4:06MD1811 CDP, 2010 WL 5070718, at *5 (E.D. Mo. Dec. 6, 2010) ("Experts may not draw legal conclusions or interpret laws or regulations. No witness may testify that . . . Bayer violated or complied with a standard of care prescribed by the regulations."); *Johnson v. Avco Corp.*, 207 F. Supp. 2d 1093, 1109-10 (E.D. Mo. 2010) (Expert "may discuss the evidence indicating that Swan had not sufficiently practiced night landings and he may discuss the requirements outlined in the regulations, but he may not opine about whether Swan in fact violated the regulations.")).

The Court barred Plaintiff's expert from expressing opinions about whether Defendant's conduct violated applicable regulations. Consistency demands that Defendant's witnesses be

similarly barred. Therefore, Defendant's witnesses cannot testify or draw conclusions as to whether BNSF complied with FRSA regulations or standards.

MOTION IS:  GRANTED ___          DENIED____


15.    Ownership of the Locomotive.

The locomotive involved in the incident was not owned by BNSF. Instead, it was a Norfolk Southern locomotive being used by Defendant pursuant to agreement between the railroads. No claim has been asserted in this case against Norfolk Southern by Plaintiff or Defendant. Moreover, under the FELA, Defendant has a non-delegable duty to provide Plaintiff with reasonably safe equipment. *Hose v. Chicago Northwestern Trasnp. Co.*, 70 F.3d 968, 978 (8th Cir. 1995); *Birchem v. Burlington N. R. Co.*, 812 F.2d 1047, 1049 (8th Cir. 1987). Accordingly, whether Defendant owns the locomotive is irrelevant and would serve only to confuse the jury and unduly prejudice the plaintiff. Any such evidence should be excluded, including reference to the locomotive as "Norfolk Southern 7503" or the "Norfolk Southern Locomotive". FRE 401, 402, 403.

MOTION IS:  GRANTED ___          DENIED____


16.    Opinions not identified in Defendant's expert reports.

Defendant designated the following experts to express opinions in this case: Erik Froburg (track maintenance issues), Peter Mirkin (medical issues), and James England (vocational issues). Each of these experts issued a written report pursuant to the Federal Rules of Civil Procedure. The Court should bar any opinions these experts attempt to offer at trial which have not been previously designated in their reports, because allowing new opinions would violate FRCP 26 and 37, and FRE 702 and unfairly prejudice Plaintiff, who relied on those reports to

prepare for trial testimony and new opinions would unfairly surprise counsel. *Dairy Farmers of Am. V. Travelers Ins. Co.*, 391 F.3d 936, 943 (8th Cir. 2004).

MOTION IS:  GRANTED ___                 DENIED____

17.     <u>Slow Order Reason</u>.

Joseph Thornburg testified that he believed that the slow order reasons as indicated in the slow order log for the dates May 23-28, 2007 had been entered incorrectly, and that the corresponding slow order had been placed for some reason other than tie conditions. However, Thornburg admitted that he had no document that could substantiate his testimony. Because Thornburg lacks personal knowledge and opinion is based on speculation and is not supported by any fact or evidence in the case, it should be excluded. FRE 602, 701.

MOTION IS:  GRANTED ___                 DENIED____

18.     <u>Assumption of the Risk</u>.

Evidence of or argument that Plaintiff allegedly was "empowered" to decline working in what he believed to be unsafe working conditions should be barred under because such amounts to an impermissible attempt to assert the defense of assumption of risk, which is specifically prohibited by the FELA.  45 U.S.C. § 54(a) (plaintiff "shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from" the railroad's negligence); *Birchem v. Burlington Northern R. Co.*  812 F.2d 1047, 1049 (8th Cir. 1987) (plaintiff's knowing use of defective equipment despite his knowledge of a BNSF rule prohibiting use of unsafe equipment was not contributory negligence and evidence of the same was barred under the FELA as an assumption of the risk defense).

MOTION IS:  GRANTED ___                         DENIED ___


October 21, 2013                    SCHLICHTER, BOGARD & DENTON


                                    /s/ Nelson G. Wolff_____
                                    Roger C. Denton #30292
                                    Nelson G. Wolff # 40796
                                    Elizabeth M. Wilkins # 61284
                                    100 South Fourth Street, Suite 900
                                    St. Louis, Missouri 63102
                                    314-621-6115
                                    314-621-7151 (fax)
                                    rdenton@uselaws.com
                                    nwolff@uselaws.com
                                    bwilkins@uselaws.com

                                    Attorneys for Plaintiff


## CERTIFICATE OF SERVICE

On October 21, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which shall send notification of such filing to the following:

Thomas E. Jones
Harlan A. Harla
THOMPSON COBURN, LLP
525 West Main Street
P.O. Box 750
Belleville, IL 62222-0750
tjones@thompsoncoburn.com
hharla@thompsoncoburn.com


                                    /s/ Nelson G. Wolff_____