UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KEVIN COWDEN,  )
 )
     Plaintiff, )
 )
     vs. )      Case No. 4:08CV01534 ERW
 )
BNSF RAILWAY COMPANY, )
 )
     Defendant. )

## MEMORANDUM AND ORDER

     This matter comes before the Court on Defendant BNSF Railway Company's Motion in Limine [ECF No. 180], Defendant BNSF's Motion in Limine to Extend the Rulings as to Alan Blackwell to All Witnesses [ECF No. 181], Defendant's Motion in Limine to Exclude the Supervisor's Report of BNSF Employee Injury/Illness [ECF No. 182], Defendant's Motion in Limine Regarding Kenny Scammell and Greg Willard and Their Declarations [ECF No. 183], Defendant BNSF's Motion in Limine to Exclude the Testimony of Joseph Thornburg Relating to the January, 2003 Safety Meeting and Associated Minutes [ECF No. 185], Defendant's Motion in Limine to Bar Expert Testimony of Rebecca M. Summary [ECF No. 186], Defendant's Motion in Limine to Bar the Causation Testimony of Dr. Schoedinger [ECF No. 188], and Plaintiff Kevin Cowden's Motions in Limine [ECF No. 198].  The Court held a Pretrial Conference for this case on Thursday, October 24, 2013, and the parties addressed these pending motions.

## I.    DEFENDANT'S MOTION IN LIMINE [ECF NO. 180]

     In this Motion, Defendant asks the Court for evidentiary rulings on the following 32 matters.

### 1.    *Reference to the Instant Motion*

Defendant asks the Court to bar any reference to the instant Motion in Limine.  Plaintiff does not object.  Defendant's Motion is passed by the Court at the request of the parties.

### 2.    *Evidence of "Negligence"*

Defendant seeks to bar any evidence of "negligence," because the Court has ruled that "compliance with FRSA regulations precludes the possibility of negligence in this case."  Plaintiff objects to this Motion as overbroad.  Because Defendant has a regulatory standard of care in this case,[1] the Court grants Defendant's Motion to the extent it seeks to exclude evidence that Defendant failed to act "reasonably."  Plaintiff may still offer evidence establishing Defendant failed to comply with applicable Federal Railroad Safety Act (FRSA) regulations.

### 3.    *Subsequent Remedial Measures*

Defendant contends Plaintiff should be prohibited from offering evidence that it has taken subsequent remedial measures to prevent the type of injuries allegedly sustained by Plaintiff. Plaintiff responds Federal Rule of Evidence (FRE) 407, which prohibits the use of subsequent remedial measures for certain purposes, does not apply here.  In support of this position, Plaintiff sets forth two arguments.

First, Plaintiff contends, because FRSA regulations supply the standard of care in this case, this suit is a strict liability case.  Plaintiff maintains FRE 407 does not apply in strict liability cases. Assuming for the sake of argument Plaintiff has alleged strict liability claims, the case law remains "unclear" whether FRE 407 applies.  *Lopez v. Tyson Foods, Inc.* 690 F.3d 869, 882 (8th Cir. 2012). Recently, the Eighth Circuit found no plain error where a district court excluded subsequent remedial

---

[1]*See* the Court's Memorandum and Order [ECF No. 154] dated September 30, 2013, regarding Defendant's Motion for Summary Judgment.

measures in a Fair Labor Standards Act case for overtime, a strict liability claim.  *Id.* at 881-82.  The Eighth Circuit noted "the dangers inherent in an approach that varies the admissibility of subsequent remedial measures depending on whether an action lies in strict liability or negligence."  *Id.* at 882-83 (quoting *Porchia v. Design Equip. Co.*, 113 F.3d 887, 880 n.3 (8th Cir. 1997)).  The Court agrees that FRE 407's "policy goal of encouraging remediation," *Buchanna v. Diehl Mach., Inc.*, 98 F.3d 366, 370 (8th Cir. 1996), applies to strict liability claims as well as negligence.  The Court declines to make such a distinction here.

Second, Plaintiff argues an exception to FRE 407 applies where federal law mandates the subsequent remedial measures at issue.  Plaintiff avers that 49 C.F.R. § 213.5(a) mandates Defendant take such remedial measures.  This argument, however, was raised and rejected on appeal, when the Eighth Circuit stated,

> Although we have noted in the past that there is an exception to Rule 407 when remedial action is 'mandated by superior governmental authority,' *O'Dell v. Hercules, Inc.,* 904 F.2d 1194, 1204 (8th Cir.1990), [Plaintiff] has failed to demonstrate that remediation was actually mandated. [Plaintiff] asserts that 49 C.F.R. § 213.5(a) imposes a requirement that railroads remedy any defect, but the plain language of the regulation does not support his assertion. Section 213.5 imposes responsibility for compliance with FRA regulations; however, if a railroad knows its track is not in compliance, repairing track to bring it into compliance is but one of three options a railroad has to avoid penalties.  The district court did not abuse its discretion in excluding this portion of Blackwell's testimony.

*Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 897-98 (8th Cir. 2012).

Therefore, unless Plaintiff offers a "superior governmental authority" establishing Defendant had a single mandated duty to take a specified action, Plaintiff may not introduce evidence of subsequent remedial measures to establish negligence or "strict liability."  Plaintiff may still offer evidence of subsequent remedial measures "for another purpose, such as impeachment[.]" Fed. R. Evid. 407.  No questions should be asked on this subject until the Court is advised of an intention to ask a question and the Court rules.  Accordingly, this Motion is held in abeyance.

### 4.     *Other Accidents or Track Conditions*

Defendant seeks to exclude evidence of other accidents or track conditions, unless Plaintiff establishes such accidents or conditions were substantially similar to those at issue in the instant case. Plaintiff responds he does not seek to offer evidence of other "accidents." However, Plaintiff argues if Defendant denies certain track conditions can cause injuries, he has the right to introduce evidence of track conditions at other locations.

In its Memorandum and Order [ECF No. 153] dated September 30, 2013, the Court explained the substantial similarity requirement applies to "accidents," but not "conditions." However, Plaintiff still must show any evidence of prior conditions is relevant. At this stage, the Court is unwilling to make a definitive ruling. The Court will consider objections pertaining to this issue as the parties present evidence, or before they present evidence when a party requests an advance ruling. This Motion is held in abeyance.

### 5.     *Workers' Compensation*

Defendant maintains the Court should bar evidence that Plaintiff lacks eligibility for Workers' Compensation, and any other evidence suggesting this lawsuit constitutes Plaintiff's sole remedy, because such evidence would be unfairly prejudicial. Plaintiff contends he should be permitted to tell the jury he lacks eligibility for Workers' Compensation to dispel any assumption he will receive or has already received benefits for his alleged injury. Plaintiff notes the parties have agreed to inform the jury during voir dire that the instant case is not a Workers' Compensation case.

The Court will exclude any mention that Plaintiff is not eligible for Workers' Compensation. Plaintiff's ineligibility is irrelevant to the issues in an FELA case, and allowing the jury to consider such evidence would unfairly prejudice Defendant. *See Stillman v. Norfolk & W. Ry. Co.*, 811 F.2d 834, 838 (4th Cir. 1987). Moreover, Defendant is not permitted to offer evidence that Plaintiff has

received benefits from a collateral source; the Court "perceive[s] no reason for a different rule when [Plaintiff] seeks to inform the jury of the absence of benefits from a collateral source." *Id.* Therefore, Defendant's Motion is granted.  In addition, to avoid confusion of the issues and prejudice to either party, the Court will also exclude any other reference to Workers' Compensation, including the proposed stipulation that the instant case is not a Workers' Compensation case.

