# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN D. COWDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:08CV01534 ERW |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant BNSF Railway Company's Motion for an Order Showing Satisfaction of Judgment [ECF No. 271].

## I.  BACKGROUND

This suit arises out of injuries Plaintiff Kevin D. Cowden sustained while riding in a locomotive owned and operated by Defendant BNSF Railway Company, Plaintiff's former employer. On January 14, 2008, Plaintiff, in the course of performing his job duties, was traveling in one of Defendant's locomotives in Golden City, Missouri. The portion of track on which Plaintiff traveled was subject to a "slow order," setting the maximum speed for passing trains at forty miles per hour. Defendant's business records list "tie conditions" as the reason for the slow order, and Defendant had previously placed the section of track under slow orders due to "rough track" and "washouts." Plaintiff alleged that, on the day in question, the train encountered a rough section of track and "bottomed out," throwing him into the air and causing him to land with a significant impact, resulting in injuries to his back and neck. Plaintiff filed a Complaint, asserting Defendant violated the Federal Employers' Liability Act (FELA) by failing to provide a reasonably safe working environment.

In November 2013, the matter proceeded to trial. At the conclusion of the evidence, the jury was instructed, *inter alia*, to consider the following elements of damages:

1. The physical pain and emotional suffering the plaintiff has experienced and is reasonably certain to experience in the future; the nature and extent of the injury, whether the injury is temporary or permanent and whether any resulting disability is partial or total, including any aggravation of a pre-existing condition;

2. Plaintiff's unpaid medical expenses;

3. The earnings the plaintiff has lost to date and the present value of earnings and earning capacity the plaintiff is reasonably certain to lose in the future;

4. The reasonable value of household services which the plaintiff has been unable to perform for himself to date and the present value of household services the plaintiff is reasonably certain to be unable to perform for himself in the future; and,

5. Any scars and disfigurement.

ECF No. 241 at 14. On November 8, 2013, a jury returned a verdict in favor of Plaintiff in the amount of $1,671,253.90. The Court entered judgment on the verdict. On January 3, 2014, the Court awarded Plaintiff $7,870.65 in costs. As of February 11, 2014, the parties agreed the amount of $1,659,617.19 represented the judgment, costs, and post-judgment interest, minus $19,983.00, representing an agreed-upon lien of Railroad Retirement Board (RRB) benefits. Plaintiff filed an Acknowledgement of Partial Satisfaction of Judgment [ECF No. 269], notifying the Court that Defendant had tendered $1,611,061.21, leaving $48,556.47 disputed by the parties. To obtain satisfaction of this latter amount, Plaintiff requested a Writ of Garnishment upon Defendant's bank account, which the Court issued on February 20, 2014.

On February 27, 2014, Defendant filed BNSF's Motion for an Order Showing Satisfaction of Judgment [ECF No. 271] under Federal Rule of Civil Procedure (FRCP)

60(b)(5),[1] arguing it has satisfied the judgment in full by tendering $1,611,061.21, and properly withheld $48,556.47 for payroll taxes applicable to the judgment and tendered to the United States Treasury.

On March 5, 2014, Defendant filed a Motion to Quash or Stay Execution of the Writ of Garnishment [ECF No. 275], asking this Court to either quash the Writ of Garnishment, or stay its execution pending disposition of the instant Motion. Plaintiff did not object to the latter option, and the Court therefore stayed the Writ of Garnishment on March 12, 2014. The parties have now fully briefed their arguments regarding the disputed $48,556.47, and the Court turns to address Defendant's Motion for an Order Showing Satisfaction of Judgment.

## II.  DISCUSSION

The issues in Defendant's pending Motion are intertwined with two statutory bodies of law: the Railroad Retirement Act (RRA) and the Railroad Retirement Tax Act (RRTA). The RRA, 45 U.S.C. § 231 et seq., applies to railroad companies and their employees, and is administered by the RRB. 45 U.S.C. § 231f. The RRA provides railroad employees with benefits analogous to social security benefits.[2] *Fountain v. RRB*, 88 F.3d 528, 530 (8th Cir. 1996) (analogizing RRB regulations to social security regulations); *Duckworth v. Allianz Life Ins. Co. of N. Am.*, 706 F.3d 1338, 1344 (11th Cir. 2013) ("The provisions of the [RRA] are so closely analogous to those of the Social Security Act that regulations and cases interpreting the latter are applicable to the former.") (internal quotations omitted).