### 6. *Purpose and Policy of the FELA*

Defendant asks the Court to bar any comments concerning the purposes of the FELA, because such comments are irrelevant and improperly place legal issues before the jury.  Plaintiff makes no objection.  The Court passes this Motion at the request of the parties.

### 7. *Safety of the Railroad Industry*

Defendant argues evidence suggesting the railroad industry is unsafe lacks relevance and would merely mislead the jury.  Plaintiff makes no objection.  The Court passes this Motion at the request of the parties.

### 8. *Suggesting the Jurors "Place Themselves in the Position of Plaintiff"*

Defendant seeks to exclude "any argument, comment or suggestion that the jurors place themselves in the position of Plaintiff in assessing damages on the grounds that such an argument is misleading and inflammatory."  Plaintiff does not object, and the Court accordingly passes this Motion at the request of the parties.

### 9. *"Safety Advocates" and "Sending a Message" through the Verdict*

Defendant argues Plaintiff should be precluded from suggesting the jury "act as safety advocates" or "send a message to the corporate defendant" through their verdict, because punitive damages are not cognizable under the FELA.  Plaintiff does not object.  The Court passes this Motion at the request of the parties.

### 10.    Defendant's "Large" Corporate Status

Defendant contends the Court should bar evidence concerning Defendant's "large" corporate status, particularly compared to Plaintiff's status as an individual, because such evidence would be unfairly prejudicial.  Plaintiff makes no objection.  The Court passes this Motion at the request of the parties.

### 11.    Defendant's Size, Wealth Corporate Nature, Residency, and Ability to Satisfy a Judgment

Defendant moves the Court to bar any reference to Defendant's size, wealth, corporate nature, out-of-state residency, or ability to satisfy a judgment, because such reference would be irrelevant and prejudicial.  Plaintiff does not object.  Defendant's Motion is passed at the request of the parties.

### 12.    Plaintiff's Paid Medical Bills

Defendant asks the Court to bar evidence of medical bills previously paid by an insurance policy maintained by Defendant.  Plaintiff concedes he does not seek to introduce evidence of medical bills that have already been satisfied.  At the hearing, the parties stipulated that Plaintiff will provide an exhibit, summarizing his unpaid medical bills and omitting any references to medical bills previously satisfied by the insurance policy.  Accordingly, the Court passes this Motion at the request of the parties.

### 13.    Lay Testimony Regarding Job Safety and Plaintiff's Medical Condition, Work Capacity, and Alleged Resulting Disability

Defendant argues the Court should preclude Plaintiff from offering lay testimony concerning the safety of job tasks at the railroad and Plaintiff's medical condition, work capacity, or alleged resulting disability.  Plaintiff objects to this Motion as overly broad, and argues Plaintiff and his wife should be able to testify to their personal knowledge of Plaintiff's alleged suffering and disability.

6

Similarly, Plaintiff asserts railroad employees should be permitted to testify as to their personal experiences of employment conditions and safety rules, because such evidence is relevant to whether Plaintiff could have safely mitigated his damages by working as a railroad employee.

The Court will not issue a blanket order against lay testimony on these subject matters.  Lay witnesses may not offer medical opinions or speculate as to whether Plaintiff could function safely as Defendant's employee after his alleged injuries.  However, they may offer factual observations that aid the jury in making such determinations.  For example, lay railroad employees may not state, "Plaintiff could not safely work at the railroad after the accident"; however, they may testify that working as a railroad employee requires heavy lifting.[2]  Accordingly, Defendant's Motion is granted to the extent is seeks to exclude improper legal conclusions, but denied to the extent it would prevent lay witnesses from testifying as to their personal, factual observations.

### 14.    Expert Opinions Not Previously Discussed in Depositions or Reports

Defendant seeks to exclude expert opinions other than those previously discussed in depositions or reports.  Defendant's Motion is granted.

### 15.    Witnesses Not Previously Disclosed in a Timely Manner

Defendant seeks to bar any witnesses other than those previously disclosed in a timely manner.  Plaintiff does not object.  Defendant's Motion is passed at the request of the parties.

### 16.    Statements or Documents Not Properly Produced During Discovery

Defendant asks the Court to prevent Plaintiff from using any statements or documents not properly produced during discovery.  Plaintiff objects to this Motion as unduly vague, and argues it encompasses documents that could properly be used for impeachment purposes.

---

[2]By providing this example, the Court neither suggests nor assumes that this constitutes the only example of proper lay testimony on this subject matter.

Because the admissibility of this evidence will turn on the particular facts at the time a party seeks to introduce it, the Court is unwilling at this stage to make a definitive ruling.  The Court will consider objections pertaining to this issue as the parties present evidence or before they present evidence when a party requests an advance ruling.  Accordingly, Defendant's Motion is held in abeyance.

### 17.     *Plaintiff's Marital Status and Children*

Defendant seeks to exclude references to Plaintiff's marital status and children.  Plaintiff argues his family members should be permitted to testify as to his pain, suffering and disability. Additionally, Plaintiff contends his wife and children are relevant to any damages claims he makes for household services.

The Court is unwilling at this stage to make a definitive ruling.  The Court will consider objections pertaining to this issue as the parties present evidence or before they present evidence when a party requests an advance ruling.  Accordingly, this Motion is held in abeyance.

### 18.     *Loss of Consortium and Services by Plaintiff's Dependents*

Defendant argues the Court should exclude references to any claims for loss of consortium or services by Plaintiff's dependents, because such claims are not cognizable under the FELA. Plaintiff concedes he will not make any claim for loss of consortium.  However, Plaintiff seeks to introduce evidence establishing the necessity of care from his family members after his alleged accident.

The Court is unwilling at this stage to make a definitive ruling.  The Court will consider objections pertaining to this issue as the parties present evidence or before they present evidence when a party requests an advance ruling.  Evidence properly admitted within the scope of this

8

Motion will concern the care Plaintiff received from members of his household, not claims for loss of consortium. Accordingly, this Motion is held in abeyance.

### 19. *Plaintiff's Reputation for Safety at Work and Character in General*

Defendant asks the Court to bar evidence of Plaintiff's reputation for safety at work or character in general. Plaintiff responds his reputation for safety is relevant to establish a reasonable expectation of his continued employment with Defendant.

The Court finds Plaintiff's reputations for safety and character in general lack relevance, and the Court therefore grants Defendant's Motion. Plaintiff may still offer evidence showing he would have been retained by Defendant. Plaintiff may offer evidence that he acted competently during the course of his employment with Defendant, and he may inquire of Defendant's employees whether they have reason to believe Plaintiff would not have remained employed, absent his alleged injuries. However, the Court concludes any remote probative value from character evidence – of safety or otherwise – would be clearly outweighed by confusion of the issues and unfair prejudice to Defendant.

### 20. *Suggestions that Plaintiff "Gave the Best Years of His Life" to Defendant*

Defendant asks the Court to exclude any statements suggesting Plaintiff "has given the best years of his life" to Defendant. Plaintiff states he does not seek to introduce evidence regarding this matter, but wishes to make such a suggestion in closing argument.

The Court agrees that this subject matter is proper only for closing argument. Therefore, the Motion is granted to the extent it seeks to exclude evidence covering this subject matter, but denied to the extent it seeks to prevent Plaintiff from making such statements during closing arguments.

### 21.   *Safer Methods of Work*

Defendant argues Plaintiff should not be permitted to offer evidence that Defendant could have provided safer methods of work, because Defendant can meet its standard of care even if it could have provided safer working conditions.  Plaintiff responds such evidence of feasibility is probative of whether Defendant's conduct was "reasonable."