The RRTA, 26 U.S.C. § 3201 et seq., is a subsection of the Internal Revenue Code (IRC). Retirement benefits paid through the RRA are funded through the RRTA. *Hance v. Norfolk So.*

---

[1] FRCP 60(b)(5) allows a court to relieve a party from final judgment if "the judgment has been satisfied, released or discharged[.]"
[2] Railroad employees do not receive social security benefits. *Giza v. BNSF Ry. Co.*, 843 N.W.2d 713, 716 n.2 (Iowa 2014).

*Ry. Co.*, 571 F.3d 511, 522 (6th Cir. 2009). Under the RRTA, taxes are imposed on compensation earned by railroad employees. 26 U.S.C. § 3201(a)-(b). The RRTA implements a dual tax system, in which railroad employers must withhold their tax shares, as well as their employees' tax shares, and then provide both shares to the Internal Revenue Service (IRS). *Id.* The first part of this dual system is "Tier 1." 26 U.S.C. §§ 3201(a), 3221(a). Tier 1 taxes are imposed against both railroad employee and railroad employer. 26 U.S.C. §§ 3201(a), 3221(a). They are analogous to taxes imposed on nonrailroad workers by the Federal Insurance Contributions Act (FICA). *BNSF Ry. Co. v. U.S.*, 745 F.3d 774, 780 (5th Cir. 2014). The second part of the dual system, "Tier 2," also imposes taxes against both railroad employee and railroad employer. 26 U.S.C. §§ 3201(b), 3221(b). "[Tier 2] benefits are similar to those that workers would receive from a private multi-employer pension fund." *Hance*, 571 F.3d at 522. RRTA taxes also include certain Medicare withholdings.

Broadly speaking, the controversy in this Motion is rooted in the following RRTA language: "there is . . . imposed on the income of each employee a tax equal to the applicable percentage of the compensation received during any calendar year by such employee for services rendered by such employee." 26 U.S.C. § 3201(a)-(b). The issue currently before the Court is whether, pursuant to this language, a general FELA verdict is subject to such taxation. In recent months, courts have struggled to find ways to resolve this question, which has newly surfaced after a history of dormancy. That is, "[i]t has long been assumed (although no reported decision specifically addressed the issue) that damages received on account of physical injury were not subject to RRTA tax." Jeffrey R. White, *The Taxman Cometh . . . To Your FELA Judgment*, TRIAL, Apr. 2014, at 16, 18. Without any conclusive statutory authority or case law, courts have applied varying analyses to resolve this issue; notwithstanding the lack of uniformity in their

reasoning, courts have generally reached the same result: FELA verdicts are subject to RRTA taxation.

As explained *infra*, however, this Court cannot agree. Having conducted an extensive examination of relevant statutes, regulations, and cases – including authorities examining analogous FICA provisions – the Court simply cannot conclude Congress intended to tax personal injury judgments under the RRTA. Court has come to this decision by answering three pertinent questions, including (1) whether "compensation" under the RRTA includes an award of lost pay; (2) if so, whether Plaintiff's award is subject to any exclusions from taxation; and (3) if Plaintiff's award is subject to RRTA taxation, what portion of the award is taxed.

### A. *Definition of "Compensation" under the RRTA*

The first question before the Court is whether an award for lost pay is subject to RRTA taxation. Defendant argues Plaintiff's verdict is subject to RRTA payroll taxes, because it qualifies as "compensation" under § 3201 of the RRTA. In support of this argument, Defendant relies on both RRA and RRTA provisions. First, Defendant contends, under the RRA, "compensation" includes "pay for time lost." 20 C.F.R. § 211.2(b)(2). Defendant states payments for personal injury, such as Plaintiff's verdict, are included in the definition of "pay for time lost," unless "at the time of payment, a part of such payment is specifically apportioned to factors other than time lost[.]" 45 U.S.C. § 231(h)(2). Aside from these RRA provisions, Defendant states Plaintiff's verdict qualifies as "compensation" under applicable RRTA regulations. Citing 26 C.F.R. § 31.3231(e)-1(a)(3)-(4), Defendant notes,

> The term compensation is not confined to amounts paid for active service, but includes amounts paid for an identifiable period during which the employee is absent from the active service of the employer . . . .