In this case, Defendant has a regulatory standard of care, providing a predetermined definition of what constitutes "reasonableness."  Thus, evidence establishing the definition of "reasonableness" is irrelevant, and admitting the suggested feasibility evidence would merely serve to unfairly prejudice Defendant.  Moreover, the question before the jury is whether Defendant met its standard of care, not whether Defendant could have employed safer methods.  *Stillman v. Norfolk & W. Ry. Co.*, 811 F.2d 834, 838 (4th Cir. 1987).  Thus, Plaintiff may set forth evidence establishing Defendant failed to comply with applicable regulations, but he may not state whether Defendant could have conducted itself differently, in a way that would make its working environment safer.[3]  Accordingly, the Court will grant this Motion.

### 22.   *Defendant's Duplicative Request*

Defendant's 22nd request is identical to its 19th request.  Therefore, the Court passes this Motion at the request of the parties.

### 23.   *Offers, Settlement, and Compromises within the Scope of FRE 408*

Defendant seeks to bar evidence concerning offers or agreements to settle or compromise, because such evidence would violate FRE 408.  Plaintiff makes no objection.  This Motion is passed at the request of the parties.

--------------------------------------------------

[3]However, if Defendant disputes the feasibility of complying applicable regulations, Plaintiff may set forth evidence establishing Defendant could, in actuality, do so.

### 24.     Compliance with Motions and Discovery Rules

Defendant asks the Court to exclude any suggestion that Defendant has not fully complied with all motions for production and other discovery rules.  Plaintiff does not object.  This Motion is passed at the request of the parties.

### 25.     Statements as to What Medical Personnel Allegedly Told Plaintiff

Defendant states Plaintiff should be precluded from offering any statements as to what medical personnel allegedly told Plaintiff regarding the extent and nature of his examination, his alleged disability, physical impairment, diagnosis, or prognosis.  Defendant contends this evidence constitutes hearsay.  Plaintiff counters such evidence does not constitute hearsay, because he does not offer it for the truth of the matter asserted.  Rather, Plaintiff offers these statements to show Plaintiff's state of mind.  Specifically, Plaintiff contends the statements of healthcare providers are relevant to show his emotional distress, worry, concern, and anxiety.

The admissibility of this evidence will turn on the particular facts as the parties present evidence.  Plaintiff will be permitted to offer the statements at issue to demonstrate he took action in compliance with a physician's directive or recommendation.  However, to the extent Plaintiff offers these statements to demonstrate emotional distress, the Court is unwilling at this stage to make a definitive ruling, and holds this Motion in abeyance.  The Court will consider objections pertaining to this issue as the parties present evidence, or before they present evidence when a party requests an advance ruling, and it will determine whether any prejudicial effect of such evidence substantially outweighs its probative value.

### 26.     *Plaintiff's Financial Condition or Expenditures*

Defendant maintains any statements concerning Plaintiff's financial condition or expenditures are irrelevant and therefore inadmissible, unless they pertain directly to his injuries. Plaintiff does not object, and the Court therefore passes this Motion at the request of the parties.

### 27.     *Failure to Offer Live Testimony*

Defendant moves to exclude statements concerning the failure to offer live testimony, rather than a witness's deposition.  Defendant seeks to ensure the jury gives deposition testimony the same weight as live testimony.  At the Pretrial Conference, Plaintiff stated he had no objection to this Motion, as then clarified by Defendant.  Accordingly, the Court passes this Motion at the request of the parties.

### 28.     *Punitive Damages*

Defendant asserts the Court should preclude Plaintiff from referencing punitive damages, which are not cognizable under the FELA.  Plaintiff does not object, and the Court therefore passes this Motion at the request of the parties.

### 29.     *Quality of Post-Incident Investigation*

Defendant asks the Court to bar references to the quality of the post-incident investigation. Defendant contends, at the time of its initial post-incident investigation, it lacked any notice that Plaintiff allegedly had been injured.  Defendant argues, if it had notice, it would have performed a more thorough investigation.  Plaintiff counters the adequacy of Defendant's inspection is relevant to the cause and circumstances of the alleged accident.

At this stage, the Court is unwilling to make a definitive ruling.  The Court will consider objections pertaining to this issue as the parties present evidence, or before they present evidence when a party requests an advance ruling.  To establish the admissibility of the evidence at issue in

this Motion, Plaintiff must demonstrate the proffered evidence tends to establish the violation of an FRSA regulation or some other element of Plaintiff's case.  Accordingly, this Motion is held in abeyance.

### 30.   *References to Inflation*

Defendant seeks to exclude any reference to the effect of inflation upon an award of damages. Plaintiff responds inflation is a proper and necessary factor to consider when calculating the present value of future economic damages.  As discussed in Part VI, *infra*, references to inflation are admissible in FELA cases.  Defendant's Motion is denied.

### 31.   *Damages Subject to Federal Income Taxation*

Defendant asks the Court to bar any suggestion that an award of damages is subject to federal income taxation.  Plaintiff does not object, and the Court therefore passes this Motion at the request of the parties.

### 32.   *Gross Wage Loss*

Defendant seeks to exclude evidence of Plaintiff's gross wage loss, as Defendant contends net wage loss is the appropriate measure of damages.  Defendant contends Plaintiff's tax-deductible business expenses should be deducted from any award of damages.  For reasons discussed in Part VI, *supra*, Defendant's Motion is denied.

## II.   DEFENDANT'S MOTION IN LIMINE TO EXTEND THE RULINGS AS TO ALAN BLACKWELL TO ALL WITNESSES [ECF NO. 181]

On September 23, 2013, the Court issued a Memorandum and Order [ECF No. 152] regarding the expert testimony of Alan Blackwell.  Defendant now moves to extend the rulings in that Order to all witnesses in this case.  Specifically, Defendant seeks to exclude two matters.  First, Defendant asks the Court to bar evidence of subsequent remedial measures prohibited by FRE 407. Defendant seeks to exclude evidence that it imposed a slow order after the alleged accident and later

made track repairs.  Second, Defendant argues Plaintiff should not be permitted to offer legal conclusions.  Defendant seeks to exclude opinions that Defendant violated certain regulations, and opinions as to what Defendant knew or should have known.

The Court has already addressed the issue of subsequent remedial measures, as explained in Part I.3, *supra*.  As previously noted, the Court will exclude evidence of subsequent remedial measures unless Plaintiff either (1) demonstrates a "superior governmental authority" places a duty on Defendant to take a single, legally-mandated remedial action, or (2) proffers an admissible purpose for the evidence, such as impeachment.  This portion of Defendant's Motion is therefore held in abeyance.

Regarding legal conclusions, however, Defendant's Motion is granted.  Under FRE 701, a lay witness may offer opinions that are:

> (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Lay testimony in the form of legal conclusions is inadmissible, because it does not "help" the jury.  *U.S. v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009).  Similarly, although expert witnesses may "embrace" an ultimate issue in their testimony, they may not state legal standards or draw legal conclusions by applying law to the facts.  Fed. R. Evid. 704; *U.S. v. McIver*, 470 F.3d 550, 561-62 (4th Cir. 2006).  Accordingly, no witness will be permitted to offer legal conclusions at trial.

## III.   DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE SUPERVISOR'S REPORT OF BNSF EMPLOYEE INJURY/ILLNESS [ECF NO. 182]

Defendant seeks to exclude a Supervisor Report of BNSF Employee Injury/Illness, an accident report purporting to describe the incident at issue in this case.  Defendant anticipates Plaintiff will use a portion of this document that lists defective track as the cause of his injuries.  Defendant claims the Court should exclude this document, because John Clarke, the supervisor who

created the Report, lacked personal knowledge of the track conditions, and was merely dictating Plaintiff's allegations.  Plaintiff responds the Report is admissible, because it constitutes a business record, excluded from the hearsay rule pursuant to FRE 803(6), and a party-opponent admission, excluded from the hearsay rule pursuant to FRE 803(d)(2)(B).