> . . . Compensation includes amounts paid to an employee for loss of earnings during an identifiable period as the result of the displacement of the employee to a less remunerative position or occupation as well as pay for time lost.

Because the RRTA imposes taxes upon "income" equal to a defined percentage of "compensation," 26 U.S.C. § 3201, Defendant concludes Plaintiff's verdict is subject to RRTA taxes.

Plaintiff responds the verdict does not fall within the definition of "compensation" under the RRTA for several reasons. Specifically, Plaintiff states the RRA is separate from the RRTA, and, therefore, "compensation" under the RRA is not identical to "compensation" under the RRTA. Plaintiff also claims, under 26 U.S.C. § 3201, "compensation" must be given "for services rendered." Likewise, 26 U.S.C. § 3231(e)(1) defines "compensation" as "any form of money remuneration paid to an individual for services rendered as an employee to one or more employers." Plaintiff asserts the verdict was not payment for services rendered, and, therefore, cannot be considered "compensation."

As an initial matter, the Court notes the RRA and RRTA are separate and distinct bodies of statutory law; they each contain different definitions of the term "compensation." Under the RRA,

> The term "compensation" means any form of money remuneration paid to an individual for services rendered as an employee to one or more employers or as an employee representative, including remuneration paid for time lost as an employee, but remuneration paid for time lost shall be deemed earned in the month in which such time is lost.

45 U.S.C. § 231(h)(1). In addition, the RRA expressly includes personal injury payments in its definition of "compensation":

> An employee shall be deemed to be paid "for time lost" the amount he is paid by an employer with respect to an identifiable period of absence from the active service of the employer, including absence on account of personal injury, and the amount he is paid by the employer for loss of earnings resulting from his

displacement to a less remunerative position or occupation. If a payment is made by an employer with respect to a personal injury and includes pay for time lost, the total payment shall be deemed to be paid for time lost unless, at the time of payment, a part of such payment is specifically apportioned to factors other than time lost, in which event only such part of the payment as is not so apportioned shall be deemed to be paid for time lost.

45 U.S.C. § 231(h)(2).

Thus, under the RRA, it would be easy to conclude Plaintiff's verdict is "compensation." The RRA generally includes pay "for time lost" in its definition of "compensation." 45 U.S.C. § 231(h)(2); 20 C.F.R. § 211.2(b)(2). In addition, "[i]f a payment is made by an employer with respect to a personal injury and includes pay for time lost, the total payment shall be deemed to be paid for time lost unless, at the time of payment, a part of such payment is specifically apportioned to factors other than time lost[.]" 45 U.S.C. § 231(h)(2); *see also* 20 C.F.R. § 211.3(a)(1). Because Plaintiff's verdict is general, under the RRA, it would be deemed "pay for time lost" in its entirety, making the full amount "compensation."[3]

However, as Plaintiff asseverates, the RRA and the RRTA are distinct bodies of statutory law. While the RRA is a "benefit" statute, the RRTA is a "taxing" statute. *BNSF Ry. Co.*, 745 F.3d at 784 ("Congress separated the taxing and benefit statutes[.]"). Just as FICA and the Social Security Act must be interpreted differently, *U.S. v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 212-14 (2001), so must the RRA and RRTA be analyzed according to their own separate provisions. Thus, the more relevant inquiry is whether, under applicable RRTA statutes and regulations, Plaintiff's verdict is "compensation" subject to withholding.

---

[3] Aside from the RRA provisions, Defendant has submitted other authorities indicating the RRB views general FELA verdicts as compensation for RRA purposes. *See, e.g.*, ECF No. 272-9 at 2 (RRB Information Notice, explaining "absent a specific allocation amount, or a specific award amount for losses other than earnings, the RRB will consider the entire amount of damages to be pay for time lost."); ECF No. 272-10 (letter from RRB general counsel, opining, in a different case, that an FELA verdict qualified as compensation under the RRA).