First, the Court concludes the business record exception of FRE 803(6) does not apply.  FRE 803(6) excludes from the definition of "hearsay"

> [a] record of an act, event, condition, or diagnosis if:
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

The Advisory Committee Notes to this rule further explain that "[i]f . . . the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail."  In the instant case, Clarke has submitted an affidavit,[4] which avers that he lacked personal knowledge of the information contained in the report, and that he based his Report solely on information supplied by Plaintiff.  It is clear Plaintiff was not acting in the regular course of business by reporting his alleged accident.  Accordingly, the Report does not qualify as a business record, and the Court will not admit it as such.

_____

[4]Plaintiff argues, because the affidavit constitutes hearsay, the Court should not consider it for purposes of this Motion.  However, in determining the admissibility of the Report, the Court is not bound by the evidence rules, except those on privilege. Fed. R. Evid. 104(a).

Second, the Court finds the Report fails to qualify as a party admission under FRE 801(d)(2)(B).  FRE 801(d)(2)(B) dictates a statement is not hearsay if it is offered against an opposing party and "is one the party manifested that it adopted or believed to be true[.]"  To admit the Report under this hearsay exception, the Court must determine, by a preponderance of the evidence, that a reasonable jury could properly find Defendant adopted the Report as an admission. *U.S. v. Barletta*, 652 F.2d 218, 220 (1st Cir. 1981).  While "a party admission containing hearsay is admissible where . . . the admission draws inferences from the underlying hearsay," a statement is generally inadmissible "when it merely repeats hearsay and thus fails to concede its underlying trustworthiness."  *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 239 (2d Cir. 1999).  Here, the Report fails to indicate Defendant acquiesced to Plaintiff's narrative.  It does not make inferences based on the underlying hearsay.  In fact, a portion of the Report phrases clarifies it simply dictates Plaintiff's allegations: "Employee reported back and neck pain/soreness to supervisor.  Alleges the cause was rough track between MP 151.4 and 151.8 on Ft. Scott Sub." [ECF No.182-2 at 4].  Accordingly, Plaintiff has not established by a preponderance of the evidence that a reasonable jury could conclude Defendant adopted the hearsay in the Report.[5]  Defendant's Motion is therefore granted, and the Supervisor Report of BNSF Employee Injury/Illness will be excluded at trial.

---

[5]In support of his position that the Report constitutes a FRE 801(d)(2)(B) admission, Plaintiff offers two FRA forms.  Plaintiff contends these documents show Defendant admits that track conditions caused his injuries.  Even accepting this as true, it does not necessarily follow that Clarke adopted Plaintiff's narrative at the time of the Supervisor Report of BNSF Employee Injury/Illness.

Additionally, the parties disputed the admissibility of these FRA forms at the Pretrial Conference.  However, Defendant's Motion seeks to exclude only the Supervisor Report of BNSF Employee Injury/Illness.  Therefore, the Court declines to rule on the admissibility of the FRA forms at this time.

IV.   **DEFENDANT'S MOTION IN LIMINE REGARDING KENNY SCAMMELL AND GREG WILLARD AND THEIR DECLARATIONS [ECF NO. 183]**

Defendant seeks to exclude certain opinions of two witnesses: Greg Willard, a BNSF locomotive engineer, and Kenny Scammell, a conductor.  Defendant sets forth several grounds for the exclusion of these witnesses' statements.  The Court will address each challenged statement individually.

### 1.   *Willard's Statement Regarding the Severity of the Impact*

First, Defendant seeks to exclude Willard's statement that "[t]he fact that [Plaintiff] was injured is not surprising, considering how severely our locomotive bottomed out when we hit the rough track." [ECF No. 184 at 2].  Defendant contends this sentence constitutes an expert opinion beyond the scope of Willard's lay testimony.

The Court disagrees.  This statement simply is not an expert opinion.  Rather, it merely constitutes the observations of a lay witness -- who was present at the scene of the incident -- regarding the severity of the impact.  The Court denies Defendant's Motion to the extent it seeks to exclude this statement.

### 2.   *Willard's Statement Regarding the Cause of the Alleged Accident*

Defendant seeks to exclude Willard's statement that "[t]he incident we experienced on January 14, 2008 was the result of a washout in this area of track." [ECF No. 184 at 2].  Defendant argues this is improper expert testimony.

Because this statement concerns the cause of the alleged accident, the Court finds it falls in the realm of expert testimony.[6]  Plaintiff does not dispute that he failed to disclose Willard as an

---

[6]Of course, Willard may offer lay testimony of his observations of a washout in the area.

expert witness, and this statement will therefore be excluded at trial.  Defendant's Motion is granted

to the extent it seeks to exclude this statement.

### 3. *Willard' Statements Regarding Track Conditions*

Defendant seeks to exclude the following statements made by Willard:

> Prior to January 14, 2008, [Defendant] had not properly maintained the section of track between mileposts 151.4 to 151.8, based on my knowledge of maintenance practices on areas of track with similar conditions. This section of track is near a river and was constantly wet and muddy. For a number of months prior to this incident, I observed that the track was deteriorating and needed ballast, ties, alinement, and surfacing, and was not draining properly. For at least a week prior to January 14, 2008, there had been a washout and mud in the area between mileposts 151.4 to 151.8 as a result of heavy rains. This made the ongoing track problems worse. When we encountered the track on January 14, 2008, there was mud in the ballast and around the track.

[ECF No. 184 at 3-4].  Defendant seeks to exclude these sentences as improper expert testimony.

The Court will address each statement individually.

### A. *"Prior to January 14, 2008, [Defendant] Had Not Properly Maintained the Section of Track Between Mileposts 151.4 to 151.8, Based on My Knowledge of Maintenance Practices on Areas of Track With Similar Conditions."*

The Court need not determine whether this statement constitutes improper expert testimony,

because it is an inadmissible legal conclusion.  That is, stating Defendant failed to "properly"

maintain the track is tantamount to stating Defendant failed to meet its standard of care.  As

explained in Part II, *supra*, no witness may offer legal conclusions.  Defendant's Motion is granted

to the extent it seeks to exclude this statement.

### B. *"This Section of Track Is Near a River and Was Constantly Wet and Muddy."*

This statement is not expert testimony.  It merely constitutes a lay witness's personal

observations.  Defendant's Motion is denied to the extent it seeks to exclude this statement.

**C.**     *"For a Number of Months Prior to this Incident, I Observed That the Track Was Deteriorating and Needed Ballast, Ties, Alinement, and Surfacing, and Was Not Draining Properly."*

The Court need not determine whether this statement constitutes improper expert testimony, because it is a legal conclusion.  Stating the track "needed" ballast, ties, alinement and surfacing, and it was "not draining properly" is tantamount to stating Defendant failed to meet its standard of care. As explained in Part II, *supra*, no witness may offer legal conclusions.  Defendant's Motion is granted to the extent it seeks to exclude this statement.

**D.**     *"For At Least a Week Prior to January 14, 2008, There Had Been a Washout and Mud in the Area Between Mileposts 151.4 to 151.8 as a Result of Heavy Rains."*

This statement merely constitutes a lay witness's personal observations.  Defendant's Motion is denied to the extent it seeks to exclude this statement.

**E.**     *"This Made the Ongoing Track Problems Worse. When We Encountered the Track on January 14, 2008, There Was Mud in the Ballast and Around the Track."*

This statement merely constitutes a lay witness's personal observations.  Defendant's Motion is denied to the extent it seeks to exclude this statement.