As already observed, the RRTA definition of "compensation" is found in 26 U.S.C. § 3231(e)(1). Generally, "compensation" under the RRTA is "any form of money remuneration paid to an individual for services rendered as an employee to one or more employers." 26 U.S.C. § 3231(e)(1). This definition does not address payments for personal injury or payments for time lost. Prior versions of the statute, however, did address these issues. Specifically, the 1970 version of § 3231(e) stated,

> (1) The term "compensation" means any form of money remuneration earned by an individual for services rendered as an employee to one or more employers, or as an employee representative, including remuneration paid for time lost as an employee, but remuneration paid for time lost shall be deemed earned in the month in which such time is lost. . . .
>
> (2) A payment made by an employer to an individual through the employer's payroll shall be presumed, in the absence of evidence to the contrary, to be compensation for service rendered by such individual as an employee of the employer in the period with respect to which the payment is made. An employee shall be deemed to be paid "for time lost" the amount he is paid by an employer with respect to an identifiable period of absence from the active service of the employer, including absence on account of personal injury, and the amount he is paid by the employer for loss of earnings resulting from his displacement to a less remunerative position or occupation. If a payment is made by an employer with respect to a personal injury and includes pay for time lost, the total payment shall be deemed to be paid for time lost unless, at the time of payment, a part of such payment is specifically apportioned to factors other than time lost, in which event only such part of the payment as is not so apportioned shall be deemed to be paid for time lost.

26 U.S.C. § 3231(e) (1970). Therefore, under this language, RRTA "compensation" included payments "for time lost," which, in turn, included personal injury payments.

In 1975, Congress amended § 3231(e). Specifically, Congress amended the first sentence of subsection (1) to simply state, "The term 'compensation' means any form of money remuneration paid to an individual for services rendered as an employee to one or more employers." 26 U.S.C. § 3231(e)(1) (Supp. 1975). While Congress omitted the clause regarding

payment for time lost in subsection (1), it retained this language in subsection (2), which read as follows under the 1975 amendment:

> An employee shall be deemed to be paid compensation in the period during which such compensation is earned only upon a written request by such employee, made within six months following the payment, and a showing that such compensation was earned during a period other than the period in which it was paid. An employee shall be deemed to be paid "for time lost" the amount he is paid by an employer with respect to an identifiable period of absence from the active service of the employer, including absence on account of personal injury, and the amount he is paid by the employer for loss of earnings resulting from his displacement to a less remunerative position or occupation. If a payment is made by an employer with respect to a personal injury and includes pay for time lost, the total payment shall be deemed to be paid for time lost unless, at the time of payment, a part of such payment is specifically apportioned to factors other than time lost, in which event only such part of the payment as is not so apportioned shall be deemed to be paid for time lost.

26 U.S.C. § 3231(e)(2) (Supp. 1975). Finally, in 1983, Congress substantially changed § 3231(e); Congress removed all language addressing payments for time lost and payments for personal injury from § 3231(e). 26 U.S.C. § 3231(e) (Supp. II 1984). Likewise, the current version of § 3231(e) contains no explicit language addressing whether payments for time lost and payments for personal injury are taxable under the RRTA. Notwithstanding the removal of payments for time lost from the definition of "compensation," in 1994, the Treasury Department, in updating its Treasury Regulations pertinent to the RRTA, endorsed its previously enacted regulation, which expressly includes payments for time lost:

> (3) The term compensation is not confined to amounts paid for active service, but includes amounts paid for an identifiable period during which the employee is absent from the active service of the employer and, in the case of an employee representative, amounts paid for an identifiable period during which the employee representative is absent from the active service of the employee organization.
>
> (4) Compensation includes amounts paid to an employee for loss of earnings during an identifiable period as the result of the displacement of the employee to a less remunerative position or occupation as well as pay for time lost.

26 C.F.R. § 31.3231(e)-1(a)(3)-(4).

Although, at first glance, 26 C.F.R. § 31.3231(e)-1(a) may seem contrary to the legislative history of § 26 U.S.C. § 3231(e), the Court is confident the Treasury Regulation withstands scrutiny under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which applies "with full force in the tax context. . . . Filling gaps in the [IRC] plainly requires the Treasury Department to make interpretive choices for statutory implementation at least as complex as the ones other agencies must make in administering their statutes." *Mayo Found. for Med. Educ. & Research v. U.S.*, 131 S. Ct. 704, 713 (2011).

The first step under *Chevron* is "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. Here, the "precise question at issue" is whether payments for time lost are within the definition of "compensation" in the RRTA. The RRTA does not speak to this issue; the current version of 26 U.S.C. § 3231(e) generally defines "compensation" as "any form of money remuneration paid to an individual for services rendered as an employee to one or more employers," but fails to mention payments for time lost. Because Congress has not addressed the precise question at issue, the Court turns to the second step under *Chevron*.