**4.     *Willard's Statements Regarding Previous Track Speeds***

Defendant seeks to exclude the following statements made by Willard on ground they constitute improper expert testimony:

> For about six months prior to January 14, 2008, [Defendant] had reduced the track speed from 40 miles per hour to 25 miles per hour, and raised it back to 40 again after putting down ballast but before repairing the track by replacing ties that had visibly deteriorated. In my experience with slow orders on areas of track with similar conditions, the track speed between mileposts 151.4 to 151.8 should have been kept at 25 miles per hour due to the conditions of the track in that area described above.

[ECF No. 184 at 3].

19

The majority of these sentences merely constitute Willard's lay observations.  Willard may freely testify he observed various track speeds in the months prior to the alleged accident.  Likewise, he may testify he witnessed certain track repairs before the alleged accident.  Therefore, to the extent Defendant's Motion seeks to exclude this material, Defendant's Motion is denied.  However, Plaintiff does not dispute that Willard is a lay witness.  Thus, Willard may not testify as to what speed Defendant should or should not have maintained for the track at issue.   In any event, stating Defendant "should have" maintained a different track speed is equivalent to making an improper legal conclusion that Defendant violated its standard of care.  Accordingly, Defendant's Motion is granted to the extent it seeks to exclude this material.

### 5.    *Willard's Statement Regarding Alleged Harassment*

Defendant seeks to exclude the following statement made by Willard:

> During our shifts on the following day, I witnessed [Plaintiff] being harassed by John Clark, Fred Cox, and Alden Jenkins, who attempted to force [Plaintiff] to sign medical releases that he did not want to sign.

[ECF No. 184 at 11].  Defendant contends this material lacks relevance.  Plaintiff responds this testimony demonstrates Defendant "accepted" its liability.  Thus, Plaintiff concludes this statement is circumstantial evidence that the track was defective.

At trial, Willard may not testify that Defendant or Defendant's employees "harassed" Plaintiff.  However, without so characterizing Defendant's alleged conduct, Willard may state his factual observations regarding Defendant's purported attempts to obtain medical releases.  Defendant's Motion is therefore granted in part and denied in part with regard to this testimony.

### 6.    *Scammell's Statement Regarding Subsequent Track Repairs*

Defendant seeks to exclude Scammell's statement that Defendant "did not repair the track until after [Plaintiff] was injured." [ECF No. 184 at 11].  Defendant contends this constitutes an

improper subsequent remedial measure.  As previously discussed in Part I.3, *supra*, the Court holds in abeyance the issue of subsequent remedial measures; at trial, the Court will determine if an exception to FRE 407 applies as the evidence is presented.  No questions should be asked on this subject until the Court is advised of an intention to ask a question and the Court rules.[7]

### 7.        *Scammell's Statement Regarding Slow Orders*

Defendant asks the Court to bar the following statement made by Scammell:

> Given the condition of the track and my knowledge of previous slow orders that were imposed on stretches of track with similar conditions, a 25 mile per hour slow order should have been kept on the track where [Plaintiff] was injured until it was properly repaired.

[ECF No. 184 at 3].  Defendant argues this statement constitutes improper expert testimony.

The Court need not determine whether this constitutes expert testimony,[8] because it is inadmissible as a legal conclusion.  Testifying that "a 25 mile per hour slow order should have been kept on the track" is tantamount to testifying that the slow order actually in place breached Defendant's regulatory standard of care.  That is, it is equivalent to stating Defendant violated an applicable regulation.

Scammell may testify as to the track conditions at the time of incident.  Similarly, he may testify as to the train speed in place at the time of incident.  He may not, however, state Defendant violated a standard of care – i.e. an applicable regulation – or state Defendant should have somehow conducted itself differently.  It is the province of the jury to hear testimony regarding the conditions

---

[7]The same ruling applies to Willard's statement that "after [Plaintiff's] injury, [Defendant] fixed the track by replacing defective ties." [ECF No. 184 at 11].

[8]Aside from this statement, Defendant has not made any other allegations that Scammell offers expert testimony.  Accordingly, at this time, the Court need not determine whether Scammell was properly disclosed as an expert or is qualified to give expert testimony.

and events at issue, and, being duly instructed on the relevant law, determine whether Defendant acted as it "should have."  Defendant's Motion to exclude this statement is granted.

## V.  DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF JOSEPH THORNBURG RELATING TO THE JANUARY, 2003 SAFETY MEETING AND ASSOCIATED MINUTES [ECF NO. 185]

Defendant seeks to exclude a portion of the deposition of Joseph Thornburg, the Division Engineer over the territory at issue in this case.  Defendant contends Plaintiff should not be permitted to offer testimony concerning a safety meeting that took place on January 14, 2003, because that meeting concerned the track conditions of the "Thayer South" subdivision, while the track at issue is located in the "Fort Scott" subdivision.  Additionally, Defendant argues the five-year gap between the meeting and the alleged accident significantly reduces the probative value of this evidence. Plaintiff responds the meeting regarded the entire Springfield division, which includes the Fort Scott subdivision.  Plaintiff also contends the five-year gap does not decrease the probative value of this evidence, because the meeting minutes establish Defendant knew certain track conditions cause deterioration.

The Court will exclude this evidence.  Plaintiff has not cited any language specifically referencing the Fort Scott subdivision.  Coupled with the fact that the meeting took place approximately five years before the alleged incident, the Court finds this evidence has minimal probative value, which is significantly outweighed by its unfairly prejudicial effect.  Fed. R. Evid. 403.  Moreover, the Court doubts whether this testimony bears any relevance at all; because Defendant has a regulatory standard of care in this case, the Court cannot see how Defendant's knowledge or understanding of track deterioration is relevant to whether it complied with the regulations and caused Plaintiff's alleged injuries.  Therefore, Defendant's Motion is granted.

## VI.   DEFENDANT'S MOTION IN LIMINE TO BAR EXPERT TESTIMONY OF REBECCA M. SUMMARY [ECF NO. 186]

Defendant contends the Court should bar the expert testimony of Rebecca Summary, who would testify regarding Plaintiff's lost wages, fringe benefits, and household services.  Defendant alleges four grounds for excluding Summary's testimony: (1) she fails to deduct Railroad Retirement taxes and business expenses (Tier I and Tier II taxes) from her lost earning capacity calculations; (2) she includes an amount for lost household services without factual proof that Plaintiff incurred these losses; (3) she arbitrarily assigns Plaintiff future earnings of $60,000 per year and alternatively $85,000 per year, and she erroneously assumes Plaintiff would retire at age 65 or 67; and (4) she improperly accounted for inflation when calculating future wages.[9]

Plaintiff counters that Summary's testimony is admissible.  He argues the future lost earning capacity and household services assumptions go to the weight of the testimony, not the admissibility.  He also contends Railroad Retirement benefits and business expenses need not be deducted from his lost earning capacity.  Finally, he contends Summary properly takes inflation into account when determining the present value of Plaintiff's future lost wages.

The Court agrees with Plaintiff and accordingly denies Defendant's Motion in its entirety.  Defendant's challenges to Summary's factual assumptions fail to constitute a basis for exclusion.  Generally, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility[.]"  *David E. Watson, P.C. v. U.S.*, 668 F.3d 1008, 1014 (8th Cir. 2012) (quoting *Neb. Plastics, Inc. v. Holland Colors Am., Inc.*, 408 F.3d 410, 416 (8th Cir. 2005)).  Additionally, Summary's opinions are not "so fundamentally unsupported that [they] can offer no assistance" to

---

[9]Defendant alleges a fourth ground for exclusion: Summary violated FRCP 26(a)(2)(B) by failing to update the list of cases in which she previously testified as an expert, and by failing to update her statement of compensation in this case.  As stated at the Pretrial Conference, if Summary fails to comply with these rules by October 29, 2013, her testimony will be excluded.

the jury.  *Id.*  Defendant may freely challenge Summary's factual assumption on cross-examination.