Where, as here, "the statute is silent or ambiguous with respect to the specific issue," the second question under *Chevron* "is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. The Court "may not substitute its own construction of a statutory provision for a reasonable interpretation made by" the Treasury Department. *Id.* at 844; *see also Mayo*, 131 S. Ct. at 714. Bearing in mind the legislative history of 26 U.S.C. § 3231(e), the Court still believes 26 C.F.R. § 31.3231(e)-1(a) is a "reasonable interpretation" of the enacted text. The 1983 amendments were part of a major overhaul[4] to the

---

[4] This overhaul was entitled the Railroad Retirement Solvency Act.

RRTA; the deletion of the "pay for time lost" language was not a single, specific act of Congress suggesting a focused intent to exclude such payments from "compensation." Moreover, if Congress intended to exclude such payments from the definition of "compensation," it could have expressly done so; in fact, 26 U.S.C. § 3231(e) itemizes several exclusions, but not one for payments for time lost. By removing the "time lost" language from § 3231(e), Congress could have intended to ensure an expansive scope of "compensation" by avoiding any implementation of the canon *expression unius est exclusio alterius*: "the specification of one provision implies the exclusion of others." *Elwell v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1312 (10th Cir. 2012) (internal quotations omitted). In other words, Congress may have anticipated that an express *inclusion* of payments for time lost would have resulted in implicit *exclusions* from compensation; removing the "time lost" language remedied this potential problem.[5]

Additionally, when the Treasury Department reconsidered 26 C.F.R. § 31.3231(e)-1(a) in 1994, it expressly noted the "time lost" language had been removed from the statutory definition of "compensation," but ultimately settled on retaining the "time lost" language in the regulation. Update of Railroad Retirement Tax Act Regulations, 59 Fed. Reg. 66188-01 (Dec. 23, 1994). The Treasury Department reasoned, "The legislative history d[id] not indicate that Congress intended to exclude payments for time lost from compensation or negate the presumption that payments made through an employer's payroll are compensation." *Id.* Accordingly, the Court finds 26 C.F.R. § 31.3231(e)-1(a) constitutes a "reasonable interpretation" of the enacted text, and therefore withstands *Chevron* scrutiny.

---

[5] An expanded scope of "compensation" would have been consistent with the purpose of the 1983 amendments: "to improve the financial status of the railroad retirement system[, and] to assure the future solvency of the system and to preclude the need for the substantial benefit reduction that would otherwise be required[.]" H.R. Rep. 98-30 (II), at 813 (1983).

Because the Treasury Regulations include "pay for time lost" in the definition of "compensation," the Court finds the RRTA contemplates a jury's award for lost pay. This conclusion is consistent with the findings of other courts addressing similar cases. *See Heckman v. Burlington N. Santa Fe Ry. Co.*, 837 N.W.2d 532, 540 (Neb. 2013) (concluding FELA judgment was included in the definition of "pay for time lost")[6]; *Cheetham v. CSX Transp.*, No. 3:06CV704-J-PAM-TEM, 2012 WL 1424168, at *9 (M.D. Fla. Feb. 13, 2012) (finding wages were subject to RRTA taxation, due to analogous FICA statute in suit for lost pay under Family and Medical Leave Act); *Hance v. Norfolk So. Ry. Co.*, 571 F.3d 511, 522 (6th Cir. 2009) (holding award of back pay under Uniformed Services Employment and Reemployment Rights Act of 1994 was subject to taxation under RRTA as payment "for time lost"); *Phillips v. Chi. Cent. & Pac. Rr. Co.*, 2014 WL 2900952, ___ N.W.2d ___ (Iowa June 27, 2014) (holding general FELA verdict was taxable under the RRTA).[7]

In addition, the RRTA definition of "compensation" is clarified by examining relevant provisions of an analogous body of law, FICA, 26 U.S.C. § 3101 et seq. *BNSF Ry. Co.*, 745 at 783 ("[I]t is well-established that the RRTA and FICA are parallel statutes, and courts often look to FICA when interpreting the RRTA."[8]). In fact, applicable Treasury Regulations expressly state "compensation" for RRTA purposes is the same as "wages" for purposes FICA. 26 C.F.R.

---

[6] The Court notes *Heckman* also relied heavily on RRA provisions to interpret the RRTA. 837 N.W.2d at 461-63. To this extent, the Court disagrees with *Heckman*.