Regarding inflation, Defendant has overlooked controlling Supreme Court and Eighth Circuit precedent.  As Plaintiff points out, the Eighth Circuit has stated,

> This court has not required the trier of fact, in applying the federal law of damages under FELA, to ignore the prospect of future inflation in determining damages for lost earning capacity. On the contrary, recognizing the compensatory purpose of damage awards under FELA and the significance of inflationary factors in setting just compensation, this court has indicated that it may be error for the trial court to instruct the jury Not [sic] to consider the prospect of future inflation in determining damages.

*Taenzler v. Burlington N.*, 608 F.2d 796, 800 (8th Cir. 1979).  Additionally, the Supreme Court has stated "no single method for determining present value is mandated by federal law and . . . the method of calculating present value *should take into account inflation and other sources of wage increases* as well as the rate of interest[.]" *St. Louis Sw. Ry. Co. v. Dickerson*, 470 U.S. 409, 412 (1985) (emphasis added).  Accordingly, Summary did not err per se in considering inflationary rates in her computation of damages.  If Defendant seeks to challenge her methodology, including the chosen inflationary rate, Defendant may appropriately raise such issues on cross-examination.

Finally, the Court will exclude evidence of Tier I and Tier II taxes.  The issue of whether these taxes must be deducted from FELA lost future earnings is not well-settled.  *Stevenson v. Union Pac. R.R. Co.*, No. 4:07CV00522 BSM, 2009 WL 652932, at *2 (E.D. Ark. Mar. 12, 2009).  The parties agree, however, that future earnings should be determined on an after-tax basis, permitting the introduction of evidence of state and federal income taxes, as set forth in *Norfolk & Western Railway Company v. Liepelt*, 444 U.S. 490, 493-95 (1980).  In *Norforlk & Western Railway Company v. Chittum*, the Supreme Court of Virginia determined Tier I and Tier II retirement payments could not be deducted from damages in an FELA case.  468 S.E.2d 877, 882 (Va. 1996), *cert. denied*, 519 U.S. 1034 (1996).  As one court has noted, because the Supreme Court denied

24

certiorari on *Chittum*, courts "must presume that the United States Supreme Court did not find that this position did violence to the *Liepelt* opinion." *Riley v. Union Pac. R.R. Co.*, No. CIV-09-155-KEW, 2010 WL 1946286, at *1 (E.D. Okla. May 13, 2010). The Court agrees, and finds "no compelling reason for evidence of the level of railroad retirement taxes to be introduced into evidence at trial." *Id.*

Defendant's Motion is denied.

## VII. DEFENDANT'S MOTION IN LIMINE TO BAR THE CAUSATION TESTIMONY OF DR. SCHOEDINGER [ECF NO. 188]

Defendant seeks to exclude the expert testimony of Dr. George Schoedinger, who conducted a medical examination and would testify as to Plaintiff's alleged injuries. Defendant asserts Dr. Schoedinger's testimony lacks a sufficient factual basis, because he was unaware that Plaintiff had preexisting back injuries. Additionally, Defendant maintains Dr. Schoedinger incorrectly believed Plaintiff experienced neck and back pain immediately following the alleged accident, when in actuality Plaintiff had no complaints until the following day. Defendant also challenges Dr. Schoedinger's methodology, and summarizes its arguments as follows:

- [Dr. Schoedinger] has not evaluated Plaintiff's other medical records, including any pre-incident injuries or treatment

- He has not read Plaintiff's deposition transcript

- Plaintiff failed to tell him about his history of back pain and treatment

- He does not know how long Plaintiff's alleged condition had been present

- Since he has not seen any pre-incident medical records, he cannot say whether the post-incident diagnostic tests show anything new or different because he did not compare them to any previous films or medical records

- His opinion is based on Plaintiff's self-reports of symptom development, which are inconsistent with Plaintiff's own deposition testimony

- He could not have performed a valid differential diagnosis, because it would require seeing all prior medical records and films, which he has not done

- He has not attempted to say what percentage of Plaintiff's condition existed before the alleged incident; and he cannot do so because he has not see the prior medical records.

[ECF No. 189 at 14].

Plaintiff responds that any of Dr. Schoedinger's factual discrepancies were minor and clarified in his trial deposition.  Plaintiff asserts Dr. Schoedinger's deposition supports the following propositions:

- Cowden's train struck a rough portion of track which caused him to be thrown in the air from the chair in which he was sitting, he began experiencing increasing levels of pain in his neck, thoracic and lumbar spine by the following morning and had no intervening trauma

- Cowden had not experienced any significant previous spine problems, but more than 15 years before the date of this incident he had been evaluated and treated for some minor low back pain when he was in the military but had never been diagnosed or experienced any kind of radicular symptoms

- Patients frequently sustain spine trauma which does not immediately manifest in radicular symptoms consistent with disc damage, but such can appear within a few days

- Based on the totality of the history provided by the patient and during deposition hypotheticals, it remains Dr. Schoedinger's opinion that this train incident caused or contributed to cause his neck and low back problems

- Formed opinion to a reasonable degree of medical certainty, based on patient examination, radiological testing and surgery to remove a herniated lumbar spine disc, along with a differential diagnosis and exclusion of other possible causes, that the spine conditions he diagnosed were caused or made aggravated or symptomatic from this railroad incident described by Cowden from mid-January 2008

[ECF No. 210 at 3 (internal citations omitted)].

The Court has reviewed the portions of Dr. Schoedinger's deposition at issue in this Motion, and finds they support Plaintiff's above propositions.  Dr. Schoedinger's causation testimony is not

so unsupported that it cannot offer any assistance to the jury.  *David E. Watson, P.C.*, 668 F.3d at 1014 (quoting *Neb. Plastics, Inc.*, 408 F.3d at 416).  Moreover, reading Dr. Schoedinger's testimony as a whole, the instant situation differs dramatically from the situation Defendant cites in *Myers v. Illinois Central Railroad Company*, where the experts testified they had not contemplated potential causes of the plaintiff's injuries and had focused solely on treatment.  629 F.3d 639, 645 (7th Cir. 2010).

Defendant may challenge any factual discrepancies on cross-examination, as "when a medical expert has relied upon a patient's self-reported history and that history is found to be inaccurate, district courts usually should allow those inaccuracies in that history to be explored through cross-examination."  *Id.* (internal quotations omitted).  In instant case, Dr. Schoedinger's testimony constitutes significantly more than a "hunch" or an "informed guess."  *Id.*  The Court, therefore, concludes Dr. Schoedinger's factual foundation and methodology are sufficient for presentment to the jury.  Defendant's Motion is denied.

## VIII.   PLAINTIFF'S MOTIONS IN LIMINE [ECF NO. 198]

In this Motion, Plaintiff asks the Court for the following 18 evidentiary rulings.

### 1.      *When and Why Plaintiff Consulted an Attorney*

Plaintiff seeks to exclude evidence concerning when and why Plaintiff consulted an attorney.  Plaintiff contends such evidence is irrelevant, prejudicial, and protected by the attorney-client privilege.  Defendant makes no objection, and the Court passes this Motion at the request of the parties.

### 2.      *Filing Date and Venue*

Plaintiff contends Defendant should be barred from discussing the filing date and venue of this case, because such information lacks relevance and constitutes an improper attempt to

27

characterize Plaintiff as litigious.  Defendant does not object.  The Court passes this Motion at the request of the parties.