[7] In response to these cases, Plaintiff cites a single case from the Middle District of Georgia, *Windom v. Norfolk So. Ry. Co.*, No. 5:10CV407-MTT, 2012 WL 6096990 (M.D. Ga. Dec. 7, 2012). In *Windom*, the court found the defendant, which was found liable to the plaintiff under the FELA, failed to demonstrate it was liable for wage withholdings. *Id.* at **1-2. In the instant case, the Court declines to apply *Windom*, which reached its holding without any mention of the RRTA statutory and regulatory provisions discussed in this Memorandum and Order.

[8] For this reason, the Court relies on FICA-related authorities, as well as RRTA-related authorities, throughout this Memorandum and Order.

§ 31.3231(e)-1(a)(1) ("The term compensation has the same meaning as the term wages in [26 U.S.C. § 3121(a)], . . . except as specifically limited by the [RRTA] or regulation.").

The Fifth Circuit provided relevant guidance on the definition of "wages" in *Noel v. New York Office of Mental Health Central New York Psychiatric Center*, 697 F.3d 209 (5th Cir. 2012). There, a jury determined the defendant wrongfully terminated the plaintiff in violation of Title VII. *Id.* at 211. The jury awarded the plaintiff 210,000 dollars in back pay, and 70,000 in front pay. *Id.* In paying the judgment to the plaintiff, the defendant deducted FICA wage withholdings, and the plaintiff objected. *Id.* at 211-12. On appeal, the issue before the Fifth Circuit was whether the back pay and front pay awards fell within the meaning of "wages" for FICA purposes. *Id.* at 212.

The court "ha[d] little difficulty in concluding that both back pay and front pay are 'wages' as defined by the [IRC]." *Id.* at 213. It explained, "Both are remuneration paid to an employee to compensate for what he would have earned had he not been the victim of discrimination." *Id.* at 214. Using additional FICA provisions to discern the definition of "wages," the court further noted the defendant was required to withhold taxes from remuneration paid to an employee for "any service, of whatever nature, performed . . . by an employee for the person employing him[.]" *Id.* (quoting 26 U.S.C. § 3121(b)). The Fifth Circuit concluded, "[The plaintiff] does not dispute that, had there been no judgment, these earnings would have been subject to withholding. We believe that this result is not changed because [the plaintiff] had to obtain a judgment to secure the wages." *Id.*

In light of this cogent reasoning, and of the fact FICA "wages" have the same meaning as RRTA "compensation," the Court finds an FELA award of lost pay falls within the definition of "compensation" under the RRTA. Contrary to Plaintiff's arguments, Plaintiff's verdict is not

excluded from the definition of "compensation" under the RRTA merely because personal injury prevented Plaintiff performing his job duties. In fact, 26 C.F.R. § 31.3231(e)-1(a)(3) rejects this proposition outright by stating, "The term compensation is not confined to amounts paid for active service[.]" Just as the plaintiff in *Noel* "would have earned [wages] had he not been the victim of discrimination," Plaintiff would have earned the wages at issue in the instant case had he not been the victim of negligence. 697 F.3d at 214. Plaintiff does not, and cannot, dispute Defendant would have had an obligation to withhold taxes if there had been no personal injury and Plaintiff had continued his normal job duties. Like the Fifth Circuit, this Court cannot believe the result is changed by the fact Plaintiff had to obtain a judgment to secure wages. *Id.* As the Supreme Court recently stated, "wages" under FICA are defined "broadly":

> FICA exempts from wages payments on account of disability caused by sickness or accident, cash payments made for domestic service in a private home under a certain amount, and cash tips less than a certain amount. *See* §§ 3121(a)(2)(A), (7)(B), (12)(B). The specificity of these exemptions reinforces the broad nature of FICA's definition of wages.

*U.S. v. Quality Stores, Inc.*, 134 S. Ct. 1395, 1399-1400 (2014).

The Court finds FELA judgments for lost pay fall within the definition of "compensation" for RRTA purposes. This conclusion, however, does not end the inquiry. Plaintiff still contends certain exclusions apply to his particular award, and, because the verdict is general, the Court must determine what part, if any, of the verdict is subject to withholding under the RRTA. The Court now turns to these questions.