### 3.    *Other Financial Benefits*

Plaintiff alleges the collateral source rule bars evidence of certain financial benefits he receives, including disability benefits from the Railroad Retirement Board and healthcare benefits from the Veterans Administration.  He contends the jury could use these benefits to improperly offset Defendant's liability under the FELA.  Additionally, Plaintiff seeks to exclude any suggestion that, had he not been injured, he could have retired with benefits at the age of 60.  Plaintiff anticipates Defendant will use this information to imply Plaintiff would have retired at the age of 60, rather than the age of 65 or 67.  Plaintiff asserts the jury could misuse this evidence to limit his economic compensation.  Defendant counters that the jury is entitled to hear evidence that a railroad employee may retire with benefits at the age of 60.  Defendant asserts such evidence is relevant to aid the jury in determining Plaintiff's planned retirement age.  Defendant also seeks to reserve its right to enter evidence of collateral sources if Plaintiff "opens the door" by putting his financial status in issue.

Plaintiff cites *Greisser v. National Railroad Passenger Corporation*, 761 A.2d 606 (Pa. Super. 1999), which held that an FELA plaintiff's retirement benefits are inadmissible to show motivation to retire at a particular age.  *Id.* at 612-13.  The court in *Greisser* characterized this rule as a liberal extension of the collateral source rule.  *Id.*  It found that, although retirement benefits at the age of 60 did not constitute a "collateral source" in the traditional sense, the risk of confusion to the jury outweighed the probative value of such evidence.  *Id.*  The court explained,

> [T]here remains a significant danger that a jury will misuse and misinterpret evidence of early retirement benefits.  For example, the jury could conclude that Amtrak was liable for lost wages to age 65 or 70, but then decline to award such damages because of the fortuitous existence of equivalent retirement benefits.  Or, the jury could conclude that Appellant was entitled to benefits only to age 60 and was attempting to seek a double recovery of benefits after age 60.  In short, this evidence distracts the

28

jury from the issues in the case and has a strong likelihood of prejudicing the plaintiff. Thus, we conclude that evidence of Appellant's future retirement benefits was inadmissible to show that Appellant had an economic incentive to retire before age 65, because of the danger that the jury would use this evidence for the improper purpose of mitigating Appellant's damages or reducing Amtrak's liability. In this way, we adhere to the underlying purpose of the collateral source rule in light of the strong policy against the admission of collateral benefits in FELA cases.

*Id.*

That said, Plaintiff cannot expect to testify he unequivocally intended to retire at the age of 67, thereby increasing any potential damages, without allowing Defendant an opportunity to challenge his assertions. Thus, at trial, Defendant may offer evidence that Plaintiff was "eligible to retire" at the age of 60; it may not, however, introduce evidence regarding the availability or amount of retirement benefits. *Stevenson v. Union Pac. R.R. Co.*, No. 4:07CV00522 BSM, 2009 WL 652932, at *3 (E.D. Ark. Mar. 12, 2009). Plaintiff's Motion is therefore granted to the extent it seeks to exclude evidence of potential early retirement benefits. In addition, the Court grants Plaintiff's Motion to the extent it seeks to exclude evidence of disability and Veterans' Administration benefits, which clearly fall within the scope of the collateral source rule. Of course, if Plaintiff puts his financial situation at issue, Defendant may rebut with such evidence.

### 4. Business Expenses and Retirement Withholdings

Plaintiff contends the proper measure of his wage loss is gross wages discounted only by federal and state income taxes. Therefore, Plaintiff asks the Court to bar any evidence of amounts withheld from his earnings due to his Railroad Retirement Board benefits. For reasons discussed in Part VI, *supra*, Plaintiff's Motion is granted.

### 5. Other Medical Conditions

Plaintiff seeks to exclude evidence regarding medical treatment for knee problems, shortness of breath, and pressure in the chest. Plaintiff argues these conditions are unrelated to the instant case

and would merely serve to mislead the jury.  At the Pretrial Conference, the parties stated their intent to confer on this issue and reach an agreement.  Accordingly, the Court passes this Motion at the request of the parties.

### 6.      *Plaintiff's Financial or Pecuniary Circumstances*

Plaintiff argues evidence regarding his financial or pecuniary circumstances lacks relevance. He seeks to exclude references to his real property, personal property, and loans taken out subsequent to his injuries.  Defendant does not object per se to the exclusion of Plaintiff's financial situation. However, Defendant seeks to enter evidence that Plaintiff "lives on approximately 7.2 acres . . . , which is relevant to what Plaintiff is capable of doing now." [ECF No. 206].

At trial, Defendant may inquire about Plaintiff's activities in conjunction with his use of personal and real property.  However, Defendant may not inquire as to Plaintiff's financial circumstances or the value of his assets.  Thus, Plaintiff's Motion is granted.

### 7.      *Other Employees' Retirement Age*

Plaintiff contends Defendant should be barred from introducing evidence concerning the retirement age of other employees, including any purported "average retirement age."  Plaintiff argues this evidence constitutes hearsay and lacks relevance.  Defendant argues this evidence is relevant to whether Plaintiff would have taken early retirement at age 60.

As previously discussed, Defendant may offer evidence suggesting Plaintiff was eligible to retire at the age of 60.  Any such evidence will be subject to the usual hearsay rules.  Because neither party has proffered any specific evidence regarding this issue, other than the evidence addressed in Part VIII.3, *supra*, the Court holds this Motion in abeyance.

### 8.      *Alternative Employment Requiring Relocation*

Plaintiff seeks to exclude any evidence that Defendant offered him alternative employment that would require him to relocate from his residence in Marshfield, Missouri.  He contends his duty to mitigate damages does not require him to relocate.  Defendant argues, because Plaintiff traveled 35 miles as a former employee of Defendant, the jury is entitled to hear evidence regarding employment opportunities with similar distances.

Plaintiff has a clearly established duty to mitigate damages, but that duty does not require him to relocate.  *See Coleman v. City of Omaha*, 714 F.2d 804, 808 (8th Cir. 1983); *Wagner v. Union Pac. R.R. Co.*, 642 N.W.2d 821, 846 (Neb. Ct. App. 2002).  The parties have not proffered any specific evidence at issue in this Motion.  Thus, the Court is unwilling to make a definitive preliminary ruling.  The Court will consider objections pertaining to this issue as the parties present evidence, or before they present evidence when a party requests an advance ruling.  Therefore, this Motion is held in abeyance.

### 9.      *Vocational or Job Replacement Services*

Plaintiff asks the Court to bar any evidence that Defendant offered him vocational or job placement services during the course of this litigation, including letters purportedly sent to Plaintiff discussing such services.  First, Plaintiff argues Defendant cannot lay a proper foundation for the admissibility of the letters, because it lacks evidence suggesting the letters were mailed to and received by Plaintiff.   Second, Plaintiff maintains the letters constitute improper ex parte communications, because they were issued by Defendant's legal claims department after Plaintiff had retained counsel.  Finally, Plaintiff contends the letters constitute self-serving litigation strategies, designed to reduce Defendant's liability rather than rehabilitate injured employees.  Plaintiff claims this façade is evidenced by Defendant's internal documents, which demonstrate

Defendant issues job postings that fail to accommodate the medical restrictions, education, and background of injured employees.[10]

Defendant responds that the letters did not amount to ex parte communications, because they were sent by a non-lawyer, and copies of the letters were sent to Plaintiff's counsel.  Defendant denies that its vocational rehabilitation services are self-serving litigation tactics.

The Court will deny Plaintiff's Motion to exclude the purported vocational services communications.  First, Defendant established a foundation for offering the letters into evidence, as Plaintiff stated in his deposition that he "did get a letter from the railroad something about vocation something." [ECF No. 124-1 at 119:22-120:6].  At trial, Plaintiff may freely refute any allegations regarding Defendant's purported attempts to contact him with vocational offers.  However, given Plaintiff's deposition testimony, this is a matter for the jury, not the Court.  Second, to the extent the letters constitute improper ex parte communications,[11] Plaintiff offers no evidentiary rule mandating or otherwise suggesting their exclusion.  Finally, while Plaintiff has cited internal BNSF documents implying a vocational services system of dubious intent, the Court concludes the integrity of Defendant's offers lies in the province of the jury.  The communications may therefore be admitted, and Plaintiff may properly challenge their genuineness before the jury.  Plaintiff's Motion is denied.