### B.    *Exclusions from Taxation*

Plaintiff argues his verdict is excluded from taxation for three reasons. First, Plaintiff claims his verdict cannot be "income" or "compensation" under the RRTA, because it is excluded from income under the personal injury exclusion in 26 U.S.C. § 104. Second, he

contends "compensation" must be paid to an "employee," who is "any individual in the service of one or more employers[.]" 26 U.S.C. § 3231(b). Plaintiff states, because he was no longer an employee of Defendant at the time he received payment of $1,611,061.21,[9] the verdict does not qualify as "compensation." Finally, Plaintiff claims he received the verdict, in part, as payment for "accident disability," which is excluded from "compensation" under 26 U.S.C. § 3231(e)(1)(i). Because the Court agrees the verdict is excluded under 26 U.S.C. § 104, the Court need not discuss Plaintiff's remaining proffered exclusions.

Turning to 26 U.S.C. § 104, Plaintiff argues his verdict is excluded from "gross income" under subsection (a)(2), which excludes from income "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness[.]" Plaintiff contends, because wages are a subset of income, income exclusions like § 104(a)(2) must apply to wages, too.

The Court agrees. The term "income" is broader than "wages." *Anderson v. U.S.*, 929 F.2d 648, 650 (Fed. Cir. 1991); *Rowan Cos., Inc. v. U.S.*, 452 U.S. 247, 254 (1981) ("In short, 'wages' is a narrower concept than 'income[.]'"). Therefore, if Plaintiff's verdict qualifies as an exclusion from income, it must also qualify as an exclusion from wages. *Redfield v. Ins. Co. of N. Am.*, 940 F.2d 542, 548 (9th Cir. 1991) ("Our conclusion that Redfield's 'economic damages' were excluded from the definition of 'gross income' dictates a conclusion that the sums were not subject to FICA withholding either."). In addition, the RRTA imposes a tax "on . . . income[.]" 26 U.S.C. § 3201(a)-(b). Defendant does not, and cannot, dispute Plaintiff's verdict, in part, constitutes "damages . . . on account of personal physical injuries or physical sickness[.]" 26

---

[9] Plaintiff tendered his letter of resignation to Defendant on November 8, 2013, the day the jury gave its verdict. ECF No. 254-3.

U.S.C. § 104(a)(2). Thus, the Court finds, because wages are a subset of income, the personal injury exclusion must apply.

Nevertheless, this view has been subject to scrutiny in light of the last sentence of 26 U.S.C. § 3231(e)(1), which states,

> Nothing in the regulations prescribed for purposes of chapter 24 (relating to wage withholding) which provides an exclusion from 'wages' as used in such chapter shall be construed to require a similar exclusion from 'compensation' in regulations prescribed for purposes of this chapter.

This sentence, known as the "decoupling amendment," was enacted with the intention of repudiating the Supreme Court's holding in *Rowan Companies v. United States*, 452 U.S. 247 (1981). *See also CSX Corp. v. U.S.*, 518 F.3d 1328, 1343 (Fed. Cir. 2008).

In *Rowan*, the Supreme Court found certain Treasury Regulations were invalid, because they interpreted the term "wages" differently for purposes of FICA (Chapter 21 of the IRC) and income tax withholding (Chapter 24 of the IRC). 452 U.S. at 257. The decoupling amendment was intended to "disavow" the principle that "wages" had to be construed identically for purposes of both FICA and income tax withholding. *CSX Corp.*, 518 F.3d at 1343. "The committee reports on the . . . statute clearly state that the amendment was designed to ensure that the rules applicable to income tax withholding would not necessarily apply equally to FICA." *Id.* Because the language of the decoupling amendment "addresses the construction of the regulations rather than Chapter 24 itself," however, it merely "'decoupled' [FICA and Chapter 24] only to the extent of 'allowing [the] Treasury to promulgate regulations to provide for different exclusions from 'wages' under FICA than under the income tax withholding laws.'" *Id.* at 1344 (quoting *Anderson*, 929 F.2d at 650).

Importantly, nothing in the decoupling amendment contradicts *Rowan*'s conclusion that "wages" should be identical for both FICA and income-tax withholding purposes. In fact, in a

recent decision, the Supreme Court endorsed "the major principle recognized in *Rowan*: that simplicity of administration and consistency of statutory interpretation instruct that the meaning of 'wages' should be in general the same for income-tax withholding and for FICA calculations." *Quality Stores, Inc.*, 134 S. Ct. at 1405. The same logic applies here; simplicity of administration and consistency of statutory interpretation command a uniform definition of "income" for purposes of income taxation and the RRTA. Defendant has not come forward with any mandatory authority suggesting otherwise.

That said, Defendant notes Revenue Rulings differentiate "income" for purposes of income taxation from "compensation" under the RRTA. *See* Rev. Rul. 85-97, 1985-2 C.B. 50; Rev. Rul. 61-1, 1961-1 C.B. 14. While Revenue Rulings are entitled to some weight, they are not as influential as Treasury Regulations and statutes. *U.S. v. Eddy Bros., Inc.*, 291 F.2d 529, 531 (8th Cir. 1961). Here, the Court finds Defendant's cited Revenue Rulings conflict with mandatory statutory and regulatory authority, as set forth *supra*.

### C. The General Verdict

Having concluded Plaintiff's verdict includes taxable compensation for lost pay and excludable damages for personal injury, the Court must determine what portion, if any, of the verdict Defendant is entitled to withhold from Plaintiff. Plaintiff's verdict is general, not apportioned. However, "the case law and regulatory rulings have made it clear that when an award is received for a personal injury in a tort or tort-type proceeding, the whole award is excludable from income under 26 U.S.C. § 104(a), even if included in the award is an amount for lost earnings." *Jelly v. Sec'y of Health & Human Servs.*, No. 94-646V, 1998 WL 211913 (Fed. Cl. Apr. 6, 1998); *see also Rickel v. C.I.R.*, 900 F.2d 655, 658 (3d Cir. 1990) ("[T]he Tax Court has long held that '[i]f a taxpayer receives a damage award for a physical injury, which almost

by definition is personal, the entire award is excluded from income [under § 104(a)(2)] even if all or part of the recovery is determined with reference to the income lost because of the injury.'"). Therefore, the Court finds Plaintiff's verdict is excluded in its entirety.

Even if the personal injury exclusion did not apply, the Court would still deny Defendant's Motion. As the moving party under FRCP 60(b), Defendant had the burden of showing the Court it was entitled to withhold the disputed amount from Plaintiff. *Tungseth v. Mut. of Omaha Ins. Co.*, 43 F.3d 406, 409 (1994). In arguing the entirety of the general verdict is taxable, Defendant cites only RRA authorities, and cases relying on RRA authorities. The Court is unpersuaded by these authorities; the RRTA – not the RRA – is the relevant body of law in addressing whether amounts paid to railroad employees are taxable. Moreover, Defendant has not shown the Court how much of the verdict constitutes pay for lost time, in the event the Court found it should apportion the verdict for tax purposes. Thus, § 104(a)(2) aside, the Court would still deny Defendant's Motion for failure to meet its burden of proof.

### III. CONCLUSION

As the moving party under FRCP 60(b), Defendant "had the burden of showing the propriety of the amounts it withheld." *Tungseth*, 43 F.3d at 409. The Court concludes Defendant has failed to meet this burden. In short, Plaintiff's verdict may be partially "compensation" under the RRTA, but it is excluded from "income" in whole under 26 U.S.C. § 104(a)(2), and therefore improperly withheld from Plaintiff. The Court is not persuaded by cases finding taxation is proper. In general, these cases rely on RRA provisions or apply state law not relevant to the instant Motion. *See, e.g.*, *Phillips v. Chi. Cent. & Pac. Rr. Co.*, 2014 WL 2900952, ___ N.W.2d ___ (Iowa June 27, 2014) (relying, in part, on RRA to conclude general verdict is taxable); *Mickey v. BNSF Ry. Co.*, 2013 WL 2489832, ___ S.W.3d ___ (Mo. App. E.D.

June 11, 2013) (discussing on RRA provisions and Missouri state law); *Heckman*, 837 N.W.2d 532 (Neb. 2013) (relying heavily on RRA provisions to find taxation of entire general verdict was proper). None of these cases consider the personal injury exclusion in 26 U.S.C. § 104(a)(2).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant BNSF Railway Company's Motion for an Order Showing Satisfaction of Judgment [ECF No. 271] is **DENIED.**

**IT IS FURTHER ORDERED** that the stay on the Writ of Garnishment is **LIFTED.**

Dated this  7th  Day of July, 2014.

                                                                            _____
                                                                            E. RICHARD WEBBER
                                                                            SENIOR UNITED STATES DISTRICT JUDGE