_____

[10]Additionally, Plaintiff maintains Defendant should be barred from introducing evidence of its vocational rehabilitation services, because there is no evidence from which a reasonable jury could conclude Plaintiff failed to exercise reasonable care and diligence in mitigating damages.  Plaintiff also asserts the letters constitute partial settlement offers, prohibited by FRE 408.
These arguments lack merit.  Plaintiff has not met his burden of showing no reasonable jury could find for Defendant on the mitigation of damages issue – a matter neither party raised at the summary judgment stage.  Additionally, Plaintiff has not established the letters constitute settlement offers within the scope of FRE 408, because nothing in the record suggests the letters seek to compromise the FELA claim.  Fed. R. Evid. 408.

[11]The Court makes no determination as to whether Defendant engaged in improper ex parte communications.

### 10. *"The Men and Women of BNSF Railway Company"*

Plaintiff seeks to exclude any statement alleging he "sued the men and women of BNSF Railway Company," because such allegations mischaracterize his lawsuit, which is exclusively against a corporate entity.  Defendant does not object, and the Court therefore passes this Motion at the request of the parties.

### 11. *Safety of Railroad and Safety Awards*

Plaintiff contends Defendant should be barred from presenting any evidence that it is a "safe" railroad or has received safety awards.  Plaintiff maintains this constitutes improper character evidence.  Defendant makes no objection.  The Court passes this Motion at the request of the parties.

### 12. *Secondary Gain*

Plaintiff argues the Court should preclude Defendant from suggesting that Plaintiff is motivated by secondary gain, or that patients involved in litigation have longer recovery periods. At the Pretrial Conference, the parties agreed this issue arises only in the context of the deposition of Peter Mirkin.  The parties stated they would reach an agreement on this issue and avoid the subject matter of secondary gain.  Therefore, the Court passes this Motion at the request of the parties.

### 13. *Health Insurance and Paid Medical Bills*

Plaintiff seeks to exclude any evidence of his health insurance or medical bills already paid by Defendant.  He claims such evidence is irrelevant, because he does not seek compensation for medical bills that have already been satisfied.  Additionally, he seeks to exclude any evidence of potential coverage under the Affordable Care Act for his future medical bills.

Defendant does not object to the exclusion of evidence relating to medical bills already paid. At the hearing, the parties agreed to create an exhibit, summarizing Plaintiff's medical bills, with

previously paid amounts redacted.  Thus, to the extent this Motion seeks to exclude evidence of previously paid bills, the Court passes this Motion at the request of the parties.

However, regarding future medical bills, Defendant contends the Affordable Care Act is relevant to Plaintiff's alleged future expenses.  Because it is uncertain whether Plaintiff will seek future medical bills at this time, the Court declines to make a definitive ruling at this stage.  The Court will consider objections pertaining to this issue as the parties present evidence, or before they present evidence when a party requests an advance ruling.  This Motion is held in abeyance to the extent it seeks to exclude evidence of the Affordable Care Act.[12]

### 14.    Compliance with Statutes and Regulations

Plaintiff asks the Court to bar any opinion testimony that Defendant complied with statutes or regulations.  In particular, Plaintiff states that two witnesses, Randy McElroy and Erik Frohburg, have proffered opinions claiming Defendant complied with various regulations.  Plaintiff asserts these opinions constitute improper legal conclusions.  As discussed in Part II, *supra*, no witness may offer legal opinions at trial.  In particular, no witness will be permitted to testify whether Defendant complied with applicable regulations.  Accordingly, Plaintiff's Motion is granted.  As discussed at the Pretrial Conference, the parties may use charts summarizing the factual conclusions of each witness as compared to the legal requirements of the regulations.  From there, the jury must draw its own conclusions regarding Defendant's compliance with the regulations.

### 15.    Locomotive Owned by Norfolk Southern

Plaintiff argues Defendant should be barred from mentioning that the locomotive involved in the incident was owned by Norfolk Southern, which is not a party to this case.  Plaintiff contends

---

[12]Should this issue arise at trial, Defendant must come forward with authority that any coverage under Affordable Care Act does not constitute a collateral source.

Defendant has a non-delegable duty to provide reasonably safe equipment, and such evidence would therefore be irrelevant and prejudicial.  Defendant states it does not intend to make any arguments related to the ownership of the locomotive, but does intend to offer photographs that depict the locomotive, which bears a Norfolk Southern label.  The Court grants Plaintiff's Motion.  Neither party may discuss the ownership of the locomotive.  Defendant may offer the proffered photographs, so long as it does so for an admissible purpose – not to put the ownership of the locomotive in dispute.

### 16.      *Expert Opinions Not Previously Designated in Reports*

Plaintiff asks the Court to bar any expert opinions not previously designated in the reports of three expert witnesses: Erik Frohburg, Peter Mirkin, and James England.  Plaintiff contends allowing opinions outside the scope of these experts' written reports would violate FRCPs 26 and 37.  Defendant does not object.  The Court passes this Motion at the request of the parties.

### 17.      *Joseph Thornburg's Testimony Concerning Reasons for Slow Order*

Plaintiff contends the Court should bar a portion of Joseph Thornburg's testimony, concerning a slow order on May 23 through May 28 of 2007.  Specifically, Thornburg testified he believed the reasons for the slow order as indicated on the slow order log were incorrect.  Plaintiff contends, because Thornburg could not substantiate his testimony, such evidence should be excluded.  Defendant counters that Thornburg's lack of supporting documentation does not necessarily mean he lacked personal knowledge or an otherwise legitimate reason for testifying as he did.

At this stage, the Court declines to make a definitive ruling.  Before this evidence is offered, the parties shall come forward for a bench conference.  The Court will make a ruling at that time.  This Motion is held in abeyance.

**18.**     ***Plaintiff Was "Empowered" to Decline Employment with Defendant***

Plaintiff argues Defendant should not be permitted to suggest Plaintiff was "empowered" to decline working in what he believed to be unsafe conditions, because such evidence constitutes an impermissible attempt to assert the defense of assumption of risk.  Defendant does not object, and the Court therefore passes this Motion at the request of the parties.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion in Limine [ECF No. 180] is **GRANTED, in part, DENIED, in part and HELD IN ABEYANCE, in part,** as set forth above.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine to Extend the Rulings as to Alan Blackwell to All Witnesses [ECF No. 181] is **GRANTED, in part and HELD IN ABEYANCE, in part.**  The Court will not permit any witness to offer legal conclusions, but the Court holds in abeyance the issue of subsequent remedial measures.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine to Exclude the Supervisor's Report of BNSF Employee Injury/Illness [ECF No. 182] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine Regarding Kenny Scammell and Greg Willard and Their Declarations [ECF No. 183] is **GRANTED, in part, DENIED, in part and HELD IN ABEYANCE, in part**, as set forth above.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine to Exclude the Testimony of Joseph Thornburg Relating to the January, 2003 Safety Meeting and Associated Minutes [ECF No. 185] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine to Bar Expert Testimony of Rebecca M. Summary [ECF No. 186] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine to Bar the Causation

Testimony of Dr. Schoedinger [ECF No. 188] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions in Limine [ECF No. 198] is

**GRANTED, in part, DENIED, in part and HELD IN ABEYANCE, in part**, as set forth above.

Dated this 30th day of October, 2013.


E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE